UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN FOX & MELISSA FOX, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 04 C 7309 |
| v. ) | |
| ) | Judge John W. Darrah |
| FORMER WILL COUNTY STATE'S ATTORNEY ) | |
| JEFFREY TOMCZAK, ) | |
| DETECTIVE EDWARD HAYES, ) | |
| DETECTIVE MICHAEL GUILFOYLE, ) | |
| DETECTIVE SCOTT SWEARENGEN, ) | |
| DETECTIVE JOHN RUETTIGER, ) | |
| DETECTIVE BRAD WACHTL, ) | |
| DETECTIVE DAVID DOBROWSKI, ) | |
| OFFICER JEANETTE BISHOP-GREEN, ) | |
| RICHARD WILLIAMS, ) | |
| MARY JANE PLUTH, ) | |
| WILL COUNTY SHERIFF PAUL KAUPAS, and ) | |
| WILL COUNTY, ) | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Kevin Fox and Melissa Fox, bring this civil suit against former Will County State's Attorney Jeffrey Tomczak, Detective Edward Hayes, Detective Michael Guilfoyle, Detective Scott Swearengen, Detective John Ruettiger, Detective Brad Wachtl, Detective David Dobrowski, Officers Jeanette Bishop-Green, Richard Williams, Mary Jane Pluth, Will County Sheriff Paul Kaupas, and Will County. Plaintiffs' Fourth Amended Complaint ("Complaint") contains eleven counts. Kevin Fox alleges: violation of due process pursuant to § 1983 (Count I); false arrest pursuant to § 1983 (Count II); state law claims for malicious prosecution (Count III); intentional infliction of emotional distress (Count IV); false imprisonment (Count V); and

defamation (Count VI). Melissa Fox alleges loss of consortium (Count VII) and intentional infliction of emotional distress (Count VIII). Kevin and Melissa Fox both allege conspiracy (Count IX), indemnification (Count X), and *Respondeat Superior* (Count XI).

Presently before the Court are: (1) Tomczak's Motion to Dismiss Counts I through IX; (2) Detectives Hayes, Guilfoyle, Swearengen, Ruettiger, Wachtl, and Dobrowski's (collectively, "the Defendant Detectives") Motion to Dismiss Count I; (3) Detective Hayes' Motion to Dismiss Count VIII; and (4) Sheriff Kaupas' Motion to Dismiss Count XI.

Plaintiffs' claims arise from the murder of Riley Fox, the three-year-old daughter of Plaintiffs, and the subsequent prosecution of Kevin Fox for that murder by Tomczak, as Will County State's Attorney. Tomczak's successor, Will County State's Attorney James Glasgow, has since dismissed the charges against Kevin Fox. A more detailed version of the facts of the case has previously been set out by this Court in its May 26, 2005 Order. Specific allegations will be discussed below, as necessary, to resolve the pending motions.

## ANALYSIS

In reviewing a motion to dismiss, the court considers all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal is warranted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Vill. of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

Federal notice pleading requires that a plaintiff "set out in [the] complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999); Fed. R. Civ. P. 8(a). This relaxed standard of pleading does not consider whether a claim will succeed on the merits; and while it may appear on the face of the pleadings that recovery is unlikely, that is not the test in determining the sufficiency of a complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (*Swierkiewicz*); Fed. R. Civ. P. 8(a). Accordingly, there is no requirement in federal courts of pleading the facts or the elements of a claim. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir.2002).

*Count I - Section 1983 Due Process*

Count I alleges false arrest and a due process violation of Kevin Fox under Section 1983. Specifically, the Complaint alleges that the Defendants "deliberately fabricated false statements and deliberately obstructed justice," thereby causing the false arrest, false imprisonment, prosecution and, regarding Tomczak, the defamation of Kevin Fox. Tomczak and the Defendant Detectives contend that Count I fails to state a claim pursuant to the Fourteenth Amendment right to due process because the case never went to trial. Plaintiffs respond that this court has previously determined, in its May 26, 2005 Order, that a due process claim under the Fourteenth Amendment has been sufficiently pled. However, that Order was in response to a motion to dismiss the Second Amended Complaint. This Fourth Amended Complaint now pleads that Kevin Fox has been released and exonerated. The May 26, 2005 Order denied Defendants' motion to dismiss because it was then pled that Kevin Fox was in custody (and presumably awaiting trial) based on the misconduct of the Defendants.

