UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN FOX & MELISSA FOX,                )
                                        )
            Plaintiffs,                 )
                                        )       No. 04 C 7309
        v.                              )
                                        )       Judge John W. Darrah
                                        )
EDWARD HAYES,                           )
MICHAEL GUILFOYLE                       )
SCOTT SWEARENGEN,                       )
BRAD WACHTL and                         )
WILL COUNTY,                            )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Rule 50(b) Motion for New Trial or Judgment as a

Matter of Law, Defendants' Rule 59(e) Motion to Alter or Amend Judgment and Defendants'

Rule 59(a) Motion for New Trial.

## BACKGROUND

Following a seven-week trial, a jury found in favor of Plaintiff Kevin Fox on his claims

for Violation of Due Process, False Arrest, Malicious Prosecution and Intentional Infliction of

Emotional Distress. The jury awarded Kevin Fox compensatory damages for these claims of

$1.7 million, $1.7 million, $600,000 and $1.6 million, respectively. The jury also found in favor

of Plaintiff Melissa Fox, Kevin Fox's wife, on her claims for Loss of Consortium and Intentional

Infliction of Emotional Distress and awarded her $2.7 million and $1 million, respectively. The

jury also awarded punitive damages in the amount of $3.7 million to Kevin Fox and $2.5 million

to Melissa Fox. The jury found in favor of Defendants on Kevin Fox's claims of False

Imprisonment and Conspiracy and Melissa Fox's Conspiracy claim.

Rule 50(b) Motion for new Trial or Judgment as a Matter of Law

In ruling on a Rule 50(b) motion, the Court does not re-weigh the evidence or make credibility determinations. *Caletz ex rel. Estate of Colon v. Blackmon*, 476 F.Supp.2d 946, 951 (N.D. Ill., 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Rather, the question is "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Erickson v. Wisconsin Dept. of Corrections*, 469 F.3d 600, 601 (7th Cir. 2006) (*Erickson*) (quoting *Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002)). The verdict should be overturned only if no reasonable jury could have found in favor of the prevailing party. *See Erickson*, 469 F.3d at 601.

Defendants argue that they are entitled to qualified immunity on Plaintiff Kevin Fox's § 1983 claims and that Plaintiff Melissa Fox failed to prove all the elements in her claim against Defendant Hayes for Intentional Infliction of Emotional Distress. Plaintiffs respond that Defendants waived the issues now raised in their Rule 50(b) motion because those arguments were not made with sufficient specificity in Defendants' Rule 50(a) motions to put Plaintiffs on notice. Plaintiffs also argue that Defendants' renewed motions for judgment fall short on the merits.

Plaintiffs' waiver argument is based on two grounds. First, Plaintiffs argue that although Defendants made earlier 50(a) motions during trial, they are required to renew their motions for judgment as a matter of law at the close of all the evidence. However, a motion for a directed verdict at the close of all the evidence in no longer required under Rule 50(b). *See Wright &*

2

*Miller*, 9B Fed. Prac. & Proc. Civ.2d § 2537 (the 2006 amendments to the Federal Rules of Civil Procedure revised Rule 50(b) to permit renewal after verdict of any Rule 50(a) motion for judgment as a matter of law even if not made at the close of all evidence).

Second, Plaintiffs argue that Defendants' Rule 50(a) motions were not made with sufficient specificity to put Plaintiffs on notice. "[I]ssues that were not adequately preserved in a Rule 50(a) motion . . . may not be included in a Rule 50(b) motion." *Petit v. City of Chicago*, 239 F.Supp.2d 761, 767 (N.D. Ill 2002). Defendants assert several grounds for judgment as a matter of law in their Rule 50(b) motion. To the extent that those arguments were not raised in Rule 50(a) motions, they are deemed waived. Defendants claim to have made eleven motions for judgment as a matter of law under Rule 50(a) – "six times orally and five times in writing." Under Rule 50(a)(2), the motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Defendants' oral motions for judgment did not meet this standard. Defendants simply stated that they were moving for a directed verdict without, in any way, specifying on which of Plaintiffs' claims they were moving or their legal or factual grounds for the motions. Thus, only the following arguments made in Defendants' five written motions will be considered preserved regarding Defendants' Rule 50(b) motion.

Defendants first claim that they were entitled to qualified immunity on Plaintiff Kevin Fox's § 1983 claims. Defendants' remaining arguments concern Plaintiff Melissa Fox's claim for Intentional Infliction of Emotional Distress against Defendant Hayes.

