IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN FOX & MELISSA FOX,<br>Plaintiffs,<br><br>v.<br><br>FORMER WILL COUNTY STATE'S ATTORNEY<br>JEFFREY TOMCZAK, ET AL.,<br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04 C 7309<br><br>Judge John W. Darrah<br><br>Magistrate Judge<br>Geraldine Soat Brown |
| WILL COUNTY,<br>Third-Party Plaintiff,<br><br>v.<br><br>ESSEX INSURANCE COMPANY, a Delaware<br>corporation, AMERICAN ALTERNATIVE<br>INSURANCE CORPORATION, a Delaware<br>corporation, and ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY, a Minnesota corporation,<br><br>Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

## AMENDED THIRD-PARTY COMPLAINT

Defendant and Third-Party Plaintiff Will County ("the County"), by its State's Attorney, **JAMES W. GLASGOW**, and for its Amended Third-Party Complaint against Third-Party Defendants Essex Insurance Company ("Essex"), American Alternative Insurance Corporation ("AAIC") and St. Paul Fire and Marine Insurance Company ("St. Paul"), alleges as follows:

### PARTIES

1. The County is a municipal corporation organized and existing under the

laws of Illinois. All executive level officers direct, control and coordinate the County's activities from within Will County, Illinois. As a result, the County is a citizen of Illinois.

2. Essex is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 4521 Highwoods Parkway, Glen Allen, Virginia. On information and belief, all Essex executive level officers direct, control and coordinate the company's activities from Glen Allen, Virginia. As a result, Essex is a citizen of Delaware and Virginia.

3. AAIC is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 555 College Road East, Princeton, New Jersey. On information and belief, all AAIC executive level officers direct, control and coordinate the company's activities from Princeton, New Jersey. As a result, AAIC is a citizen of Delaware and New Jersey.

4. St. Paul is a corporation organized and existing under the laws of Minnesota, with its principal place of business at 385 Washington St., St. Paul, Minnesota. On information and belief, all St. Paul executive level officers direct, control and coordinate the company's activities from St. Paul, Minnesota. As a result, St. Paul is a citizen of Minnesota.

**JURISDICTION AND VENUE**

5. There is complete diversity of citizenship between the County and each of the Third-Party Defendants.

6. The amount in controversy is a minimum of $1,860,166.80 and therefore exceeds the jurisdictional threshold of $75,000.

7.  This Court has diversity jurisdiction over the present action pursuant to 28 U.S.C. §1332, and jurisdiction to render a declaratory judgment pursuant to 28 U.S.C. §2201.

8.  Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. §1391(a)(1) or (2). Each of the Third-Party Defendants transacts business and is subject to personal jurisdiction in the Northern District of Illinois, and as such is a resident of this District. Alternatively, all Third-Party Defendants do not reside in the same State, and as such, venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District.

## **BACKGROUND ALLEGATIONS**

9.  Plaintiffs originally filed this action on November 10, 2004, alleging claims against Will County and the individual detective defendants arising under 42 U.S.C. § 1983. Plaintiff's claims related to law enforcement activities conducted by the Defendants in connection with the investigation and arrest of Plaintiff Kevin Fox. Plaintiffs alleged that the Defendants committed various wrongful and tortious acts in the conduct of law enforcement activities, and alleged violations of Mr. Fox's civil rights.

10. On December 20, 2007, pursuant to a jury verdict, judgment was entered in this matter in favor of the Plaintiffs Kevin Fox and Melissa Fox for $15,500,000. The total award of damages to Plaintiff Kevin Fox was $9,300,000. The total award of damages to Melissa Fox was $6,200,000.

11. On motions after the verdict, the Court struck all punitive damages

awarded to Melissa Fox, at which point the total award in her favor was reduced to $3,700,000. The Court also struck the jury's award of $100,000 against Defendant Wachtl in favor of Kevin Fox, resulting in the remaining total award to him of $9,200,000.

12. On September 16, 2008, this Court entered an order approving the settlement of claims against Defendant Estate of John Ruettiger and in favor of both Plaintiffs. As a result, the total outstanding award to the Plaintiffs at that time was $8,500,000 to Plaintiff Kevin Fox and $3,600,000 to Plaintiff Melissa Fox.

13. On October 28, 2008, Defendants filed a timely notice of appeal of the judgment.

14. On April 7, 2010, the Seventh Circuit affirmed in part and reversed and vacated in part this Court's judgment. Plaintiffs accepted remittiturs pursuant to the Seventh Circuit's opinion.

