28-9676-00-9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN FOX & MELISSA FOX, | ) | No. 04-C-7309 |
| | ) | |
| Plaintiffs, | ) | Judge: Hon. John W. Darrah |
| | ) | |
| v. | ) | THIRD PARTY DEFENDANT |
| | ) | ESSEX INSURANCE |
| FORMER WILL COUNTY STATE'S | ) | COMPANY'S ANSWER AND |
| ATTORNEY, JEFFREY TOMCZAK, *et al.* | ) | AFFIRMATIVE DEFENSES AND |
| | ) | TO WILL COUNTY'S AMENDED |
| Defendants. | ) | THIRD-PARTY COMPLAINT |
| | ) | AND COUNTERCLAIM |
| WILL COUNTY, | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| ESSEX INSURANCE COMPANY, *et al.,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Third Party Defendants. | ) | |
| | ) | |
| ESSEX INSURANCE COMPANY, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILL COUNTY, KEVIN & MELISSA | ) | |
| FOX, AMERICAN ALTERNATIVE | ) | |
| INSURANCE CORPORATION AND ST. | ) | |
| PAUL FIRE & MARINE INSURANCE | ) | |
| CO. | ) | |
| | ) | |
| Counter-defendants. | ) | |

1331619.1

## ANSWER

Third-Party Defendant, Essex Insurance Company ("Essex"), by and through the undersigned counsel, for its Answer and Affirmative Defenses to the Amended Third-Party Complaint of Will County ("Amended Third-Party Complaint"), states as follows:

## PARTIES

1.      The County is a municipal corporation organized and existing under the laws of Illinois. All executive level officers direct, control and coordinate the County's activities from within Will County, Illinois. As a result, the County is a citizen of Illinois.

**ANSWER:**      Essex admits the allegations in Paragraph 1 of the Amended Third-Party Complaint.

2.      Essex is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 4521 Highwoods Parkway, Glen Allen, Virginia. On information and belief, all Essex executive level officers direct, control and coordinate the company's activities from Glen Allen, Virginia. As a result, Essex is a citizen of Delaware and Virginia.

**ANSWER:**      Essex admits the allegations in Paragraph 2 of the Amended Third-Party Complaint.

3.      AAIC is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 555 College Road East, Princeton, New Jersey. On information and belief, all AAIC executive level officers direct, control and coordinate the company's activities from Princeton, New Jersey. As a result, AAIC is a citizen of Delaware and New Jersey.

**ANSWER:**      Essex is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Amended Third-Party Complaint and, therefore, denies the same.

4.      St. Paul is a corporation organized and existing under the laws of Minnesota, with its principal place of business at 385 Washington St., St. Paul, Minnesota. On information and belief, all St. Paul executive level officers direct, control and coordinate the company's activities from St. Paul, Minnesota. As a result, St. Paul is a citizen of Minnesota.

2

**ANSWER:** Essex is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Amended Third-Party Complaint and, therefore, denies the same.

## JURISDICTION AND VENUE

5.     There is complete diversity of citizenship between the County and each of the Third-Party Defendants.

**ANSWER:** Essex admits that there is diversity of citizenship between the County and Essex. Essex is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5 of the Amended Third-Party Complaint that are directed to other Third-Party Defendants and, therefore, denies the same. Essex also states that there is not diversity of citizenship between the County and the other necessary and indispensible parties, Kevin and Melissa Fox.

6.     The amount in controversy is a minimum of $1,860,166.80 and therefore exceeds the jurisdictional threshold of $75,000.

**ANSWER:** Essex admits the allegations in Paragraph 6 of the Amended Third-Party Complaint.

7.     This Court has diversity jurisdiction over the present action pursuant to 28 U.S.C. §1332, and jurisdiction to render a declaratory judgment pursuant to 28 U.S.C. §2201.

**ANSWER:** Essex denies the allegations in Paragraph 7 of the Amended Third-Party Complaint.

8.     Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. §1391(a)(1) or (2). Each of the Third-Party Defendants transacts business and is subject to personal jurisdiction in the Northern District of Illinois, and as such is a resident of this District. Alternatively, all Third-Party Defendants do not reside in the same State, and as such, venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER:** Essex admits the allegations in Paragraph 8 of the Amended Third-Party Complaint that are directed to Essex. Essex is without knowledge or information sufficient to form a

3

belief as to the truth of the allegations in Paragraph 8 of the Amended Third-Party Complaint that are

directed to other Third-Party Defendants and, therefore, denies the same.

## BACKGROUND ALLEGATIONS

9.      Plaintiffs originally filed this action on November 10, 2004, alleging claims against Will County and the individual detective defendants arising under 42 U.S.C. § 1983. Plaintiff's claims related to law enforcement activities conducted by the Defendants in connection with the investigation and arrest of Plaintiff Kevin Fox. Plaintiffs alleged that the Defendants committed various wrongful and tortious acts in the conduct of law enforcement activities, and alleged violations of Mr. Fox's civil rights.