Section 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the

3

United States." *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997) (*Spiegel*), *quoting Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). The first step in the analysis of a § 1983 action is to pinpoint the specific constitutional right which was allegedly violated. *Spiegel*, 121 F.3d at 254; *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 394 (1989). Next, the court must judge the validity of the claim by reference to the particular constitutional standard that governs that right. *Spiegel*, 121 F.3d at 254.

The Seventh Circuit has yet to explicitly recognize a potential constitutional right to be free from prosecution based on evidence fabricated by the government where no trial is held or guilty plea is entered. *See McCann v. Mangialardi*, 337 F.3d 782, 787-88 (7th Cir. 2003) ("it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea."). However, it has been recognized that a due process violation can occur when no trial takes place. *See United States v. Salerno*, 481 U.S. 739, 746-52 (1987) (loss of liberty occurs when person is arrested and imprisoned pending trial).

Several other circuit courts of appeal have found that there is a clearly established constitutional due process right not to be subjected to prosecution on the basis of false evidence that was deliberately fabricated by the government. *See Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (*Zahrey*) (prosecutor acting in investigatory role who falsified evidence violated plaintiff's due process rights); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (*en banc*) (right to be free from criminal charges based on fabricated evidence); *Limone v. Condon*, 372 F.3d 39, 44-45

4

(1st Cir. 2004) (right not to be framed by the government is obvious constitutional right); *Washington v. Wilmore*, 407 F.3d 274, 282, 282-84 (4th Cir. 2005) (government's creation of false evidence is Fourteenth Amendment issue); *Moran v. Clarke*, 296 F.3d 638, 646-47 (8th Cir. 2002) (*en banc*) (law enforcement's intentional creation of damaging facts resulting in pretrial detention violates Fourteenth Amendment's substantive due process protection). The *Zahrey* court's thorough analysis of this issue is persuasive. That court held:

> We think the right issue in this case is appropriately identified as the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity. Understood this way, we conclude that the right at issue is a constitutional right, provided that the deprivation of liberty of which [Plaintiff] complains can be shown to be the result of [the government officer's] fabrication of evidence.

*Zahrey*, 221 F.3d at 349. Kevin Fox has sufficiently pled a Fourteenth Amendment claim.

Next, Tomczak argues that Plaintiffs' due process claim in Count I falls within the ambit of the Fourth Amendment, not the Fourteenth Amendment, because the Fourth Amendment is the exclusive vehicle for pretrial deprivations of liberty. While the Fourth Amendment governs pretrial confinement *before* a probable cause hearing, the Fourteenth Amendment Due Process Clause governs pre-trial confinement *after* a probable cause hearing. *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999) (emphasis added). An allegation that a public official knew of a plaintiff's wrongful detention and continued to detain him despite this knowledge is sufficient to state a cause of action under § 1983 for a public official's personal involvement in an unconstitutional deprivation of due process. *See Sivard v. Pulaski County*, 959 F.2d 662, 668 (7th Cir. 1992).

In this case, a probable cause hearing was held on October 28, 2004; however, the due process claim alleges unlawful confinement until June 17, 2005. Similarly, all moving Defendants

5

were allegedly aware of the continued wrongful detention of Kevin Fox because they were all allegedly aware of (and involved in) the fabrication of evidence in which probable cause was determined. It is possible to hypothesize facts based on the allegations in the Complaint that Kevin Fox's constitutional right to due process was violated by his confinement after the probable cause hearing on October 28, 2004. Accordingly, Kevin Fox sufficiently pled a Fourteenth Amendment due process claim in Count I.

*Count II - Section 1983 False Arrest*

Tomczak contends that Count II fails to state a claim for false arrest because the Complaint fails to allege that Tomczak was in any way involved in the detention or arrest of Kevin Fox. However, Plaintiffs' allegations claim Tomczak's involvement in the pre-prosecution detention and arrest of Kevin Fox. For example, the Complaint alleges that Tomczak had political motives to detain, interrogate, and arrest Kevin Fox; was determined to mislead Kevin Fox into agreeing with the "accident version" of his daughter's death; and made systematic efforts to intimidate, coerce, confuse, mislead, and trick Kevin Fox into implicating himself in his daughter's death. The Complaint also alleges that Tomczak was in telephone contact with the Defendant Detectives during the interrogation and detention of Kevin Fox when his repeated requests to be released or consult with an attorney were denied by the Defendant Detectives. The Fourth Amended Complaint also alleges that Tomczak directed the deception used by the Defendant Detectives throughout the interrogation. These allegations are more than sufficient to support a false arrest claim against Tomczak.