*Qualified Immunity*

Defendants first argue that they are entitled to qualified immunity on both Kevin Fox's

Due Process claim and his claim for False Arrest. Government officials performing discretionary

functions are entitled to qualified immunity "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether the official's conduct is

unlawful, it is not necessary that the specific violation in question to have previously been held

unlawful; rather, "a clearly established constitutional right exists in the absence of precedent,

'where the contours of the right [are] sufficiently clear that a reasonable official would

understand that what he is doing violates that right.'" *Board v. Farnham*, 394 F.3d 469, 477 (7th

Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

This Court has previously considered and rejected Defendants' contention that they are

entitled to qualified immunity on the Due Process claims. *Fox v. Tomczak*, 2006 WL 1157466 at

*2 (N.D. Ill. 2006). Defendants have not raised any additional arguments not considered by the

Court in its previous decision. Therefore, Defendants' claim to qualified immunity on the Due

Process claims is again denied.

Defendants next argue that they are entitled to qualified immunity for Kevin Fox's claim

of False Arrest. An officer is entitled to qualified immunity in a § 1983 claim for unlawful arrest

when there was probable cause for the arrest or when a reasonable officer could have mistakenly

believed that probable cause existed. *Wollin v. Gondert*, 192 F.3d 616, 621 7th Cir. 1999)

(*Wollin*). This latter case, known as arguable probable cause, exists when "a reasonable police

4

officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Wollin*, 192 F.3d at 621.

Defendants cite numerous parts of trial testimony that purportedly show the existence of probable cause, or at least arguable probable cause, to arrest. However, most of the "evidence" listed by Defendants was either disputed at trial or occurred after the earliest point at which the jury could reasonably have found that Kevin Fox was under arrest.[1] In the former category is the statement allegedly made by Kevin Fox's son that he saw his father leave the house on the night of the abduction. Plaintiffs offered evidence at trial that this statement was never made. In the latter category are Kevin Fox's statements that he placed his daughter in the water and that he may have been responsible for her murder. These statements occurred after the earliest point that the jury could have determined that the arrest had taken place. Thus, viewing the evidence in the light most favorable to Plaintiffs, those statements occurred post-arrest and are not relevant to the issue of probable cause. This evidence, taken together with the remainder of the evidence cited by Defendants, does not support a determination of arguable probable cause.

---

[1] Some of Defendants' characterization of this testimony is not supported by the trial transcript. For example, Defendants claim that trial testimony established that, before his arrest, Kevin Fox was reluctant to give a buccal swab for DNA testing. However, the testimony Defendants cite, the cross-examination of Defendant Detective Swearengen, contradicts that assertion. The cited testimony establishes (1) that while Swearengen claimed in his *deposition* that Fox was reluctant to give the buccal swab, Swearengen did not include that statement in his police report and (2) the individual who actually took the buccal swab specifically noted that Fox had given the swab voluntarily. (Trial Tr. at p. 1003.)

*Intentional Infliction of Emotional Distress*

Defendants argue that they are entitled to a judgment as a matter of law on

Plaintiff Melissa Fox's claim for Intentional Infliction of Emotional Distress against

Defendant Hayes. Evidence regarding this issue showed, *inter alia*, that while Kevin Fox was

being questioned at the Will County Police Station, Defendant Hayes yelled at Melissa Fox,

"Your husband's a fucking liar, and he's a fucking murderer. He never loved you or your

fucking daughter, and he killed her, and you need to learn to fucking get over it." Defendants

first argue that this statement was not sufficiently outrageous to support liability. To support a

claim for intentional infliction of emotional distress, the conduct must be "so outrageous in

character and so extreme in degree, as to go beyond all possible bounds of decency." This

statement, contrary to what Defendants may argue, is more than merely "insulting, offensive and

somewhat abusive." Considering this statement, in the context of the evidence regarding

Melissa Fox's situation at this time – her three-year-old daughter had recently been murdered,

and her husband had just then been accused of committing the murder – it is difficult to see

within what "possible bounds of decency" Defendant Hayes' conduct would fall.