15. Consistent with the Seventh Circuit's opinion, the total damages to Kevin Fox are as follows:

        Compensatory Damages:    $2,016,000.00
        Punitive Damages:          $3,400,000.00

16. Consistent with the Seventh Circuit's opinion, the total damages to Melissa Fox are as follows:

        Compensatory Damages: $2,750,000.00

17. The award of punitive damages is only against the individual Defendants,

not the County itself. Plaintiffs signed releases of their claims of punitive damages against the individual Defendants, in exchange for an assignment of any claims the individual Defendants may have against the insurance carriers at issue for bad faith. As a result Plaintiffs no longer retain, any claim for punitive damages against the Defendants.

18. On June 18, 2010, Plaintiffs filed a motion to enforce judgment against Will County. The motion sought both the judgment amounts as well as various amounts related to attorneys' fees, costs, and interest. In total, Plaintiffs sought $11,411,087.67.

19. On July 1, 2010, the Court entered an agreed order as to partial judgment, based on the agreement of the parties, which was reached after full consultation and approval of the County's insurance carriers, as follows:

>Compensatory Damages to Kevin Fox:
>$2,016,000.00
>Compensatory Damages to Melissa Fox:
>$2,750,000.00
>Post Judgment Interest on the compensatory damages:
>$392,669.58
>District Court costs:
>$82,908.01
>Post Judgment interest on the District Court costs:
>$3,433.19
>Appellate Court Costs:
>$233.10
>Attorneys' fees through June 8, 2008:
>$1,500,000.00
>Post Judgment Interest on Attorneys Fees through June 8, 2008:
>$99,636.87

20. On September 2, 2010 the Court entered an agreed order for Attorney's Fees and Related Non-Taxable Expenses for Kevin Fox's Attorney's Fees in the amount of $507,824.60 for the time period between June 8, 2008 through April 7, 2010.

21. The total amount of the agreed partial judgment for the above items is $7,352,705.35.

22. The remaining amounts on which Plaintiff seeks to enter judgment are still in dispute and the parties are preparing briefs as to those issues.

## **THE POLICIES**

23. The County purchased a follow form multiple line policy of insurance from St. Paul, with an effective date of December 1, 2003, St. Paul Fire and Marine Insurance Company Policy No. GP06301134 ("St. Paul Policy"). The St. Paul policy includes Law Enforcement Liability ('LEL") coverage, with a policy limit of $1,000,000. A copy of the St. Paul Policy is attached as Exhibit A.

24. The County purchased a follow form Commercial Umbrella Liability Policy from AAIC, effective December 1, 2003, American Alternative Insurance Corporation Policy No, 60A2UB00004490 ("AAIC Policy"), with a policy limit of $5,000,000. A copy of the AAIC Policy is attached as Exhibit B. The AAIC policy provides excess coverage for LEL losses in excess of the amount covered by the underlying St. Paul Policy.

25. The County purchased a follow form Excess Liability Policy from Essex, effective December 1, 2003, Essex Insurance Company Policy No. XO-NJ-1822-03 ("Essex Policy"), with a policy limit of $5,000,000. A copy of the Essex Policy is attached as Exhibit C. The Essex Policy provides coverage for LEL losses in excess of the amount covered by the AAIC Policy and the St. Paul Policy.

26. The County paid several hundred thousand dollars in premiums in

consideration for the above policies, and has fully complied with all conditions and obligations on its part to be performed under those policies.

27. The St. Paul Policy, the AAIC Policy and the Essex Policy are all valid and binding contracts.

28. Each of the policies listed above provides full coverage for the damages, fees, costs and expenses incurred in the underlying case and the judgment against the County.

29. The St. Paul Policy is a primary underlying coverage. St. Paul has taken the position that it has paid out the full amount of its policy limits in partial satisfaction of the judgment amounts.

30. The AAIC Policy of the first level of excess liability coverage. AAIC has tendered $5,492,539.55 (in excess of its policy limits) in partial satisfaction of the judgment. AAIC has taken the position that its policy limits are now exhausted (more than exhausted) and that as a result, Essex is liable for the remaining judgment amounts.

31. The Essex Policy is a second level excess liability policy, which coverage is triggered when the loss exceeds the coverage under the AAIC Policy and St. Paul Policy. Essex has failed and refused to pay any amounts under its policy, arguing that either one of the other carriers is required to pay the remaining amounts, or the County is required to pay those amounts, despite having purchased insurance for this very purpose and having paid a premium of $150,000 for such coverage.

32. Will County purchased insurance policies with combined policy limits of $11,000,000, well in excess of the amount of the judgment. Such insurance is more than adequate to make the Plaintiffs whole immediately without any further delay to them,

Will County believes that based on those policies, one or more of the insurance carriers is liable to pay the full judgment to the Plaintiffs and should do so without any further delay.