**ANSWER:**      Essex admits the allegations in Paragraph 9 of the Amended Third-Party

Complaint.

10.      On December 20, 2007, pursuant to a jury verdict, judgment was entered in this matter in favor of the Plaintiffs Kevin Fox and Melissa Fox for $15,500,000. The total award of damages to Plaintiff Kevin Fox was $9,300,000. The total award of damages to Melissa Fox was $6,200,000.

**ANSWER:**      Essex admits the allegations in Paragraph 10 of the Amended Third-Party

Complaint.

11.      On motions after the verdict, the Court struck all punitive damages awarded to Melissa Fox, at which point the total award in her favor was reduced to $3,700,000. The Court also struck the jury's award of $100,000 against Defendant Wachtl in favor of Kevin Fox, resulting in the remaining total award to him of $9,200,000.

**ANSWER:**      Essex admits the allegations in Paragraph 11 of the Amended Third-Party

Complaint.

12.      On September 16, 2008, this Court entered an order approving the settlement of claims against Defendant Estate of John Ruettiger and in favor of both Plaintiffs. As a result, the total outstanding award to the Plaintiffs at that time was $8,500,000 to Plaintiff Kevin Fox and $3,600,000 to Plaintiff Melissa Fox.

**ANSWER:**      Essex admits the allegations in Paragraph 12 of the Amended Third-Party

Complaint.

1331619.1

13.     On October 28, 2008, Defendants filed a timely notice of appeal of the judgment.

**ANSWER:**     Essex admits the allegations in Paragraph 13 of the Amended Third-Party

Complaint.

14.     On April 7, 2010, the Seventh Circuit affirmed in part and reversed and vacated in part this Court's judgment. Plaintiffs accepted remittiturs pursuant to the Seventh Circuit's opinion.

**ANSWER:**     Essex admits the allegations in Paragraph 14 of the Amended Third-Party

Complaint.

15.     Consistent with the Seventh Circuit's opinion, the total damages to Kevin Fox are as follows:

|                       |                |
|-----------------------|----------------|
| Compensatory Damages: | $2,016,000.00  |
| Punitive Damages:     | $3,400,000.00  |

**ANSWER:**     Essex admits the allegations in Paragraph 15 of the Amended Third-Party

Complaint.

16.     Consistent with the Seventh Circuit's opinion, the total damages to Melissa Fox are as follows:

Compensatory Damages: $2,750,000.00

**ANSWER:**     Essex admits the allegations in Paragraph 16 of the Amended Third-Party

Complaint.

17.     The award of punitive damages is only against the individual Defendants, not the County itself. Plaintiffs signed releases of their claims of punitive damages against the individual Defendants, in exchange for an assignment of any claims the individual Defendants may have against the insurance carriers at issue for bad faith. As a result Plaintiffs no longer retain, any claim for punitive damages against the Defendants.

**ANSWER:**     Essex admits that the punitive damages awarded in favor of the Fox Plaintiffs

was against the individual Defendant Detectives Swearengen, Hayes and Guilfoyle and not against the

County of Will. Essex further admits that the Fox Plaintiffs entered into purported Assignments with

the foregoing Detectives that released them from any liability for punitive damages awarded in favor

5

of the Fox Plaintiffs. The remaining allegations of Paragraph 17 of the Amended Third-Party

Complaint characterize the terms of the purported Assignments, which speak for themselves.

18.     On June 18, 2010, Plaintiffs filed a motion to enforce judgment against Will County. The motion sought both the judgment amounts as well as various amounts related to attorneys' fees, costs, and interest In total, Plaintiffs sought $11,411,087.67.

**ANSWER:**     Essex admits the allegations in Paragraph 18 of the Amended Third-Party

Complaint.

19.     On July 1, 2010, the Court entered an agreed order as to partial judgment, based on the agreement of the parties, which was reached after full consultation and approval of the County's insurance carriers, as follows:

> Compensatory Damages to Kevin Fox:
> $2,016,000.00
> Compensatory Damages to Melissa Fox:
> $2,750,000.00
> Post Judgment Interest on the compensatory damages:
> $392,669.58
> District Court costs:
> $82,908.01
> Post Judgment interest on the District Court costs:
> $3,433.19
> Appellate Court Costs:
> $233.10
> Attorneys' fees through June 8, 2008:
> $1,500,000.00
> Post Judgment Interest on Attorneys Fees through June 8, 2008:
> $99,636.87

**ANSWER:**     Essex admits the allegations in Paragraph 19 of the Amended Third-Party

Complaint.

20.     On September 2, 2010 the Court entered an agreed order for Attorney's Fees and Related Non-Taxable Expenses for Kevin Fox's Attorney's Fees in the amount of $507,824.60 for the time period between June 8, 2008 through April 7, 2010.

**ANSWER:**     Essex admits the allegations in Paragraph 20 of the Amended Third-Party

Complaint.