## Eleventh Amendment Immunity

Regarding both of Plaintiffs' § 1983 claims contained in Counts I and II, Tomczak next argues that he is immune from both of these claims pursuant to the Eleventh Amendment immunity from Section 1983 claims for state officials in their official capacity. However, a state official is not entitled to Eleventh Amendment immunity where he or she is sued in his or her individual capacity. *Williams v. Anderson*, 959 F.2d 1411, 1413, n.3 (7th Cir. 1992), *citing Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *see Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). The Fourth Amended Complaint sues Tomczak in his individual capacity. Therefore, the Eleventh Amendment provides no protection to Tomczak against Plaintiffs' Section 1983 claims.

## Prosecutorial Immunity[1]

Tomczak asserts that all of Plaintiffs' claims against him, including Plaintiffs' Section 1983 claims in Counts I and II, are barred by the doctrine of absolute prosecutorial immunity. Two kinds of immunity under Section 1983 protect public officials, such as prosecutors. *Spiegel*, 121 F.3d at 254; *see also Houston v. Partee*, 978 F.2d 362, 365 (7th Cir. 1992) (*Houston*) ("Not all official actions of a state prosecutor are absolutely immune from § 1983 liability.").

The first prosecutorial immunity applies to officials performing "special functions" which fit within a common-law tradition of absolute immunity. *See Spiegel*, 121 F.3d at 268-69. To make this determination, the focus is on "the nature of the function performed, not the identity of the actor who performed it." *Spiegel*, 121 F.3d at 268-690, *quoting Forrester v. White*, 484 U.S. 219, 229 (1988). Specifically, functions that are entitled to absolute immunity for prosecutors are acts

---

[1]Tomczak raises this defense as to several other counts in the Complaint which will be considered below but based, in part, on the analysis of this issue here.

"intimately associated with the judicial phase of the criminal process," conduct involved in the prosecutor's "role as an advocate for the State," "preliminary initiation of a prosecution," and other "judicial acts." *Spiegel*, 121 F.3d at 270-272, *quoting Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976). Absolute immunity is recognized very sparingly. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (*Buckley*). The official claiming absolute immunity bears the burden of showing that such immunity is justified for the function in question. *Buckley*, 509 U.S. at 269; *Houston*, 978 F.2d at 365.

The second type of prosecutorial immunity, qualified immunity, applies when a prosecutor "functions as an administrator rather than an officer of the court." *Buckley*, 509 U.S. at 273, *citing Imbler*, 424 U.S. at 431. For example, when the prosecutor is involved in searching for clues which might give him probable cause to recommend that a suspect be arrested, falsifies evidence, or performs any function that would normally be performed by a detective or police officer, the prosecutor only enjoys qualified immunity. *Buckley*, 509 U.S. at 273-75. Prosecutors are not entitled to absolute immunity for their actions in administrative or investigative functions, such as giving legal advice to the police, *Burns v. Reed*, 500 U.S. 478, 492 (1991) (*Burns*) (prosecutor's advice to the police in the investigative phase of a criminal case is not intimately associated with the judicial phase of the criminal process), pre-indictment fabrication of evidence, or giving post-indictment press conference statements, *Buckley*, 509 U.S. at 271-72 (pre-indictment evidence fabrication and post-indictment press conference only entitled to qualified immunity). In short, wherever a function, such as these, lacks a common-law tradition of absolute immunity, that function remains protected only by qualified immunity. *See Buckley*, 509 U.S. at 275.

It is noted that immunity is an affirmative defense, and the federal standard of notice pleading does not require plaintiffs to anticipate defenses in their pleadings. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000) (*Jacobs*). "Thus to dispose of the issue [of immunity] based solely on plaintiff's complaint would essentially create a heightened pleading standard requiring plaintiffs to attempt to defeat an immunity defense in their pleadings." *Ollins v. O'Brien*, 2005 WL 730987 *1, * 9 (N.D. Ill. 2005), *citing Jacobs*, 215 F.3d at 765 n.3.

While it is true that a plaintiff can plead himself out of court by alleging, and therefore admitting, the elements of a defense, *See United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 636 (7th Cir. 2003), Plaintiffs have not done so here. Plaintiffs allege that Tomczak devised, supervised, and participated in the deceptive and coercive interrogation and subsequent arrest of Kevin Fox. Because these duties are usually conducted by police or detectives, and because police and detectives are entitled only to qualified immunity for these activities, prosecutors are only afforded that same level of protection. *Buckley*, 509 U.S. at 273-74; *see also Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973). While some of Tomczak's actions could ultimately be found to be entitled to absolute or qualified immunity, these factual issues will not now be considered. *See Jacobs*, 215 F.3d at 765 n.3. As such, Tomczak's motion to dismiss Counts I and II on the grounds of immunity is denied.