Defendants' argument that Plaintiffs did not show that Defendant Hayes intended that his

conduct inflict severe emotional distress and did not know that there was a high probability that it

would cause severe emotional distress also falls short. The jury was instructed on this

requirement. Evidence introduced at trial, including the statement itself and the circumstances in

which it was made, could support such a finding. Thus, Defendants have failed to show that no

reasonable jury could have found in favor of Plaintiff Melissa Fox on this claim. Defendants also

argue that Melissa Fox failed to prove injury as a result of the statement. Melissa Fox's testimony regarding the above-cited statement by Defendant Hayes to Melissa was sufficient for a reasonable jury to find in her favor.

For the foregoing reasons, Defendants' Motion for a New Trial or Judgment as a Matter of Law is denied.

### Rule 59(e) Motion to Alter or Amend Judgment

"Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) (*Moro*). However, the rule "does not provide a vehicle for a party to undo its own procedural failures" or to "advance arguments that could and should have been presented to the district court prior to the judgment." *Moro*, 91 F.3d at 876. "[A]n argument raised for the first time in a Rule 59(e) motion is waived." *Estramera v. United States*, 442 F.3d 580, 587 (7th Cir. 2004).

Defendants first challenge the punitive damages award of $2.5 million to Plaintiff Melissa Fox. Defendants argue that punitive damages are not available under Illinois law for either intentional infliction of emotional distress or loss of consortium, the only two claims on which Melissa Fox prevailed. Plaintiffs counter that Defendants waived this argument by failing to make their objection before the jury was discharged.[2]

---

[2] Plaintiffs also argue that the award of punitive damages indicates that the jury intended to find for Plaintiff Melissa Fox on her Conspiracy Claim. This argument has been rejected by the Court in a previously issued opinion denying Plaintiff's motion to alter or amend judgment. Minute Order, March 12, 2008, Docket No. 661.

Under Illinois law, "punitive damages may not be assessed as an additional recovery where the conduct arises from intentional infliction of emotional distress." *Gragg v. Calandra*, 297 Ill. App.3d 639, 650 (2d Dist. 1998). *See also, Littlefield v. McGuffey*, 954 F.2d 1337, 1345 n. 3 (7th Cir. 1992) (citing *Knierim v. Izzo*, 22 Ill.2d 73, 88 (1961)). Punitive damages are also not available under Illinois law for loss of consortium claims. *Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 211 (1983). Therefore, consistent with Illinois law, the judgment is amended to strike the punitive damage award against Defendant Hayes in favor of Plaintiff Melissa Fox.

Defendants next argue that the punitive damage awards against Defendant Brad Wachtl should be stricken because Plaintiffs waived their claims for punitive damages against Wachtl by stating during closing arguments that they were not seeking such damages. Plaintiffs respond that Defendants waived their objections to the punitive damage awards by failing to object to the verdict form.

Reviewing the transcript of Plaintiffs' closing argument, it is clear that Plaintiffs waived their claims for punitive damages against Wachtl. During closing arguments, Plaintiffs' attorney stated "for . . . Wachtl, we are not seeking punitive damages." This statement is binding on Plaintiffs. *See McCaskill v. SCI Management Corp.*, 298 F.3d 677, 680 (7th Cir. 2002) (counsel's "verbal admission . . . at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings"). Plaintiffs draw an analogy to *Super Group Packaging & Distribution Corp. v. Smurfit Stone Container Corp.*, 2006 WL 274779 (W.D. Wis.), in which the court held that a plaintiff's attorney's damages request in closing arguments does not act as a cap on the award. The case is not analogous. Here, Plaintiffs

completely withdrew their claims for punitive damages against Defendant Wachtl. Therefore, Plaintiffs waived their claims for punitive damages against Defendant Wachtl. The judgment is amended to strike the punitive damage award against Defendant Wachtl.

Defendants next make several arguments to the effect that Plaintiff Kevin Fox should not have been able to recover on both his constitutional and state-law claims. Defendants allege that the awards amount to double and triple recovery for the Plaintiff. The verdict form in this case allowed the jury to award Plaintiffs separate damages for each claim. For each claim against each Defendant, the jury could either mark a space under "For Defendant" or write in a dollar amount under "For Plaintiff, Kevin Fox and award damages in the Following amount(s)." It was, thus, foreseeable that if the jury found for Kevin Fox on multiple claims, that they would award separate damages for each claim. Despite this possibility, Defendants did not object to the format of the verdict form. Defendants have therefore waived this objection.