33.     Will County has been communicating with the insurance carriers for over five months seeking to obtain payment and coverage of the judgment amounts in this case. Will County has made every reasonable effort available to it to secure the rights it purchased in the policies and secure prompt payment for the Plaintiffs. Notwithstanding those efforts, Essex has failed and refused to pay so much as one dollar of the $5,000,000 policy limit and failed to provide the County with any benefit from the policy it purchased for which it paid $150,000 of taxpayer money.

34.     The other two insurance carriers, having already paid more than their respective policy limits, are not surprisingly declining to pay anything further or to step in and pay the amount Essex is refusing to pay. The County is mindful and appreciates that those carriers have paid their policy limits, but to the extent that there is any dispute, as Essex claims, which carrier remains obligated to pay, Will County seeks to add all carriers as defendants. Regardless of which policy ultimately provides coverage for the remaining amounts, one fact that is abundantly clear. The County itself, having purchased three separate follow form insurance policies with limits far in excess of the judgment, should not be left without protection and exposed to liability. The Plaintiffs must be paid immediately and the County firmly agrees. But that payment can, and by contractual right must, come from the insurance carriers from whom the County purchased the policies.

## COUNT I
### (Breach of Contract against Essex)

35. The County restates and re-alleges the allegations in Paragraphs 1-33 as if fully set forth herein.

36. Essex has breached the Essex Policy in that it has failed and refused to provide coverage for covered losses incurred by the County.

37. As a result of this breach, the County has been or will be damaged in an amount in excess of $1,860,166.80.

**WHEREFORE**, Third-Party Plaintiff, Will County, respectfully requests that this Court enter judgment in its favor and against Essex Insurance Company in an amount in excess of $1,860,166.80, as well as all attorneys' fees, costs and expenses incurred by the County, and for further and additional relief as the Court deems just.

## COUNT II
### (Wrongful Refusal to Pay Claim)

38. The County restates and re-alleges the allegations in Paragraphs 1-36 as though fully set forth herein as its allegations in this Paragraph.

39. At all times mentioned herein, there existed in the State of Illinois a statute commonly referred to as 215 ILCS 5/155 that provided as follows:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

      (a)    60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

      (b)    $60,000;

      (c)    the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155.

40. Essex violated the above statute in that Essex failed and refused to comply with its requirements to pay amounts incurred by the County and covered by the Essex Policy, and notice demand and being afforded multiple opportunities to do so.

41. Essex has no reasonable basis upon which to deny coverage and has not articulated any reasonable basis for its failure to pay.

42. Essex's failures and refusal set forth in Paragraph 39 was vexatious and without reasonable cause. At all relevant times Essex has known that the judgment amounts, costs, and attorneys' fees awarded in this case have well exceeded the underlying policy limits of the St. Paul Policy and AAIC Policy. Essex seeks to avoid having to provide the benefit of the policy that the County purchased and has opted to exercise its financial leverage to seek imposing the remaining judgment amounts either on AAIC, or forcing the County to bear the expense of those judgment amounts itself. Essex therefore has sought to cause direct damage and harm to the County for the purpose of securing for itself a pecuniary gain and windfall to which it is not entitled.

**WHEREFORE**, Third-Party Plaintiff, Will County, respectfully requests that this Honorable Court enter judgment in its favor and against Essex Insurance Company and

award damages under 215 ILCS 5/155, and grant such, further and additional relief as the Court deems just.

## COUNT III
### (In the Alternative Declaratory Judgment against All Third-Party Defendants)

43. The County restates and re-alleges the allegations in Paragraphs 1-42 as though fully set forth herein as its allegations in this Paragraph.

44. There is presently a live and active dispute whether Essex is liable to pay the amounts of the judgment in the underlying case, or whether, as Essex maintains, either AAIC, St. Paul or the County are liable to pay such amounts.

45. AAIC and St. Paul deny that they are liable to pay any remaining amounts.

46. The County denies that it is liable to pay any remaining amounts because all amounts are covered by insurance policies, the combined policy limits of which are more than adequate to pay all judgment amounts to the Plaintiffs.

**WHEREFORE**, Third-Party Plaintiff Will County respectfully requests that the Court enter judgment under 28 U.S.C. § 2201, declaring that either Essex, AAIC or St. Paul, are obligated to pay the remaining amounts of the judgment in the underlying case directly to Plaintiffs Kevin and Melissa Fox, and grant such further and additional relief as the Court deems just.

          Respectfully submitted,

          WILL COUNTY

          By: s/ James W. Glasgow
          James W. Glasgow
          Will County State's Attorney