21.     The total amount of the agreed partial judgment for the above items is $7,352,705.35.

6

**ANSWER:** Essex admits the allegations in Paragraph 21 of the Amended Third-Party Complaint.

22. The remaining amounts on which Plaintiff seeks to enter judgment are still in dispute and the parties are preparing briefs as to those issues.

**ANSWER:** Essex admits only that the amounts for which the Fox Plaintiffs seek to enter judgment are in dispute in the underlying lawsuit. Essex is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 of the Amended Third-Party Complaint.

## THE POLICIES

23. The County purchased a follow form multiple line policy of insurance from St. Paul, with an effective date of December 1, 2003, St. Paul Fire and Marine Insurance Company Policy No. GP06301134 ("St. Paul Policy"). The St. Paul policy includes Law Enforcement Liability (' LEL") coverage, with a policy limit of $1,000,000. A copy of the St. Paul Policy is attached as Exhibit A.

**ANSWER:** Essex admits that St. Paul issued policy No. GP06301134 to the County of Will, the terms of which speak for themselves (the "St. Paul Policy"). A copy of the St. Paul Policy was not attached to the Amended Third-Party Complaint and therefore no answer is required as to the authenticity of the document. To the extent the allegations in Paragraph 23 are inconsistent with the terms of the St. Paul Policy they are denied.

24. The County purchased a follow form Commercial Umbrella Liability Policy from AAIC, effective December 1, 2003, American Alternative Insurance Corporation Policy No, 60A2UB00004490 ("AAIC Policy"), with a policy limit of $5,000,000. A copy of the AAIC Policy is attached as Exhibit B. The AAIC policy provides excess coverage for LEL losses in excess of the amount covered by the underlying St. Paul Policy.

**ANSWER:** Essex admits that American Alternative Insurance Corporation ("AAIC") issued commercial umbrella policy No. 60-A2-UB-000044900 to the County of Will, the terms of which speak for themselves ("AAIC Policy"). A copy of the AAIC Policy was not attached to the Amended Third-Party Complaint and therefore no answer is required as to the authenticity of the

7

document. To the extent the allegations in Paragraph 24 are inconsistent with the terms of the AAIC

Policy they are denied.

25.     The County purchased a follow form Excess Liability Policy from Essex, effective December 1, 2003, Essex Insurance Company Policy No. XO-NJ-1822-03 ("Essex Policy"), with a policy limit of $5,000,000. A copy of the Essex Policy is attached as Exhibit C. The Essex Policy provides coverage for LEL losses in excess of the amount covered by the AAIC Policy and the St. Paul Policy.

**ANSWER:**     Essex admits that Essex it issued excess insurance policy No. X0-NJ-1A22-03

to the County of Will, the terms of which speak for themselves (the "Essex Policy"). A copy of the

Essex policy was not attached to the Amended Third-Party Complaint and therefore no answer is

required as to the authenticity of the document. To the extent the allegations in Paragraph 25 are

inconsistent with the terms of the Essex Policy they are denied.

26.     The County paid several hundred thousand dollars in premiums inconsideration for the above policies, and has fully complied with all conditions and obligations on its part to be performed under those policies.

**ANSWER:**     Essex admits that the County of Will paid the premium for the Essex Policy.

Essex is without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 26 of the Amended Third-Party Complaint and, therefore, denies the same.

27.     The St. Paul Policy, the AAIC Policy and the Essex Policy are all valid and binding contracts.

**ANSWER:**     Essex admits that the Essex Policy is a "valid and binding contract." Essex is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 27 of the Amended Third-Party Complaint and, therefore, denies the same.

28.     Each of the policies listed above provides full coverage for the damages, fees, costs and expenses incurred in the underlying case and the judgment against the County.

**ANSWER:**     Essex denies the allegations of Paragraph 28 of the Amended Third-Party

Complaint to the extent they are directed to Essex. Essex is without knowledge or information

1331619.1

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28 as directed to

other third-party defendants and, therefore, denies the same.

29. The St. Paul Policy is a primary underlying coverage. St. Paul has taken the position that it has paid out the full amount of its policy limits in partial satisfaction of the judgment amounts.

**ANSWER:** Essex admits that the St. Paul policy provides primary general liability

insurance to the County of Will and that the terms of the St. Paul Policy speak for themselves. Essex

is without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 29 and, therefore, denies the same.

30. The AAIC Policy of the first level of excess liability coverage. AAIC has tendered $5,492,539.55 (in excess of its policy limits) in partial satisfaction of the judgment. AAIC has taken the position that its policy limits are now exhausted (more than exhausted) and that as a result, Essex is liable for the remaining judgment amounts.

**ANSWER:** Essex admits that AAIC issued a commercial umbrella policy to the County of

Will and that the terms of the AAIC Policy speak for themselves. Essex further admits that AAIC

paid an amount in excess of the applicable limit of liability of the AAIC Policy in partial satisfaction

of the judgment in the underlying Fox Lawsuit . Essex denies the remaining allegations in Paragraph

30 of the Amended Third-Party Complaint.