*Count III - Malicious Prosecution*

Count III alleges a state law claim for malicious prosecution against Tomczak. Tomczak also argues here that he is absolutely immune from this claim because the claim requires Kevin Fox to prove that Tomczak commenced or continued an original criminal proceeding against Kevin Fox and that the initiation of prosecution is a judicial act entitled to absolute prosecutorial immunity.

A common law claim for malicious prosecution includes conduct of the defendant who commenced or continued criminal proceedings against the plaintiff without probable cause. *Carroccia v. Anderson,* 249 F. Supp. 2d 1016, 1026 (N.D. Ill. 2003) (*Carroccia*); *Joiner v. Benton Community Bank,* 82 Ill.2d 40, 45 (1980). As discussed above, Plaintiffs have sufficiently alleged Tomczak's involvement and misconduct in the investigatory phase which allegedly fabricated the probable cause required to initiate prosecution. As *Buckley* made clear, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 274. Thus, Plaintiffs have sufficiently alleged that Tomczak acted outside his role as an advocate for the state and beyond the judicial scope of his duties in pursuing Kevin Fox's prosecution. While the merits of this claim will not now be considered, as discussed above, the pleadings support a claim for malicious prosecution based on allegations beyond those which would otherwise warrant absolute prosecutorial immunity.

*Counts IV and VIII - Intentional Infliction of Emotional Distress*

Next, Tomczak contends that Counts IV and VIII fail to adequately plead claims for intentional infliction of emotional distress (IIED) as to both Plaintiffs.

In federal court, a complaint must plead claims not facts. *See Kolupa v. Roselle* 438 F.3d 713, 715 (7th Cir. 2006) (*Kolupa*). A sufficient complaint identifies the parties, the nature of the grievance, and a few details, such as the date. The Plaintiff need not provide facts and narrate each aspect of the law. *Kolupa,* 438 F.3d. at 715. Plaintiffs have sufficiently pled their IIED claims against all Defendants.

Even under a more stringent common law standard, Plaintiffs have adequately pled IIED claims against Tomczak. Under Illinois law, a claim for IIED includes that: (1) the defendant's

behavior was extreme and outrageous; (2) the defendant either "intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress;" (3) the defendant's behavior actually did cause emotional distress; and (4) the distress suffered by the plaintiff(s) was in fact severe. *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994). Abuse of power increases the outrageousness of behavior*Doe*, 161 Ill. 2d at 392. For example, threats made by someone with the authority and with the ability to exercise those threats over someone else's interests can be outrageous. *McGrath v. Fahey*, 126 Ill. 2d 78, 87 (1988). Allegations that a state official fabricated false or misleading evidence of guilt or concealed exculpatory evidence would be sufficiently "outrageous" to support an IIED claim. *See Carroccia*, 249 F. Supp. 2d at 1028 (addressing investigator's improper concealment of evidence from the prosecutor); *see also Treece v. Village of Naperville*, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995), *aff'd*, 213 F.3d 360 (7th Cir. 2000) (same).

Plaintiffs have alleged several acts of misconduct by Tomczak, including allegations that Tomczak sought to frame Kevin Fox, husband of Melissa Fox, for the sexual assault and murder of their young daughter, that he said their daughter showed a history of sexual abuse during her life, and that Tomczak committed these acts based on political motivations. Plaintiffs also allege that Tomczak, after interrogating Kevin Fox, authorized and directed the Defendant Detectives, including Hayes, to yell and threaten Kevin Fox. Plaintiffs allege that Hayes "yelled at Melissa Fox 'your [expletive] husband killed your [expletive] daughter and he doesn't love you or her;" and during the fourteen hour interrogation of Kevin Fox, Hayes told Kevin Fox that Hayes would arrange for Kevin Fox to be sexually assaulted in jail on a daily basis. Plaintiffs have adequately pled the elements of an IIED claim against the Defendants, including extreme and outrageous conduct.