Defendants claim that they did make a relevant objection at the jury instruction conference; Defendants argue that their proposed instruction number 51, which would have instructed the jury on double recovery, was refused by the Court. The Court ruled that the proposed instruction could confuse and would not aid the jury. Defendants made no objection to this statement, gave no further argument on the subject and cited no case law or other authority in support of their position. Therefore, Defendants' objections to Plaintiff Kevin Fox's recovery of separate amounts for his multiple claims have been waived.

Finally, Defendants argue this Court should exercise its discretion to set aside the award of punitive damages to Kevin Fox. Defendants argue that the punitive damages are excessive and without basis in the record. Defendants further argue that the format of the verdict form

makes it impossible to determine on which claims the jury awarded punitive damages and that

the jury was likely motivated by "improper reasons such as caprice and prejudice" in awarding

punitive damages. With respect to the first objection, the Court previously ruled on this issue

that Plaintiffs were entitled to argue for punitive damages. Defendants have not offered any basis

to reverse this ruling. With respect to the format of the verdict form, Defendants failed to object

to that format before the case went to the jury. The objection is therefore waived. Finally,

Defendants' argument that Plaintiffs' closing argument confused the jury was heard and rejected

at the time. Therefore, the Court declines to set aside the remaining punitive damages against

Defendants.

For the reasons stated above, Defendants' motion to alter or amend judgment is granted in

part and denied in part. The judgment is amended as follows: The punitive damage awards

against Defendant Brad Wachtl in favor of Plaintiff Kevin Fox are stricken. All punitive damage

awards in favor of Plaintiff Melissa Fox are stricken, and the judgment in her favor is so

amended.

### Rule 59(a) Motion for New Trial

A motion for a new trial should be granted when the verdict is against the weight of the

evidence, the damages were excessive or, for other reasons, the trial was not fair to the moving

party. *Taylor v. National R.R. Passenger Corp.*, 920 F.2d 1372, 1377 (7th Cir. 1990). In ruling

on such a motion, the Court must review the facts in the light most favorable to the prevailing

party. *Schobert v. Illinois Dept. of Transp.*, 304 F.3d 725, 728 (7th Cir. 2002) (citing *EEOC v.*

*Bd. of Regents of Univ. of Wis. Sys.*, 288 F.3d 296, 301 (7th Cir.2002)).

Defendants base their motion for a new trial on multiple grounds, including: purported evidentiary errors, misconduct on the part of the Court and Plaintiffs' attorneys, improper jury instructions, and various other grounds.

*Exclusion of Fox's Video-Recorded Confession*

Defendants first argue that the Court erred by excluding the video-recorded confession of Kevin Fox. This issue was the subject of extensive argument before the Court ruled it inadmissible. The Court's reasoning and application of the Federal Rules of Evidence is more fully set out in the transcript of the proceedings.

Defendants first argue that the video recording was relevant to the issue of Defendants' probable cause to arrest Kevin Fox. However, there is no basis to argue that the jury could reasonably have found that Kevin Fox was not already under arrest by Defendants when Defendants began video recording the statement. The evidence established that Kevin Fox made a purported oral confession to Defendants before the video-recorded purported confession. (Defendants chose not to record this earlier statement, although the video recorder was then available.) The jury was fully informed regarding this first, non-video-recorded statement. As Defendants admit, Fox's video-recorded statement is a restatement of incriminating statements he had previously made to Defendants in the non-recorded statement. Kevin Fox was not free to leave after making the first statement and before the recording of the second statement began. Therefore, it is indisputable that Fox was already under arrest when the video recording was made. Fox's recorded statements are of no consequence to the determination of Defendants' probable cause to arrest. *See Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988) (*Sherrod*).

11

Defendants later argued that the video-recorded statement is relevant to the issue of

whether Kevin Fox's first statement was voluntary, and not coerced as argued by Plaintiffs, in

that the subsequent recorded statement shows Kevin Fox's demeanor immediately after the

claimed coerced first statement. Specifically, Defendants argue that the tape would rebut

Plaintiffs' contention that Kevin Fox was emotionally, mentally and physically impaired at the

time he made the first statement. However, Defendants have not pointed to any evidence in the

record that the circumstances surrounding the first, non-recorded statement, including

Kevin Fox's demeanor and appearance, as well as the demeanor and conduct of his interrogators

then, were the same as those appearing on the video recording of the subsequent statement.