31. The Essex Policy is a second level excess liability policy, which coverage is triggered when the loss exceeds the coverage under the AAIC Policy and St. Paul Policy. Essex has failed and refused to pay any amounts under its policy, arguing that either one of the other carriers is required to pay the remaining amounts, or the County is required to pay those amounts, despite having purchased insurance for this very purpose and having paid a premium of $150,000 for such coverage.

**ANSWER:** Essex admits that the Essex Policy is an excess policy the terms of which

speak for themselves. The remaining allegations in Paragraph 31 of the Amended Third-Party

Complaint set forth legal conclusions to which no answer is required. To the extent that an answer is

required, Essex denies the remaining allegations in Paragraph 31.

9

32.     Will County purchased insurance policies with combined policy limits of $11,000,000, well in excess of the amount of the judgment. Such insurance is more than adequate to make the Plaintiffs whole immediately without any further delay to them, Will County believes that based on those policies, one or more of the insurance carriers is liable to pay the full judgment to the Plaintiffs and should do so without any further delay.

**ANSWER:**     The allegations in Paragraph 32 of the Amended Third-Party Complaint set

forthlegal conclusions to which no answer is required. To the extent it is deemed that any facts are

alleged in Paragraph 32, Essex denies the allegations as directed to Essex.  Essex is without

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32

of the Amended Third-Party Complaint as directed to other Third-Party Defendants and, therefore,

denies the same.

33.     Will County has been communicating with the insurance carriers for over five months seeking to obtain payment and coverage of the judgment amounts in this case. Will County has made every reasonable effort available to it to secure the rights it purchased in the policies and secure prompt payment for the Plaintiffs. Notwithstanding those efforts, Essex has failed and refused to pay so much as one dollar of the $5,000,000 policy limit and failed to provide the County with any benefit from the policy it purchased for which it paid $150,000 of taxpayer money.

**ANSWER:**     In response to Paragraph 33, Essex admits that it has communicated with the

County of Will regarding satisfaction of the judgment in the underlying Fox Lawsuit.  Essex denies

that it owes any obligation to the County for the underlying Fox judgment under the terms of the

Essex Policy. The remaining allegations in Paragraph 33 of the Amended Third-Party Complaint set

forth legal conclusions to which no answer is required.  To the extent a further answer is required,

Essex denies the remaining allegations in Paragraph 33.

34.     The other two insurance carriers, having already paid more than their respective policy limits, are not surprisingly declining to pay anything further or to step in and pay the amount Essex is refusing to pay. The County is mindful and appreciates that those carriers have paid their policy limits, but to the extent that there is any dispute, as Essex claims, which carrier remains obligated to pay, Will County seeks to add all carriers as defendants. Regardless of which policy ultimately provides coverage for the remaining amounts, one fact that is abundantly clear. The County itself, having purchased three separate follow form insurance policies with limits far in excess of the judgment, should not be left without protection and exposed to liability. The Plaintiffs must be paid immediately and the County firmly agrees. But that payment

10

can, and by contractual right must, come from the insurance carriers from whom the County purchased the policies.

**ANSWER:** The allegations in Paragraph 34 of the Amended Third-Party Complaint sets forth attorney argument and legal conclusions to which no answer is required. To the extent an answer is required, Essex denies the allegations in Paragraph 34.

## COUNT I
### (Breach Of Contract Against Essex)

35. The County restates and re-alleges the allegations in Paragraphs 1-34 as if fully set forth herein.

**ANSWER:** Essex repeats and restates its answers to Paragraphs 1-34 of the Amended Third-Party Complaint as if fully set forth herein.

36. Essex has breached the Essex Policy in that it has failed and refused to provide coverage for covered losses incurred by the County.

**ANSWER:** Essex denies the allegations in Paragraph 36 of the Amended Third-Party Complaint.

37. As a result of this breach, the County has been or will be damaged in an amount in excess of $1,860,166.80.

**ANSWER:** Essex denies the allegations in Paragraph 37 of the Amended Third-Party Complaint.

## COUNT II
### (Wrongful Refusal To Pay Claim)

38. The County restates and re-alleges the allegations in Paragraphs 1-37 as though fully set forth herein as its allegations in this Paragraph.

**ANSWER:** Essex repeats and restates its answers to Paragraphs 1-37 of the Amended Third-Party Complaint as if fully set forth herein.

39. At all times mentioned herein, there existed in the State of Illinois a statute commonly referred to as 215 ILCS 5/155 that provided as follows:

In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a)     60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)     $60,000;

(c)     the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155.

**ANSWER:**     Essex admits that there exists in the State of Illinois a statute at 215 ILCS

5/155, the terms of which speak for themselves.

40.     Essex violated the above statute in that Essex failed and refused to comply with its requirements to pay amounts incurred by the County and covered by the Essex Policy, and notice demand and being afforded multiple opportunities to do so.

**ANSWER:**     Essex denies the allegations in Paragraph 40 of the Amended Third-Party

Complaint.