11

Tomczak claims that neither Kevin Fox nor Melissa Fox have adequately pled that any statements or conduct by Tomczak were specifically directed at Plaintiffs. Even if this was correct, a claim for IIED under Illinois law does not require specific direction to a party to be liable for IIED. *See* Restatement (Second) of Torts § 46(2) (1965) (third-party framework for IIED). Under a third-party or indirect IIED claim in Illinois, "liability may extend beyond the natural plaintiff when the defendant intentionally or recklessly causes severe emotional distress ... to a member of [the direct victim's] immediate family who is present at the time, whether or not such distress results in bodily harm..." *Shemenski v. Chapieski,* 2005 WL 991831 *1, *9 (N.D. Ill. 2005); *see also* Restatement (Second) of Torts, § 46(2), at 72. Detention of a spouse that results in distress supports a third-party IIED claim. *Cf. Shemenski,* 2005 WL 991831 (discussing these circumstances in *Shemenski v. Chapieski,* 2003 WL 21799941 *1, *3 (N.D. Ill. 2003)). Melissa Fox has not specified whether she is asserting a direct or indirect IIED claim, but the allegations support both. Plaintiffs allege: that Melissa Fox was present at the police station on October 25, 2004, the beginning date of Kevin Fox's detention; that Tomczak authorized and directed the investigation that took place that night and thereafter; that Melissa Fox was the wife of Kevin Fox; and that Melissa Fox suffered severe emotional distress as a result of the Defendants' conduct. Thus, both Kevin Fox and Melissa Fox have adequately pled IIED claims.

### Prosecutorial Immunity

In a final attempt to dismiss Plaintiffs' IIED claims, Tomczak contends that, to the degree that Counts IV and VIII for intentional infliction of emotional distress are based on any statements made by Tomczak during the course of the prosecution, these statements are protected by absolute

12

prosecutorial immunity. Plaintiffs have pled to the contrary. Accordingly, Tomczak's motion is denied on this basis, as discussed above.

*Count V - False Imprisonment*

Next, Tomczak claims that Count V fails to state a claim for false imprisonment. A false imprisonment claim under Illinois law includes: (1) the plaintiff's liberty was unreasonably restrained; (2) the restraint was against plaintiff's will; and (3) the restraint was caused by the defendant(s). *Hollander v. Brown*, 2005 WL 1563125 *1, *4 (N.D. Ill. 2005); *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 474 (1990). The Complaint alleges that Tomczak directed and authorized the interrogation, detention, and arrest of Kevin Fox, that Kevin Fox asked to leave numerous times during the interrogation and was denied the right to leave, and that Tomczak had no basis to detain and arrest Kevin Fox at that time other than his personal political motivations. Therefore, Kevin Fox has adequately pled a claim for false imprisonment against Tomczak; and Tomczak's motion to dismiss Count V is denied.

*Count VI - Defamation*

Count VI of the Complaint alleges that Tomczak defamed Kevin Fox by stating publicly that Kevin Fox sexually assaulted and murdered his own daughter. Tomczak contends that Kevin Fox failed to adequately plead the allegedly defaming remarks with the requisite specificity and failed to plead how and when they were published.

To state a claim for defamation under Illinois law, the plaintiff's allegations should include: (1) the defendant(s) made a false statement about the plaintiff, (2) there was an unprivileged publication of the false statement by the defendant(s), and (3) plaintiff suffered damages. *Smock v.*

*Nolan*, 361 F.3d 367, 372 (7th Cir. 2004); *Brown v. GC America, Inc.*, 2005 WL 3077608 *1, *5 (N.D. Ill. 2005).

Again, Tomczak has ignored the federal standard of notice pleading. Count VI alleges that "Defendant former Will County State's Attorney Tomczak represented to the public that Kevin Fox sexually assaulted and murdered his daughter, that Kevin Fox sexually assaulted his daughter during her lifetime, that physical evidence tied Kevin Fox to the crime, and that Kevin Fox "confessed" to the murder of his daughter." Kevin Fox has provided sufficient detail, including the dates and the newspapers in which the statements were published, to support the defamation claim.

### Prosecutorial Immunity

Tomczak argues that he is immune from the defamation claim. However, defaming statements made to the press by a prosecutor are entitled only to qualified immunity. *Buckley*, 509 U.S. at 277-78. While prosecutors are entitled to absolute immunity from defamation liability for statements made during the course of judicial proceedings and relevant to them, most statements made out of court are entitled only to qualified immunity. *Buckley*, 509 U.S. at 276, *citing Burns*, 500 U.S. at 489-90; *Imbler*, 424 U.S. at 426. "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor." *Buckley*, 509 U.S. at 277. Specifically, "[t]he conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions." *Buckley*, 509 U.S. at 278. While statements to the press may be an integral part of a prosecutor's job and may serve a vital public interest, prosecutors are not entitled to any more immunity than other executive officials dealing with the press. *Buckley*, 509 U.S. at 278. Because these executive officials are generally

only entitled to qualified immunity, the standard is the same for prosecutorial immunity for statements made to the press. *Buckley,* 509 U.S. at 268-69, 278. Tomczak's motion to dismiss Count VI on the grounds of absolute immunity is denied.