Even assuming that the video recording was probative of Kevin Fox's demeanor during

the earlier statement, and thus had some relevance under FRE 401, the tape was properly

excluded under FRE 403 as the slight probative value on this issue was substantially outweighed

by the danger of unfair prejudice, confusion of the issues, or misleading the jury as to what

evidence is properly considered as to probable cause to arrest Kevin Fox. *See Sherrod*, 856 F.2d

at 813 (Flaum, J., dissenting). As explained above, probable cause must have been based on

facts that occurred prior to the recorded statement. Therefore, the tape was properly excluded.

*Interrogation Recreation Photographs*

Defendants object to the admission of photographs introduced by Plaintiffs that portray

Plaintiffs' version of the interrogation of Kevin Fox, claiming that the photographs were unfairly

prejudicial. Plaintiffs argue that Defendants waived this objection by failing to object to the

introduction to the photographs. Defendants reply that they filed a motion *in limine*. However,

the Court clearly instructed both sides before trial that an objection contained in a motion

12

*in limine* would be deemed waived if it was not renewed at the time the evidence was offered.[3] Defendants did not object to the admission of the photographs during the trial. Therefore, the objection was waived.

### Improper Judicial Conduct

Defendants next accuse the Court of improper judicial conduct, specifically favoring the Plaintiffs during the trial. The Court has already denied Defendants' motion for recusal in a written opinion and, for the same reasons, rejects Defendants' 59(a) motion, to the extent it is based on the same grounds.[4] Defendants' evidence of bias does not rise to the level needed to prevail on their motion. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties or their cases, ordinarily do not support a bias or partiality challenge." *Grove Fresh Distributors, Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). There is a difference between being biased against a party and being annoyed with the party's counsel. *See Gomez v. St. Jude Medical Daig Div. Inc.*, 442 F.3d 919, 938 (5th Cir. 2006). Moreover, the

---

[3]"THE COURT: If I take a motion *in limine* under advisement, that motion will have to be renewed at the time of trial, or it will be deemed to be waived.
So if you object to something here and it's not resolved today, I charge you with objecting when it's raised in the courtroom.

. . .

Likewise, our proposed pretrial order form requires you to set out exhibits to which you object and the like. I'm not going to follow that. I'm going to use that as an aid [as to] what might be at issue and what might not be. But the fact that you may have interposed an objection in the pretrial order does not preserve your objection during the trial. So you have to object again.
And if you have objected to something in the pretrial order and don't object at the time of trial, I will deem that to be your intention to withdraw the objection."
(Pre-trial Conf. Tr. at 5:6-24.)

[4]*Fox v. Tomczak*, 2007 WL 4365355 (N.D. Ill. 2007).

13

alleged instances of bias of which Defendants complain essentially all occurred at sidebar, outside the presence of the jury and, thus, could not have prejudiced the jury against Defendants.[5] The examples of supposed bias cited by Defendants that happened within hearing of the jury – instructing a witness to answer yes or no or asking an attorney to move along from repetitive and irrelevant questioning – were merely instances of courtroom management and do not show bias on the part of the Court.

*Failure to Rule on Motions in Limine/Exclusion of Probable Cause Factors*

Defendants argue that the Court improperly delayed ruling on motions *in limine* and that the delay prejudiced Defendants in that they were unable to present a number of factors that could have provided probable cause for the arrest. The Court reserved its ruling on the motions to get the full context of the predicate evidence to determine admissibility of the proffered evidence. Furthermore, the delay was not prejudicial to Defendants because the evidence they sought to introduce, that Kevin Fox watched an adult video and masturbated into a condom on the night of the murder, had scant relevance to the question of probable cause.[6] Defendants' theory of relevance, centered on Fox's supposed need to "come clean" about the video and his

---

[5]Furthermore, Defendants cite the record out of context in an attempt to paint some of the Court's comments as unreasonable. For example, Defendants cite the Court's statement to Defendants' counsel, regarding one of the Defendants, Mary Jane Pluth, "What kind of representation has she been given here?" The Court made the statement after Defense counsel began a line of questioning that illuminated a clear issue of conflict of interest as to Defense counsels' representation of both Pluth and the other Defendants and reflected the Court's concern that Defense counsel could be sacrificing Pluth's interest to benefit the other Defendants. (Trial Tr. at 2182-84.) This was a concern throughout the trial.

[6] Defendants were permitted to introduce evidence that Fox watched an adult video.

state of sexual arousal that night, is beyond far-fetched.[7] Furthermore, the evidence would have

been highly unfairly prejudicial to Plaintiffs. Thus, the evidence was properly excluded; and

Defendants were not prejudiced by any delay in the Court's rulings.