41.     Essex has no reasonable basis upon which to deny coverage and has not articulated any reasonable basis for its failure to pay.

**ANSWER:**     Essex denies the allegations in Paragraph 41 of the Amended Third-Party

Complaint.

42.     Essex's failures and refusal set forth in Paragraph 39 was vexatious and without reasonable cause. At all relevant times Essex has known that the judgment amounts, costs, and attorneys' fees awarded in this case have well exceeded the underlying policy limits of the St. Paul Policy and AAIC Policy. Essex seeks to avoid having to provide the benefit of the policy that the County purchased and has opted to exercise its financial leverage to seek imposing the remaining judgment amounts either on AAIC, or forcing the County to bear the expense of those judgment amounts itself. Essex therefore has sought to cause direct damage and harm to the

12

County for the purpose of securing for itself a pecuniary gain and windfall to which it is not entitled.

**ANSWER:** Essex denies the allegations in Paragraph 42 of the Amended Third-Party Complaint.

## COUNT III
### (In the Alternative Declaratory Judgment Against All Third-Party Defendants)

43. The County restates and re-alleges the allegations in Paragraphs 1-42 as though fully set forth herein as its allegations in this Paragraph.

**ANSWER:** Essex repeats and restates its answers to Paragraphs 1-42 of the Amended Third-Party Complaint as if fully set forth herein.

44. There is presently a live and active dispute whether Essex is liable to pay the amounts of the judgment in the underlying case, or whether, as Essex maintains, either AAIC, St. Paul or the County are liable to pay such amounts.

**ANSWER:** The allegations in Paragraph 44 of the Amended Third-Party Complaint set forth legal conclusions to which no answer is required. To the extent an answer is required, Essex denies the allegations in Paragraph 44 of the Amended Third-Party Complaint.

45. AAIC and St. Paul deny that they are liable to pay any remaining amounts.

**ANSWER:** Essex is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Amended Third-Party Complaint and, therefore denies the same.

46. The County denies that it is liable to pay any remaining amounts because all amounts are covered by insurance policies, the combined policy limits of which are more than adequate to pay all judgment amounts to the Plaintiffs.

**ANSWER:** The allegations in Paragraph 46 of the Amended Third-Party Complaint set forth legal conclusions to which no answer is required. To the extent an answer is required, Essex denies the allegations in Paragraph 44 of the Amended Third-Party Complaint.

13

47. To the extent not expressly admitted above, Essex denies the remaining allegations of the Third-Party Complaint.

WHEREFORE, Essex requests that this Court enter an Order and Judgment finding and declaring that:

a.) Essex has no duty or obligation to pay any sums whatsoever to the County of Will under the Essex Policy with respect to any judgments in the Underlying Fox Lawsuit under the terms of the Essex Policy;

b.) Essex has no duty or obligation to pay any sums whatsoever to the County of Will under the Essex Policy regarding any punitive damages awarded to Kevin Fox in the underlying Fox Lawsuit; and

c.) Essex is entitled to such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Essex sets forth the following separate and distinct defenses to the County of Will's Amended Third-Party Complaint. Essex sets forth these matters to apprise the County of Will of certain potentially applicable defenses. By listing any matter as an affirmative defense, Essex does not assume the burden of proof as to any matter upon which the County of Will bears the burden of proof under the applicable law.

## FIRST AFFIRMATIVE DEFENSE

The Amended Third-Party Complaint fails to set forth a viable cause of action as against Essex.

## SECOND AFFIRMATIVE DEFENSE

Essex has no duty or obligation to pay any fees, costs, damages, or any other sum or amount whatsoever regarding the underlying Fox Lawsuit under the terms of the Essex Policy.

1331619.1

### THIRD AFFIRMATIVE DEFENSE

The Essex Policy includes Endorsement 4 which states:

### PUNITIVE DAMAGES EXCLUSION

This policy shall not apply to Ultimate Net Loss arising out of any punitive damages, exemplary damages, treble damages, or any damages resulting from the multiplication of compensatory damages, including any other fines or penalties.

(See, Ex. I at Endorsement 4, MEU-5260-0895).

Coverage for any punitive damage award is barred by this endorsement.

### FOURTH AFFIRMATIVE DEFENSE

Essex has no duty to pay the punitive damages awarded to Kevin Fox in the underlying Fox Lawsuit based upon Illinois law that holds that an insurer has no duty to pay punitive damages based on the acts and omissions of the defendant/insured. The punitive damages awarded Kevin Fox for which the County of Will potentially seeks indemnity are based upon acts and/or omissions of Will County Detectives Swearengen, Hayes and Guilfoyle and, as a result are not insurable as matter of law.

### FIFTH AFFIRMATIVE DEFENSE

The County of Will may have no legal obligation to pay punitive damages awarded Kevin Fox in the underlying *Fox* Lawsuit.

### SIXTH AFFIRMATIVE DEFENSE

The County's Third-Party Complaint should be dismissed for failure to join the Foxes as necessary and indispensable parties to this dispute, and because the joinder of the Foxes to the Third-Party dispute would destroy the jurisdiction of the Court.