### Count IX - Conspiracy

While Tomczak's Motion to Dismiss is captioned to include the dismissal of Plaintiffs' conspiracy claim (Count IX), Tomczak has not submitted argument in support of its dismissal. Tomczak's motion to dismiss Count IX is, therefore, denied.

### Prosecutorial Immunity

Again, Tomczak asserts that this claim fails based on absolute prosecutorial immunity, although he presents no argument as to how Plaintiffs' conspiracy allegations fall within a judicial function of a prosecutor that is entitled to absolute immunity.

### Count XI - Respondeat Superior

Finally, Sheriff Kaupas argues that Plaintiffs' *respondeat superior* claim against Sheriff Kaupas should be dismissed because § 1983 does not support a claim based on *respondeat superior*.[2] A principal may be held liable for the tortious actions of its agent(s) which cause a plaintiff's injury even if the principal does not himself engage in any conduct in relation to the plaintiff. *Wallace v. Masterson,* 345 F. Supp. 2d 917, 921 (N.D. Ill. 2004), *citing Woods v. Cole,* 181 Ill.2d 512 (1998). However, a principal may not be liable for § 1983 claims under the doctrine of *respondeat superior.*

---

[2] While Plaintiffs argued, in their response brief, that Count XI is not alleged against Sheriff Kaupas, a suit against the sheriff is the equivalent to a suit against the Will County Sheriff's Office. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *Toma v. City of Kane,* 2004 WL 1093497 (N.D. Ill. 2004). Therefore, Count XI is brought against Sheriff Kaupas. On that same note, Sheriff Kaupas' request for dismissal on the grounds that he is not a named defendant elsewhere in the case is denied.

15

*Wallace*, 345 F. Supp. 2d at 921; *see Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Sheriff Kaupas correctly claims he is not liable for Plaintiffs' § 1983 claims. Sheriff Kaupas' Motion to Dismiss Count XI is granted as to Plaintiffs' § 1983 claims.

*Counts VII and VIII - Pendent Party Jurisdiction*

Finally, Tomczak asks this Court to decline pendent party jurisdiction over Melissa Fox's claims and dismiss or remove Counts VII and VIII to state court. The Judicial Improvement Act of 1990 states:

> [T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joiner or intervention of additional parties.*

28 U.S.C. § 1367(a) (emphasis added); *see Ortega v. Schramm*, 922 F.2d 684, 693, n.12 (11th Cir. 1991). There are two requirements for the exercise of supplemental jurisdiction: (1) a common nucleus of operative facts between the federal claim sufficient to confer federal subject matter jurisdiction and the state claims seeking supplemental jurisdiction; and (2) no statutory preclusion of supplemental jurisdiction by the federal cause of action to which the state claims attach. *Zabkowicz v. West Bend Co., Div. of Dart Industries, Inc.*, 789 F.2d 540, 546 (7th Cir. 1986).

Section 1983 is a federal question within federal court subject matter jurisdiction. *Wright v. Assoc. Ins. Co.*, 29 F.3d 1244, 1250 (7th Cir. 1994). No provision of § 1983 prohibits supplemental jurisdiction over a spouse's claim for loss of consortium. *See Carter v. Dixon*, 727 F. Supp. 478, 479-80 (N.D. Ill. 1990), *citing Huffman v. Hains*, 865 F.2d 920, 922-23 (7th Cir. 1989).

Melissa Fox's claims for IIED and loss of consortium undeniably arise from the same nucleus of operative facts as Kevin Fox's federal claims pursuant to § 1983. Both claims cite statements made and actions taken by the same Defendants on the same evening at the same location. Because there is a common nucleus of facts and nothing in § 1983 prohibits supplemental jurisdiction in this case, Tomczak's motions to dismiss or, alternatively, remand Counts VII and VIII are denied.

## CONCLUSION

For the reasons stated above, Tomczak's, the Detective Defendants', and Hayes' motions to dismiss are denied in their entirety. Sheriff Kaupas' Motion to Dismiss Count XI of the Fourth Amended Complaint is granted.

Dated: April 26, 2006

JOHN W. DARRAH
United States District Court Judge