*Admission of DNA from Duct Tape*

Defendants argue that the Court erred in admitting testimony regarding duct tape found at

the crime scene because it had no probative value and unfairly prejudiced Defendants. Plaintiffs

respond that the testimony regarding the duct tape established that Kevin Fox was not guilty of

the murder of his daughter and that the admission of that fact into evidence was necessary to

keep the jury focused on the issues actually before them. Plaintiffs cite *Newsome v. McCabe*,

2002 WL 548725 (N.D. Ill. 2002) *(Newsome)*, in support of their position. The court in

*Newsome*, facing a similar issue, stated:

> "The issue in this case was not, as defendants point out, whether [plaintiff] was
> guilty or innocent of the crime. But that is what it would have become if the fact
> of [plaintiff's] innocence . . . had been kept from the jury. Excluding that evidence
> would have been highly prejudicial to [plaintiff]. It would have invited the jurors
> to draw the impermissible inference that he was actually guilty, and, thus, absolve
> defendants of any misconduct."

*Newsome*, 2002 WL 548725 at 6. Furthermore, Defendants fail to show how the admission of

this evidence, even if not relevant, was prejudicial to their case.

*Undisclosed Expert Testimony*

Defendants argue that Plaintiffs' experts, Dr. Raskin and Dr. Burgess, testified to matters

that had not been disclosed in their expert reports, in violation of Rules 37 and 26 of the Federal

---

[7] Defendants' argument that Fox's failure to disclose his sexual activities to Defendants
could result in probable cause to arrest for obstruction of justice is frivolous. Defendants raise
this argument for the first time in their Rule 59(a) motion.

15

Rules of Civil Procedure. However, Defendants fail to disclose that the Court sustained

Defendants' objection regarding Dr. Raskin and instructed the jury to disregard the testimony to

which Defendants objected.[8] With respect to Dr. Burgess, after hearing arguments from both

parties at sidebar, the Court determined that Plaintiffs had disclosed the relevant information.

*Plaintiff Counsel's Comments During Trial*

Defendants object to several comments made by Plaintiffs' counsel during the trial in

which counsel expressed opinions regarding the credibility of witnesses. Specifically,

Defendants assert that Plaintiffs' counsel implied that Defendant Swearengen and Guilfoyle lied

on the witness stand and vouched for the honesty of her own client, Kevin Fox. The instances

cited by Defendants do not merit a new trial. First, a party may draw reasonable inferences from

the evidence adduced at trial, even in questioning a witness's truthfulness if supported by the

record. *See United States v. Goodapple*, 958 F.2d 1402, 1409-10 (7th Cir. 1992). Here,

Defendant Swearengen's testimony regarding conversations with Dr. Denton was directly

---

[8]"[DEFENSE COUNSEL]: Same objection as earlier, your honor.
   THE COURT: Sustained."
(Trial Tr. at 1539.)
   "[DEFENSE COUNSEL]: Objection, your Honor. May I be heard?
    THE COURT: Yes
   (Sidebar proceedings outside the hearing of the jury:)

       . . .

   THE COURT: The objection is sustained.
   [PLAINTIFFS' COUNSEL]: Okay.
   THE COURT: Avoid that.
   [PLAINTIFFS' COUNSEL]: Yes.
   (Further proceedings within the hearing of the jury:)
   THE COURT: The objection is sustained. Ladies and gentlemen, disregard that last
   answer. Do you all understand?
   (Jurors nodding.)"
(Trial Tr. at 1566-68.)

contradicted by Denton's testimony. Thus, some of Plaintiffs' aggressive questioning of Swearengen cited by Defendants was not improper. Second, many of Plaintiffs' counsel's comments of which Defendants complain were either not objected to by Defendants or were immediately followed by an admonishment from the Court and an instruction to the jury to disregard the comments.[9] Thus, to the extent that any of Plaintiffs' counsels' questions were improper, the jury was appropriately instructed to disregard those comments.

### Special Interrogatories and Jury Instructions

Defendants argue that it was error for the Court to refuse several of Defendants' proposed jury instructions and to give several jury instructions proposed by Plaintiffs. Additionally, Defendants argue that two special interrogatories should have been given to the jury: the first would have asked whether Defendants had probable cause to arrest Kevin Fox; the second asked whether Defendants reasonably but mistakenly believed probable cause was present. At the jury instruction conference, the Court rejected both proposed special interrogatories. The interrogatories were ambiguous with respect to *when* the Defendants had either probable cause or arguable probable cause. Considering that a central issue in the case was when the arrest occurred, asking only whether Defendants had probable cause, without specifying a time-frame would be confusing and counterproductive. Defendants did not propose amended instructions that would have remedied this deficiency.