WHEREFORE, Essex requests that this Court enter an Order and Judgment finding and declaring that:

1331619.1

a.)    Essex has no duty or obligation to pay any sums whatsoever to the County of Will under the Essex Policy with respect to any judgments in the Underlying Fox Lawsuit under the terms of the Essex Policy;

b.)    Essex has no duty or obligation to pay any sums whatsoever to the County of Will under the Essex Policy regarding any punitive damages awarded to Kevin Fox in the underlying Fox Lawsuit; and

c.)    Essex is entitled to such other and further relief as this Court deems just and proper.

## COUNTERCLAIM

Third-Party Defendant, Essex Insurance Company ("Essex"), by and through the undersigned counsel, for its Counterclaim against the County of Will ("the County") and others, states as follows:

### NATURE OF THE ACTION

1.    This is an action for declaratory relief arising out of existing, actual controversies as to the parties' respective rights and obligations under insurance policies which were issued to the County by Essex Insurance Company ("Essex"), American Alternative Insurance Corporation ("AAIC") and St. Paul, Fire & Marine Insurance Company ("St. Paul") in relation to: (a) an underlying award of punitive damages; and (b) an underlying award of attorneys' fees, plus interest on those fees.

### THE PARTIES, JURISDICTION AND VENUE

2.    Essex is a Delaware corporation with its principal place of business in Virginia. At all relevant times, Essex conducted business as an unauthorized surplus lines insurer in Illinois.

3.    Kevin and Melissa Fox are married and are residents and citizens of Illinois.

4.    AAIC is a Delaware corporation with its principal place of business in New Jersey. At all relevant times, AAIC conducted business as an insurance company in Illinois.

5.    St. Paul is a Minnesota corporation with its principal place of business in Minnesota. At all relevant times, St. Paul conducted business as an insurance company in Illinois.

16

6.      The County is a municipal corporation organized and existing under the laws of Illinois, with its principal place of business in Illinois, such that the County is a resident and citizen of Illinois.

7.      While Essex maintains that the Court does not have jurisdiction over the Third-Party Complaint, its motion to dismiss was denied.  As such, Essex alternatively alleges that if the Court has jurisdiction over the Amended Third-Party Complaint based upon supplemental jurisdiction or otherwise, then the Court also has jurisdiction over this Counterclaim on the same basis.

8.      Venue is proper pursuant to 28 U.S.C. Sec. 1391.

## GENERAL ALLEGATIONS

9.      In or about November of 2004, the Foxes filed their action in the United States District Court for the Northern District of Illinois, Case No. 04C7309, against the County, certain individual detectives and others, alleging the defendants committed various civil rights violations and/or wrongful or tortious acts in the course of the investigation and arrest of Kevin Fox in connection with the abduction and murder of his daughter, Riley Fox (the "Underlying Action").

10.     On or about December 20, 2007, judgment was entered in the Underlying Action in favor of the Foxes.  The judgment included $3.4 million in punitive damages awarded to Kevin Fox as against certain individual defendant detectives, Scott Swearengen ("Swearengen"), Edward Hayes ("Hayes") and Michael Guilfoyle ("Guilfoyle").

11.     On or about March 12, 2008, detectives Swearengen, Hayes and Guilfoyle executed assignments as to any rights they may have against Essex, AAIC and St. Paul in favor of the Foxes. Upon information and belief, true and accurate copies of the Assignments are attached as Exhibits A-C.

17

12.     On or about October 28, 2008, the Defendants in the Underlying Action filed a timely notice of appeal of the judgment.

13.     On or about January 20, 2009, the Foxes executed Releases in favor of detectives Swearengen, Hayes and Guilfoyle, releasing them from liability for the punitive damages awarded against them in the Underlying Action. Upon information and belief, true and accurate copies of the Releases are attached as Exhibits D-F.

14.     On or about April 7, 2010, the Seventh Circuit affirmed in part and reversed and vacated in part the judgment in the Underlying Action. The Seventh Circuit affirmed the underlying punitive damages award in relation to Kevin Fox against the individual defendant detectives at issue.

15.     On or about June 18, 2010, the Foxes filed a motion to enforce the judgment against the County seeking, among other things, the punitive damages awarded to Kevin Fox, attorneys' fees incurred by the Foxes through June 8, 2008 in the Underlying Action, as well as additional attorneys' fees, costs and interest.

16.     On or about July 1, 2010, the court in the Underlying Action entered an agreed partial judgment which included, among other things, the Foxes' attorneys' fees in the amount of $1.5 million, as incurred through June 8, 2008.

17.     While the Foxes also seek to recover certain additional attorneys' fees in the Underlying Action, as well as interest in relation to the additional attorneys' fees, those amounts are still in dispute in the Underlying Action and have yet to be resolved by the court.