---

[9]"Q: It's also important not to lie to a jury, wouldn't you agree, when you're under oath?
[DEFENSE COUNSEL]: Objection. Move to strike. I have a motion relative –
THE COURT: Sustained. Ladies and gentlemen, disregard the question."
(Trial Tr. at 2215-16.)

17

With respect to the jury instructions, Defendants argue that Plaintiffs' due-process claim should not have gone to the jury because the validity of those claims was pending before the Court of Appeals. However, this Court had previously certified Defendants' appeal as frivolous. *See Apostal v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) ("a district court may certify to the court of appeals that the appeal is frivolous and get on with the trial"). Thus, it was not improper to proceed with the due-process claim.

Defendants next argue that the jury should have been instructed that Defendants needed only probable cause to arrest Kevin Fox for some criminal offense, not necessarily the offense with which he was eventually charged. Defendants' proposed instruction was not warranted based on the evidence.

The Court's reasoning in denying Defendants' other proposed jury instructions is set out in the transcript of the proceedings.

### Excessive Damages

Defendants complain that the damages awarded to Plaintiffs are excessive. The damages awarded by the jury were not outside the range of damages to which a reasonable jury could find Plaintiffs entitled. Both sides were permitted to argue their theories on the issue of damages. The jury awarded an amount far less than Plaintiffs asked. The amount is not shocking to the judicial conscience and, therefore, will not be reduced.

### Miscellaneous Objections

Defendants raise a number of other issues that they claim entitle them to a new trial. Defendants argue that the Court erred in excluding evidence of drug use by Kevin Fox, excluding the testimony of Defendants' expert Ken Lanning, excluding testimony regarding water usage at

18

the Fox home, excluding Defendants' conversations with the Federal Bureau of Investigations, excluding the deposition testimony of former Defendant John Moss, permitting overly broad cross-examination of former Defendant Nick Ficarello, and allowing improper rebuttal testimony from Plaintiffs' witness, Dr. Denton. Defendants' arguments on these points were considered and ruled upon during the trial. Defendants have offered nothing beyond the reasons offered at trial. Therefore, Defendants' Motion for a New Trial on these grounds is denied.

### Inconsistent Verdict

Defendants argue that the verdict in their favor on Kevin Fox's false imprisonment claim is inconsistent with the verdict in favor of Kevin Fox on his claims of false arrest, due-process and malicious prosecution claims. Plaintiffs argue that Defendants waived this issue by failing to object before the jury was discharged.

The Seventh Circuit has not definitively ruled on whether a contemporaneous objection to inconsistent verdicts constitutes a waiver. *See Carter v. Chicago Police Officers*, 165 F.3d 1071, 1080 (7th Cir. 1998); *Black and Decker, Inc. v. Robert Bosch Tool Corp.*, 2007 WL 108412 (N.D. Ill. 2007). However, other circuits have held that failure to make such an objection does constitute waiver. *See e.g., Kosmynka v. Polaris Industries, Inc.*, 462 F.3d 74, 83 (2d Cir. 2006) ("It is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury."); *Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995); *see also Strauss v. Stratojac Corp.*, 810 F.2d 679, 683 (7th Cir. 1987) (*Strauss*) (noting that requiring an objection to an inconsistent verdict before the jury is discharged promotes the efficient use of judicial resources). The Court finds the opinions on this issue of the Circuits and the reasoning of *Strauss* persuasive, especially

19

considering the extended length of the trial in this case and the judicial resources expended. Therefore, Defendants' failure to raise this objection before the jury was discharged constitutes a waiver of the issue.

## CONCLUSION

Defendants' Rule 50(b) Motion for a New Trial or Judgment as a Matter of Law and Defendants' Rule 59(a) Motion for New Trial are denied. Defendants' Rule 59(e) Motion to Alter or Amend Judgment is granted in part and denied in part. The judgment is amended to strike the punitive damage award against Defendant Brad Wachtl in favor of Plaintiff Kevin Fox and the punitive damage award against Defendant Edward Hayes in favor of Plaintiff Melissa Fox.

Dated: _September 25, 2008_

JOHN W. DARRAH
United States District Court Judge