## THE POLICIES

18.     St. Paul issued Policy No. GP06301134 to the County for the policy period from December 1, 2003 to December 1, 2004 ("St. Paul Policy"). The St. Paul Policy includes limits of $1 million per occurrence, subject to a $250,000 self-insured retention, and it includes coverage for law

1331619.1

enforcement liability. Upon information and belief, a true and accurate copy of the St. Paul Policy is attached as Exhibit G.

19.     AAIC issued an umbrella liability policy, No. 60A2UB000044900, to the County for the policy period from December 1, 2003 to December 1, 2004 (the "AAIC Policy"). The AAIC Policy includes limits of $5 million each occurrence in excess of the underlying St. Paul primary limits. Upon information and belief, a true and accurate copy of the AAIC Policy is attached as Exhibit H.

20.     Essex issued an excess liability policy, No. X0-NJ-1822-03, to the County for policy period from December 1, 2003 to December 1, 2004 (the "Essex Policy"). The Essex limits are $5 million each occurrence in excess of underlying limits, which include the $5 million American limits and the St. Paul primary limits. A true and accurate copy of the Essex Policy is attached as Exhibit I.

## THE DISPUTES

21.     The Foxes previously filed a declaratory judgment action against Essex, AAIC and St. Paul in the Circuit Court of Cook County, Illinois, as Case No. 08 CH 14936, claiming they are entitled to recover the punitive damages assessed in the Underlying Action from the insurers by way of the Assignments and Releases they received from the detectives, and due to alleged conduct by the insurers in connection with the defense and handling of the Underlying Action. A true and accurate copy of the Foxes' initial Complaint in Case No. 08 CH 14936 (without exhibits) is attached as Exhibit J.

22.     Case No. 08 CH 14936 was voluntarily dismissed by the Foxes without prejudice.

23.     The Foxes filed a motion in the Underlying Action claiming, *inter alia,* they are entitled to recover their punitive damages against Essex, AAIC and St. Paul. A true and accurate copy

of the Foxes' motion in the Underlying Action setting forth their current allegations is attached as Exhibit K.

24.     Subsequent to the filing of the Amended Third-Party Complaint, the Foxes withdrew their motion to enforce judgments and, upon information and belief, the Foxes no longer seek recovery of the punitive damages award from Will County or from Essex. However, upon information and belief, the punitive damages award has not been paid to Kevin Fox.

25.     To the extent that any party seeks to hold Essex liable for the punitive damages award, Essex denies such liability and, therefore, seeks affirmative declaratory relief in this Counterclaim.

26.     Essex expressly denies the allegations made by the Foxes in their prior declaratory action and in their motion in the Underlying Action, and Essex denies liability for any punitive damages which were awarded against Kevin Fox, whether under the terms of the Essex Policy or otherwise.

27.     In relation to the attorneys' fees awarded in the Underlying Action or which may be awarded in the future, and any interest in relation to the attorneys' fees, the County claims Essex is responsible for an amount in excess of $1,266,000.00 under the Essex Policy.

28.     Essex denies any liability for any of the attorneys' fees awarded to the Foxes in the Underlying Action, or any interest in relation to the attorneys' fees, under the terms of the Essex Policy or otherwise.

29.     Actual and justiciable controversies exist between the parties in relation to the underlying award of punitive damages, and the Foxes' attorneys' fees and interest on the attorneys' fees, which may be determined by judgment or order of this Court pursuant to 735 ILCS 5/2-701.

1331619.1

30.     Because the Court's ruling in this case could potentially require interpretation of the AAIC and St. Paul Policies, or could potentially impact AAIC and St. Paul, both are necessary and interested parties.

## COUNT I:  DECLARATORY JUDGMENT - PUNITIVE DAMAGES

31.     Essex repeats and incorporates here by reference Paragraphs 1-30 of its Counterclaim as if fully set forth here.

32.     The Essex Policy states, in part:

### Section C - Conditions

\*     \*     \*

**4.     Defense**

> The Company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceeding instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claim, suit or proceeding relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy. If the Company avails itself of such right and opportunity the Company shall do so at its own expense.

(See, Ex. I at MEU-2000-0100, page 3).

33.     The Essex Policy includes Endorsement 4 which states:

### PUNITIVE DAMAGES EXCLUSION

This policy shall not apply to Ultimate Net Loss arising out of any punitive damages, exemplary damages, treble damages, or any damages resulting from the multiplication of compensatory damages, including any other fines or penalties.

(See, Ex. I at Endorsement 4, MEU-5260-0895).

34.     The punitive damages awarded to Kevin Fox against the defendant detectives are not covered by the terms of the Essex Policy.

35.     Punitive damages are not insurable under Illinois law and/or public policy.

21

36.     Pursuant to the terms of the Essex Policy, Essex was never obligated to and it did not defend the County or any of the individual defendant detectives in the Underlying Action prior to the judgment.

37.     Pursuant to the terms of the Essex Policy, Essex was never obligated to and it did not retain defense counsel to represent the County or the individual defendants in the Underlying Action and it did not control the defense of the Underlying Action.

38.     Essex never breached any obligations owed to its insureds under the Essex Policy in connection with the defense of the Underlying Action and it is not estopped to raise coverage defenses in connection with any claim for punitive damages made against it.

39.     Essex never received a settlement demand from the Foxes or the County to settle the Underlying Action within its policy limits prior to the judgment.

40.     Upon information and belief, nether AAIC nor St. Paul tendered or otherwise agreed to contribute their underlying policy limits toward a settlement of the Underlying Action prior to the judgment.

41.     Essex never refused to settle the Underlying Action in bad faith or otherwise.

42.     Essex never conceded a responsibility for the punitive damages in the Underlying Action, nor has Essex ever waived its rights to deny an obligation for punitive damages in this matter.

43.     The Releases and Assignments attached as Exhibits A-F preclude the Foxes' claim for punitive damages against Essex.

**WHEREFORE**, Essex respectfully requests that the Court find and declare as follows:

A.     Essex is not liable for any punitive damages awarded to Kevin Fox in the
       Underlying Action;

B.     Essex is afforded such other and further relief as the Court deems just.

1331619.1

## COUNT II: DECLARATORY JUDGMENT - ATTORNEYS' FEES/INTEREST

44.     Essex repeats and incorporates here by reference Paragraphs 1-30 of its Counterclaim as if fully set forth here.

45.     The basis for the courts' award of attorneys' fees to the Foxes in the Underlying Action is 42 U.S.C. §1988.

46.     42 U.S.C. §1988 states, in part:

**Sec. 1988.        Proceedings in vindication of civil rights**

*     *     *

**(b)        Attorney's fees**

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . [.]

47.     The Essex Policy states, in part:

**Section A - Insuring Agreements**

1.      The Company hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance as showing in Item 4. of the Declarations, but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3. of the Declarations.  Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy shown in Item 4. of the Declarations.

*     *     *

**Section B - Definitions**

*     *     *

2.      **Ultimate Net Loss.**

The term "Ultimate Net Loss" shall mean the amount payable in settlement of the liability of the Insured after making deductions for all

23

1331619.1

recoveries and for other valid and collectible insurance, excepting however the policy(ies) of the Underlying Insurer(s). Ultimate Net Loss shall exclude all interest accruing after entry of judgment, costs and expenses, except with the consent of the Company.

(See, Ex. I at MEU-2000-0100, page 2).

48.     Neither the attorneys' fees awarded to the Foxes in the Underlying Case, nor any interest on such fees, fall within the term "ultimate net loss" as used in the Essex Policy.

49.     The Essex Policy does not cover the attorneys' fees awarded to the Foxes in the Underlying Action.

50.     The Essex Policy does not cover any interest awarded in connection with the Foxes' attorneys' fees in the Underlying Action.

**WHEREFORE**, Essex respectfully requests that the Court find and declare as follows:

A.      Essex is not liable for any attorneys' fees which have been or may be awarded to the Foxes in the Underlying Action;

B.      Essex is not liable for any interest in relation to the attorneys' fees which have been or may be awarded to the Foxes in the Underlying Action;

C.      Essex is afforded such other and further relief as the Court deems just.

Dated: November 11, 2010

                                        /s/ Michelle R. Valencic
                                        MICHELLE R. VALENCIC
                                        CLAUSEN MILLER P.C.

AMY R. PAULUS
MICHELLE R. VALENCIC
HILLARY R. AHLE
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
**Attorneys for Third Party Defendant /Counterclaimant Essex Insurance Co.**

24

1331619.1

## CERTIFICATE OF SERVICE

I, Michelle R. Valencic, an attorney of record in this matter, hereby state that, on November 11, 2010, I electronically filed the foregoing Notice of Filing and *Third Party Defendant Essex Insurance Company's Answer And Affirmative Defenses And To Will County's Amended Third-Party Complaint And Counterclaim* using the CM/ECF SYSTEM, which will send notification of such filing to all attorneys of record on this 11th day of November, 2010.


/s/ Michelle R. Valencic
Attorney for Essex Insurance Company


## SERVICE LIST

Counsel for Will County:
Mr. Kevin Clancy
Lowis & Gellen
200 West Adams Street, # 1900
Chicago, IL 60606

Counsel for Will County:
Mr. James Glasgow
Mr. Kenneth A. Grey
Will County State's Attorney's Office
121 N. Chicago St.
Joliet, IL 60432

Counsel for Fox:
Ms. Kathleen T. Zellner
Kathleen T. Zellner & Associates
2215 York Road, Suite # 504
Oakbrook, IL 60523

Counsel for American Alternative:
Mr. Robert J. Bates, Jr.
Bates Carey Nicolaides LLP
191 N. Wacker Dr., # 2400
Chicago, IL 60606

Counsel for St. Paul Fire & Marine:
Mr. Roderick T. Dunne
Carrie A. Von Hoff
Karbal, Cohen, Economou, Silk & Dunne LLC
150 South Wacker Drive, Suite 1700
Chicago, IL 60606