## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN FOX & MELISSA FOX, | ) | |
| Plaintiffs, | ) | No. 04 C 7309 |
| v. | ) | |
| | ) | |
| WILL COUNTY, et al, | ) | Judge John W. Darrah |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| WILL COUNTY | ) |
| Third Party Plaintiff, | ) |
| v. | ) |
| | ) |
| ESSEX INSURANCE COMPANY, a Delaware | ) |
| corporation, AMERICAN ALTERNATIVE INSURANCE | ) |
| CORPORATION, a Delaware corporation, and ST. PAUL | ) |
| FIRE AND MARINE INSURANCE COMPANY, | ) |
| a Minnesota corporation, | ) |
| Third Party Defendants. | ) |
| | ) |

| | |
|---|---|
| KEVIN FOX, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| ESSEX INSURANCE COMPANY, a Delaware | ) |
| corporation, and AMERICAN ALTERNATIVE | ) |
| INSURANCE CORPORATION, a Delaware corporation, | ) |
| | ) |
| Third Party Defendants. | ) |

## PLAINTIFF KEVIN FOX'S
## SECOND AMENDED COMPLAINT AGAINST THIRD PARTY DEFENDANTS

1

Now Comes Plaintiff, Kevin Fox, as assignee of Defendant Detectives Edward Hayes, Scott Swearengen and Michael Guilfoyle's right against their insurers, by and through his undersigned attorneys, and for his Second Amended Complaint against Third-Party Defendants Essex Insurance Company ("Essex") and American Alternative Insurance Corporation ("AAIC"), alleges as follows:

1.      This is an action to obtain a declaration of the parties' rights and obligations pursuant to American Alternative Insurance Corporation Policy No. 60A2UB000044900 ("AAIC Policy") and Essex Insurance Company Policy No. XO-NJ-1822-03 ("Essex Policy"), issued to Will County. This is also an action for breach of contract.

## PARTIES

2.      Kevin Fox, as the assignee of Defendant Detectives Edward Hayes, Scott Swearengen and Michael Guilfoyle, at all times, was and is a citizen of the State of Illinois and resident of the State of Illinois.[1]

3.      Detectives Hayes, Swearengen and Guilfoyle ("Defendant Detectives") are detectives that resided and worked at all relevant times in the State of Illinois.

4.      AAIC is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 555 College Road East, Princeton, New Jersey. On Information and belief, all AAIC executive level officers direct, control and

---

[1] Defendant Wachtl also signed an assignment, but there is no punitive damages award against him. Defendant Ruettiger's estate did not sign an assignment and the judgment against him has been satisfied.

coordinate the company's activities from Princeton, New Jersey. As a result, AAIC is a citizen of Delaware and New Jersey. AAIC does business in Illinois.

5.     AAIC intervened in this matter while it was before the Seventh Circuit for the sole purpose of appealing the punitive damage award and therefore is already a party. AAIC, through its counsel, became involved in every aspect of the litigation "to protect its interests" on September 18, 2007.

6.     Essex is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 4521 Highwoods Parkway, Glen Allen, Virginia. On information and belief, all Essex executive level officers direct, control and coordinate the company's activities from Glen Allen, Virginia. As a result, Essex is a citizen of Delaware and Virginia. Essex does business in Illinois.

7.     Essex was involved in efforts to settle the underlying lawsuit prior to trial. Essex intervened in this matter at the appellate level to appeal the punitive damage award and therefore is already a party in the original action.


## THE UNDERLYING SUIT

8.     Plaintiff and his wife originally filed this action on November 10, 2004, alleging claims against Will County, the Detectives and other now terminated parties arising under 42 U.S.C. § 1983. (Hereinafter referred to as "Fox Litigation"). Plaintiff's claims related to law enforcement activities conducted by the Detectives in connection with the investigation, arrest and prosecution of the Plaintiff. Plaintiff alleged that the Defendant Detectives committed various wrongful and tortious acts in the conduct of law enforcement activities, and alleged violations of Plaintiff's civil rights.

3

9.     The action was then stayed until June 28, 2005, when Kevin Fox was released from Will County Jail and the charges against him nolle prossed.

10.     Throughout the pendency of the trial court action, one law firm, Lowis & Gellen, represented Will County itself and each of the individual defendants.[2] At no time did AAIC or Essex seek to provide separate counsel for the individual detectives.

11.     On December 20, 2007, pursuant to a jury verdict, judgment was entered in this matter in favor of Plaintiffs Kevin and Melissa Fox for $15.5 million. The total award of damages to Plaintiff Kevin Fox was $9.3 million. The total award of damages to Melissa Fox was $6.2 million. Post-trial, Melissa Fox's punitive damages and $100,000 of Kevin Fox's punitive damages award (those assessed against Defendant Detective Brad Wachtl) were stricken. The award was reduced to $12.9 million and after a partial satisfaction of judgment; the amount appealed was $12.2 million.

12.     As a result of the appeal of the jury verdict to the Seventh Circuit Court of Appeals, Defendant Detectives are liable to Kevin Fox for compensatory damages of $2.016 million and punitive damages of $3.4 million. Defendant Detectives are liable to Melissa Fox for compensatory damages of $2.75 million.

13.     After the jury verdict, the Defendant Detectives assigned any and all rights they had against certain entities, including Will County and its insurance companies, to Plaintiffs. (See Assignments, attached and incorporated herein as Group Exhibit "A").

14.     As a result of those Assignments, Plaintiff Kevin Fox, as assignee of any claims against the insurers, is entitled to recover the punitive damages award entered in his favor from the insurers of Will County. The insurance companies are obligated to

---

[2] The one exception to this was Defendant Former State's Attorney Tomczak, who was told of a potential conflict by St. Paul, and informed they would pay for his chosen counsel. Tomczak, properly apprised, chose his own counsel.

indemnify the Detectives for the award assessed against them due to the insurers' breaches of duty.

15.     As described in detail below, Will County and the Defendant Detectives' insurers' actions in this case resulted in a breach of contract and a breach of their fiduciary duty to the insureds. Additionally, the insurers breached their duty by failing to adequately inform the Defendant Detectives of the potential conflicts and failed to inform the Defendant Detectives of their right to individual counsel at the expense of the insurer. These breaches of duty create an estoppel and/or waiver of the insurers' policy defenses.

## JURISDICTION AND VENUE

16.     This is an action brought pursuant to 28 U.S.C. §2201, *et seq*. This is also an action brought pursuant to Illinois common law and Illinois statutes.

17.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332. Plaintiff is a citizen of Illinois and no Defendant is a citizen of Illinois.

18.     The amount in controversy is greater than $75,000.00.

19.     Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. §1391(a)(2). Substantial events giving rise to the claims occurred in this District, including, but not limited to, the trial of the underlying matter.

20.     This Court had original jurisdiction over the underlying matter pursuant to 28 U.S.C. §1983 and 28 U.S.C. §1331.

21.     AAIC and Essex submitted themselves to the personal jurisdiction of this court on March 10, 2009, when the Seventh Circuit granted their motion for intervention. (FRCP 24(a)).

## TIMELINE OF KEY EVENTS

| | |
|---|---|
| 11/10/2004 | Foxes' complaint filed in U.S. District Court against multiple defendants |
| 04/13/2005 | Case stayed |
| 06/28/2005 | Case reinstated |
| 11/08/2005 | St. Paul sends first reservation of rights letter to individual defendant detectives. (Exhibit "B") |
| 01/25/2006 | St. Paul sends letter to Defendant Tomczak regarding conflict of interest. ("C") |
| 05/17/2006 | AAIC sends first reservation of rights letter to Will County but not to the defendant detectives ("D") |
| 10/09/2006 | Essex sends first reservation of rights letter to Will County but not to the defendant detectives. ("E") |
| 10/13/2006 | Lowis & Gellen sends reservation of rights letters to the defendant detectives.  ("F") |
| 10/09/2007 | AAIC sends second reservation of rights letter to Will County but not to the defendant detectives.  ("G") |
| Pre-Trial | Plaintiffs made a demand within the insurers' policy limits.  The case did not settle.  Before verdict, Plaintiffs again made a demand within policy limits.  The case did not settle. |
| 11/06/2007 | Trial begins |
| 11/19/2007 | Essex sends second reservation of rights letter to Will County but not to the defendant detectives ("H") |

| | |
|---|---|
| 12/20/2007 | Verdict in favor of Foxes |
| Post-Verdict | Plaintiffs make another demand within the insurers' policy limits. The case did not settle. |
| 03/12/2008 | Detectives Hayes, Guilfoyle, Swearengen and Wachtl execute assignments, giving the Foxes their right to sue their insurers. |
| 09/25/2008 | Post-Trial Motions Decided: punitive damages award upheld for Kevin Fox and vacated as to Melissa Fox |
| 09/25/2008 | St. Paul's policy limits exhausted by settling with certain defendants |
| 01/30/2009 | Motion to intervene pursuant to FRCP 24(a) in appellate court filed by AAIC and Essex so they can file briefs challenging the punitive damage award |
| 03/10/2009 | Motion to intervene in appellate court granted for AAIC and Essex. AAIC and Essex file joint brief on the issue of punitive damages. |
| 04/07/2010 | Seventh Circuit's decision issued: punitive award to Kevin Fox upheld by Seventh Circuit in the amount of $3.4 million |

## THE INSURANCE POLICIES

22.     Will County purchased a multiple line policy of insurance from St. Paul, with an effective date of December 1, 2003, St. Paul Fire and Marine Insurance Company Policy No. GP 06301134 ("St. Paul Policy"). The St. Paul policy includes Law

Enforcement Liability ("LEL") coverage, with a policy limit of $1,000,000. (A true and correct copy of the St. Paul Policy is attached and incorporated herein as Exhibit "I").

23.     Will County purchased a Commercial Umbrella Liability Policy from AAIC, effective December 1, 2003. American Alternative Insurance Corporation Policy No. 60A2UB000044900 ("AAIC Policy"), with an excess policy limit of $5,000,000. (A true and correct copy of the AAIC Policy is attached and incorporated herein as Exhibit "J"). The AAIC policy provides excess coverage for Law Enforcement Liability "LEL" losses in excess of the amount covered by the underlying St. Paul Policy. The policy has a follow form endorsement.

24.     The County purchased an excess Liability Policy from Essex, effective December 1, 2003. Essex Insurance Company Policy No. XO-NJ-1822-03 ("Essex Policy"), with an excess policy limit of $5,000,000. The Essex Policy provides coverage for LEL losses in excess of the amount covered by the AAIC policy. (A true and correct copy of the Essex Policy is attached and incorporated herein as Exhibit "K"). The policy has a follow form endorsement.

25.     The AAIC Policy and the Essex Policy are both valid and binding contracts of which the Defendant Detectives were third party beneficiaries.

26.     By virtue of the assignments signed on March 12, 2008, Plaintiff is now a third party beneficiary of the policies.

27.     Each policy listed above provides coverage for the damages, fees, costs and expenses incurred in the underlying case, and the judgment against the Defendant Detectives and the County.

28.     AAIC issued umbrella liability insurance to Will County.  AAIC has failed and refused to pay the punitive damage award in favor of Kevin Fox.

29.     The Essex Policy is the second level of coverage, Essex issued an excess liability policy.

30.     Essex has failed and refused to pay the punitive damage award in favor of Kevin Fox.

## AAIC'S BAD FAITH PRIOR TO TRIAL

31.     Prior to trial, a demand was made by Plaintiffs that was within the insurers' policy limits to settle the claims of Kevin and Melissa Fox.

32.     This amount included costs and fees of Plaintiffs' attorneys.

33.     Acceptance of this demand would have eliminated any individual exposure of the Defendant Detectives to punitive damages.

34.     There was a reasonable probability that the insured would be liable for an excess verdict.

35.     The Plaintiffs' demands were within the policy limits.

36.     AAIC had an affirmative duty to evaluate the potential jury verdict on this case.  Prior to the verdict, a representative for AAIC attended almost every day of the trial.  AAIC had exclusive control over the settlement and failed to settle the case within policy limits.

## AAIC'S BAD FAITH BEFORE VERDICT

37.     Prior to closing arguments, Judge Darrah held an informal settlement conference and recommended a number within the policy limits which the Foxes accepted but was rejected by the insurers.

38.     The final verdict of $15.5 million greatly exceeded the policy limits.

39.     AAIC selected the law firm to appeal the compensatory damages award and along with Essex, filed a separate brief appealing the punitive damages award.

40.     When the Seventh Circuit affirmed the judgment in April 2010, greatly in excess of the amount offered by the insurers, their bad faith was established.

41.     As of this date, excluding the punitives, the insurers have incurred liability in the following amounts:

| | |
|---|---|
| $1,000,000 | Paid by St. Paul to settle out certain defendants and partially satisfy judgment |
| $1,500,000 | Attorneys' fees for trial |
| $99,636.87 | Interest on Attorneys' fees for trial |
| $500,000 | Attorneys' fees for appeal |
| $4,766,000 | Compensatory award after appeal |
| $392,669.58 | Interest on compensatory damages |
| $233.10 | Appellate Costs |
| $82,908.01 | Trial Costs |
| $3433.19 | Interest on Trial Costs |

TOTAL:     $8,344,880.75

42.     The figure of $8,344,880.75 is greater than the demands Plaintiffs made before verdict. Punitive damages would have been waived as part of the Plaintiffs' pre-verdict demands.

43.     Additionally, there are $3.4 million in punitive damages that are outstanding, with interest on that award currently equaling $330,923.84 for a total of $3,730,923.84. The entire amount due and owing by the insurers was $12,075,804.59. St. Paul has paid their policy limits of $1 million. AAIC has paid $5,492,538.97. Essex has not paid a cent.

## THE INSURERS' RESERVATIONS OF RIGHTS

44.     By a letter dated November 8, 2005, primary insurer St. Paul informed Defendant Detectives Swearengen, Hayes and Guilfoyle that punitive damages were not covered and St. Paul specifically denied coverage, to the extent allowed by the applicable State law, for punitive damages under the above-mentioned insurance coverage.

45.     By a letter dated October 9, 2006, excess insurer Essex sent a letter to **Will County** that purported to be a reservation of rights. This letter refers to a letter dated May 17, 2006, by excess insurer AAIC and incorporates all of their reservations of rights. This AAIC letter is not in Will County's possession and despite repeated requests, has never been produced to Plaintiff. Upon information and belief, Essex and AAIC did not send reservation of rights letters to the Defendant Detectives. Essex identifies the AAIC policy as the "controlling underlying policy," and describes the role of AAIC as the "controlling underlying carrier [who] agreed to monitor this matter pursuant to a reservation of rights under their policy."

46.    By a letter dated October 13, 2006, an attorney at Lowis & Gellen informed the Defendant Detectives, "You are solely responsible for punitive damages. You also received a letter from St. Paul informing you of this fact. We want to advise you that you could retain an attorney of your own choosing and at your own expense if you are concerned about an award of punitive damages in this case."

47.    On November 19, 2007, Essex sent a second reservation of rights letter addressed to **Will County** but not the Defendant Detectives. In this letter, Essex incorporates a letter purportedly issued by AAIC on October 9, 2007, supplementing their reservation of rights.

48.    These reservation of rights letters did not properly inform the Defendant Detectives of the numerous conflicts of interest thereby breaching the insurers' duty to defend. None of the reservation of rights letters offered to pay for individual counsel for the Defendant Detectives should they choose individual counsel.


## CONFLICTS OF INTEREST

49.    AAIC and Essex had a duty to inform the insureds of the conflicts of interest that existed because of Lowis & Gellen's representation of all the defendants and the conflict between the insurers and the insureds because of the punitive damages.

50.    AAIC and Essex had a duty to reimburse Will County and the Defendant Detectives in the underlying case for certain damages awarded against them.

51.    Under applicable law, insurers, in the face of a conflict of interest between the interests of the insureds and/or the interest of the insureds and insurers, the insurers have a duty to inform the insureds of the conflict, to inform them that they are permitted

to hire individual counsel, and to inform the insureds of their right to be reimbursed for those costs.

52.     Punitive damages were being sought by the Foxes, and it was in the interest of the insurance companies and Will County to have a low compensatory damage award and a high punitive damage award assessed against the Defendant detectives.

53.     AAIC and Essex ratified the conflicts by failing to inform the individual Defendant detectives of this conflict that existed because of the punitive damages.

54.     Under applicable law, insurers, including excess insurers, are obligated to inform their insureds, in writing, of potential conflicts of interest that may arise during the litigation, i.e. testimony that may be exculpatory to one may be inculpatory to another. AAIC and Essex ratified the conflicts by failing to inform the individual Defendant detectives of these conflicts.

55.     The Defendant Detectives were not properly informed of the potential conflicts of interest in this matter; including, but not limited to: the conflict between themselves and the insurer in regards to the punitive damages award of which they would be individually liable, and the conflicts in their defenses presented at trial, which could exculpate one defendant while inculpating another. AAIC and Essex ratified the conflicts by failing to inform the individual Defendant detectives of these conflicts.

56.     The Defendant Detectives were not informed in writing of their right to seek individual counsel compensated by the insurer because of these conflicts of interest. In fact, Defendant Detectives were erroneously told by the counsel for Lowis & Gellen that they had to pay for individual counsel. AAIC and Essex ratified this action by failing to inform the Defendant detectives of their rights.

57.     Not only were the Defendant Detectives not informed of these conflicts, they at no time signed any document waiving these conflicts after being fully apprised of them in writing. AAIC and Essex ratified this action by failing to obtain waivers of these conflicts.

58.     Notwithstanding that, AAIC and Essex controlled the appeal of the punitive damages and chose not to raise the conflicts issues identified at trial.

59.     The Defendant Detectives were prejudiced by the conflict of interest created by the insurers at trial and on appeal.

60.     The Defendant Detectives were prejudiced as a result of the insurers selecting one law firm, Lowis & Gellen, to represent them. AAIC and Essex ratified the actions of Lowis & Gellen and St. Paul at trial and assumed sole control over the conflicts issues on appeal.

61.     There was a conflict when the Defendant Detectives' counsel simultaneously represented Will County.

62.     The conflict of interest was never raised on appeal by AAIC and Essex. AAIC and Essex had exclusive control over the conflict issue on appeal. Raising the conflict issue would far more likely than not have resulted in the judgment for punitive damages being vacated or the case remanded for a hearing on this issue.

63.     Certainly AAIC and Essex should have argued for reversal of the punitives on appeal on the grounds of the conflict of interest created by having one law firm representing each of the insureds.

64.     As the excess insurers, AAIC and Essex were in a better position than the Defendant Detectives to analyze the various conflicts. The follow form linkage between

an excess insurer and the primary insurer applies to procedural as well as substantive obligations to their common insureds.

65.     Due to the conflicts of interest, AAIC and Essex are estopped from asserting any defenses to payment of the punitive damages award they may have had absent the conflict.

66.     Essex and AAIC are also estopped from asserting their policy limits as a result of the conflicts of interest.


## DUTIES BREACHED BY AAIC AND ESSEX

67.     On September 25, 2008, St. Paul's policy limits were exhausted. AAIC, as the first level of umbrella coverage carrier, then had exclusive control over the litigation.

68.     AAIC was notified of the litigation on October 10, 2005. They were on notice as of that date that punitive damages were being sought.

69.     AAIC was aware of the theory of the complaint and the potential for a conflict existing. AAIC was the "controlling insurer." AAIC monitored the case and was aware of the conflict.

70.     On information and belief, they were completely aware of the Third Amended Complaint, and that Plaintiffs were seeking punitive damages.

71.     They were also aware at that point that only one law firm was representing the County and the individual detectives. They had an affirmative obligation and duty to rectify this conflict prior to trial.

72.     The insurers failed to notify the individual detectives of this conflict, failed to notify the individual detectives that they had a right to personal counsel, and failed to inform the individual detectives that personal counsel would be paid for by the insurer.

73.     Prior to trial, AAIC failed to settle within the policy limits. AAIC was exclusively in control of their policy and St. Paul's policy, and could have settled for within their limits. This would have eliminated any personal exposure of the individual Detectives to a punitive damage award.

74.     AAIC asserted control over the conflict issue when they intervened. Then, the conflict issue was exclusively within their control. They failed to raise the conflict issue on appeal, either through their appellate counsel or in their own brief.

75.     There was clearly a follow form linkage between St. Paul, AAIC and Essex which resulted in procedural as well as substantive obligations to their common insureds, i.e. the individual Defendant Detectives.

76.     AAIC and Essex were in a much better position than the insureds to analyze the conflict issues that had arisen throughout the course of the litigation.

77.     AAIC and Essex had an affirmative obligation to notify the insureds that they were not being given proper representation.

78.     Upon information and belief AAIC and Essex were kept fully informed of the events of Lowis & Gellen's representation and never complained about the litigation strategy.

## APPEAL

79.    AAIC and Essex intervened on their own behalf to appeal the punitive

damage award.  Despite being on notice of the conflicts that occurred at trial as well as

the failure to adequately inform the Defendant Detectives of all the conflicts, AAIC and

Essex made no reference to this issue on appeal.  AAIC and Essex admit that they are

most probably liable for the punitive damages by intervening in the appeal rather than not

appealing and relying on their policy language which excluded punitive damages.

## COUNT I
## BREACH OF INSURANCE CONTRACT
## FAILURE TO SETTLE WITHIN POLICY LIMITS

80.    Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' actions

against their insurers, incorporates by reference and realleges paragraphs 1 through 79,

inclusive, as though fully set forth herein as paragraph 80.

81.    The underlying claim was one for which coverage was provided under the

AAIC policy.

82.    An actual settlement offer within the policy limits was available to accept.

83.    The offer was one that an ordinarily prudent insurer would accept

considering the degree of the insured's liability.

84.    AAIC knew, or should have known, based upon the pleadings in the case

as well as pretrial discovery, that there was a reasonable probability of a finding against

the insured.  Kevin Fox had been excluded as the perpetrator by DNA testing.

Obviously, his confession was coerced.  The probabilities were high that there would be a

17

verdict in excess of the insurers' policy limits and higher than the demands within policy limits made by Kevin and Melissa Fox.

85.     The insurer failed to give at least equal consideration to the insured's interests when arriving at the decision whether to settle the claim.

86.     The Defendant Detectives were prejudiced.

WHEREFORE, Kevin Fox, as assignee, respectfully request that this Court enter a judgment in his favor and against AAIC for the amount of the punitive damages award, statutory interest on the award, attorneys' fees, costs, punitive damages against the Defendant and any and all other relief deemed just.

## COUNT II
## BREACH OF INSURANCE CONTRACT
## DEFENDING WHEN A CONFLICT OF INTEREST EXISTS

87.     Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' actions against their insurers, incorporates by reference and realleges paragraphs 1 through 86, inclusive, as though fully set forth herein.

88.     A conflict of interest existed between AAIC and the individual Defendant Detectives.

89.     AAIC failed to disclose this conflict of interest to the Defendant Detectives.

90.     AAIC failed to warn the Defendant Detectives of either an actual or a potential conflict of interest in defending the underlying action.

WHEREFORE, Kevin Fox, as assignee, respectfully requests that this Court enter a judgment in his favor and against AAIC for the amount of the punitive damages award, statutory interest on the award, attorneys' fees, costs, and any and all other relief deemed just.

## COUNT III
## BREACH OF INSURANCE CONTRACT
## DEFENDING WHEN A CONFLICT OF INTEREST EXISTS

91.     Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' actions against their insurers, incorporates by reference and realleges paragraphs 1 through 90, inclusive, as though fully set forth herein.

92.     A conflict of interest existed between Essex and the individual Defendant Detectives.

93.     Essex failed to disclose this conflict of interest to the Defendant Detectives.

94.     Essex failed to warn the Defendant Detectives of either an actual or a potential conflict of interest in defending the underlying action.

WHEREFORE, Kevin Fox, as assignee, respectfully requests that this Court enter a judgment in his favor and against Essex for the amount of the punitive damages award, statutory interest on the award, attorneys' fees, costs, and any and all other relief deemed just.

## COUNT IV
## BREACH OF CONTRACT
## ESTOPPEL DUE TO AAIC'S BAD FAITH

95.     Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' actions against their insurers, incorporates by reference and realleges paragraphs 1 through 94, inclusive, as though fully set forth herein for this paragraph 95.

96.     At all times relevant to this action, AAIC owed a duty of good faith and fair dealing to the Defendant Detectives as their insureds.

97.     At all times relevant to this action, AAIC owed a fiduciary duty of good faith to the Defendant Detectives, as their insureds.

98.     AAIC was notified of the litigation on October 10, 2005. They were on notice as of that date that punitive damages were being sought.

99.     Prior to trial a demand was made by Plaintiffs within the insurers' policy limits. The insurers refused to settle.

100.    Prior to verdict, another demand was made within the insurers' policy limits and the insurers again refused to settle.

101.    On December 20, 2007, this Court entered judgment against the Defendant Detectives for $15.5 million, which included $6.2 million in punitive damages.

102.    AAIC was aware of the theory of the complaint and the potential for a conflict existing. The AAIC representative monitored the trial and was aware of the conflict that was discussed on the record by Judge Darrah. (See Exhibit D)

103.    AAIC was also aware at that point that only one law firm was representing the County and the individual defendant detectives. They had an affirmative obligation and duty to address this conflict of interest prior to trial.

104.    AAIC failed to notify the individual Defendant detectives of this conflict, failed to notify the individual defendant detectives that they had a right to personal counsel, and failed to inform the individual defendant detectives that personal counsel would be paid for by the insurer.

105.    The defendant detectives were prejudiced by AAIC's bad faith.


WHEREFORE, Plaintiff, Kevin Fox, as assignee, respectfully requests that this Court enter an order requiring AAIC to indemnify Kevin Fox, as assignee, for the punitive damages award assessed against the Defendant Detectives, attorneys' fees, costs and any and all other relief deemed just.


## COUNT V
## BREACH OF CONTRACT
## ESTOPPEL DUE TO ESSEX'S BAD FAITH

106.    Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' actions against their insurers, incorporates by reference and realleges paragraphs 1 through 105, inclusive, as though fully set forth herein for this paragraph 106.

107.    At all times relevant to this action, Essex owed a duty of good faith and fair dealing to the Defendant Detectives as their insureds.

108.    At all times relevant to this action, Essex owed a fiduciary duty of good faith to the Defendant Detectives, as their insureds.

109.    Essex was notified of the litigation in or around October, 2005.  They were on notice as of that date that punitive damages were being sought.

110.     Essex was aware at that point that only one law firm was representing the County and the individual defendant detectives.  They had an affirmative obligation and duty to address this prior to trial.

111.     Essex failed to notify the individual Defendant detectives of this conflict, failed to notify the individual defendant detectives that they had a right to personal counsel, and failed to inform the individual defendant detectives that personal counsel would be paid for by the insurer.

112.     The defendant detectives were prejudiced by Essex's bad faith.


WHEREFORE, Plaintiff, Kevin Fox, as assignee, respectfully requests that this Court enter an order requiring Essex to indemnify Kevin Fox, as assignee, for the punitive damages award assessed against the Defendant Detectives, attorneys' fees, costs and any and all other relief deemed just.


## COUNT VI
## DECLARATORY JUDGMENT: DUTY TO INDEMNIFY
## ESTOPPEL DUE TO AAIC'S BREACH

113.     Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' actions against their insurers, incorporates by reference and realleges paragraphs 1 through 112, inclusive, as though fully set forth herein.

114.     AAIC ratified the actions of St. Paul and Lowis & Gellen.

115.     AAIC has admitted that it assumed the duty to defend on October 25, 2008, when the limits of St. Paul were exhausted.

116.     AAIC issued reservations of rights letters.

117.    At all times relevant to this action, AAIC owed a duty of good faith and fair dealing to the Defendant Detectives.

118.    On December 20, 2007, this Court entered judgment against the Detectives for $15.5 million which included $6.2 million in punitive damages.

119.    Under Illinois law, where the insurer has a duty to defend, but there is a conflict between the interests of the insureds and the insurer, the insurer is not permitted to select counsel or direct the defense but must fulfill its duty to defend by reimbursing the insured for the cost of counsel selected by the insured ("independent counsel").

120.    It is believed that AAIC sent two letters, based upon the reference in the Essex letters. Upon information and belief, those letters claimed a reservation of rights as to coverage for punitive damages to Will County but not to the individual detectives.

121.    When AAIC reserved its rights to deny coverage for the substantial amount of punitive damages sought by the Foxes in the Fox litigation, AAIC created a conflict of interest that precluded it from selecting counsel to defend the Detectives or controlling the Defendant Detectives' defense.

122.    Under Illinois law, AAIC was required to inform the Defendant Detectives that reservation of rights gave rise to conflicts of interest between AAIC and the Defendant Detectives.

123.    Under Illinois law, AAIC was required to inform the Defendant Detectives that there were conflicts of interest among the Defendant Detectives.

124.    Under Illinois law, AAIC's reservation of rights required it to inform the Defendant Detectives that they were entitled to independent counsel and that AAIC

would reimburse the Defendant Detectives for the cost of independent counsel, as incurred.

125.    At no time did AAIC inform the Defendant Detectives that its Reservation of rights gave rise to a conflict of interest.

126.    At no time did AAIC inform the Defendant Detectives that there were conflicts of interest among the Defendant Detectives.

127.    At no time did AAIC inform the Defendant Detectives that they were entitled to independent counsel and that AAIC would reimburse the Defendant Detectives for the cost of independent counsel, as incurred.

128.    Instead, AAIC ratified the appointment of the law firm of Lowis & Gellen to defend the Defendant Detectives in the Fox litigation.

129.    AAIC's failure to disclose the conflicts of interest to the Defendant Detectives rendered their reservation of rights ineffective.

130.    Moreover, AAIC's ratification of the Defendant Detectives' defense was a breach of AAIC's obligation to allow the Defendant Detectives to select independent counsel and to reimburse the Defendant Detectives for their defense costs, as incurred.

131.    Because AAIC breached its duty to reimburse and ratified the defense of the Defendant Detectives without a valid reservation of rights, AAIC is now estopped from relying on coverage defenses.

132.    AAIC's ratification of the Defendant Detectives defense in the Fox Litigation without disclosing the conflicts of interest created by its reservation of rights as well as other conflicts of interest prejudiced the Defendant Detectives.

133.     AAIC's failure to advise the Defendant Detectives that they were entitled to independent counsel and that AAIC would reimburse the Defendant Detectives for the cost of independent counsel, as incurred, prejudiced the Defendant Detectives.  Instead, AAIC ratified the Lowis & Gellen letter (Exhibit F) which misinformed the Defendant Detectives of their obligation to pay for independent counsel.

134.     Kevin Fox, as the assignee of the Defendant Detectives' rights against the insurers, seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*, that AAIC is now estopped from asserting any coverage defense for the judgment issued against the Defendant Detectives in the Fox Litigation.

135.     Kevin Fox, as the assignee of the Defendant Detectives' rights against the insurers, contends that:

(a)     The reservation of rights gave rise to two separate conflicts of interest.

(b)     AAIC's failure to disclose these conflicts of interest and advise the Defendant Detectives that they were entitled to independent counsel and that AAIC would reimburse the Defendant Detectives for the cost of independent counsel, as incurred, voided the denial of coverage;

(c)     AAIC's ratification of the Defendant Detectives' defense was a breach of AAIC's duty to allow the Defendant Detectives to select independent counsel and to reimburse the Defendant Detectives for the costs of defense, as incurred;

(d)        Since AAIC ratified the defense of the Defendant Detectives without an effective reservation of rights and breached its duty to allow the Defendant Detectives to select independent counsel and reimburse the Defendant Detectives for the costs of defense, as incurred, AAIC is now estopped from raising any coverage defense as to its duty to indemnify the Defendant Detectives for the judgment entered against them in the Fox Litigation; and

(e)        AAIC has a duty to indemnify the Defendant Detectives for the punitive damages award in the Fox Litigation.

WHEREFORE, Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' rights against their insurers, respectfully requests that this Court enter a declaratory judgment finding:

(a)        The denial of coverage gave rise to two separate conflicts of interest.

(b)        AAIC's failure to disclose these conflicts of interest and advise the Defendant Detectives that they were entitled to independent counsel and that St. Paul would reimburse the Defendant Detectives for the cost of independent counsel, as incurred, voided the denial of coverage;

(c)        AAIC's ratification of the Defendant Detectives' defense was a breach of AAIC's duty to allow the Defendant Detectives to select

independent counsel and to reimburse the Defendant Detectives for the costs of defense, as incurred;

(d)    Since AAIC ratified the defense of the Defendant Detectives without an effective reservation of rights and breached its duty to allow the Defendant Detectives to select independent counsel and reimburse the Defendant Detectives for the costs of defense, as incurred, AAIC is now estopped from raising any coverage defense as to its duty to indemnify the Defendant Detectives for the judgment entered against them in the Fox Litigation;

(e)    AAIC has a duty to indemnify the Defendant Detectives for the punitive damages award in the Fox Litigation; and

(f)    Kevin Fox, as assignee of the Defendant Detectives is entitled to such other and further relief as the Court deems fit and proper.

## COUNT VII
## DECLARATORY JUDGMENT: DUTY TO INDEMNIFY
## ESTOPPEL DUE TO ESSEX'S BREACH

136.    Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' actions against their insurers, incorporates by reference and realleges paragraphs 1 through 135, inclusive, as though fully set forth herein.

137.    Essex ratified the actions of St. Paul and Lowis & Gellen.

138.    Essex has admitted that it assumed the duty to defend on October 25, 2008, when the limits of St. Paul were exhausted.

139.    Essex issued reservations of rights letters.

140. At all times relevant to this action, Essex owed a duty of good faith and fair dealing to the Defendant Detectives.

141. On December 20, 2007, this Court entered judgment against the Detectives for $15.5 million which included $6.2 million in punitive damages.

142. Under Illinois law, where the insurer has a duty to defend, but there is a conflict between the interests of the insureds and the insurer, the insurer is not permitted to select counsel or direct the defense but must fulfill its duty to defend by reimbursing the insured for the cost of counsel selected by the insured ("independent counsel").

143. Essex sent two reservations of rights letters to Will County.

144. When Essex reserved its rights to deny coverage for the substantial amount of punitive damages sought by the Foxes in the Fox litigation, Essex created a conflict of interest that precluded it from selecting counsel to defend the Detectives or controlling the Defendant Detectives' defense.

145. Under Illinois law, Essex was required to inform the Defendant Detectives that reservation of rights gave rise to conflicts of interest between Essex and the Defendant Detectives.

146. Under Illinois law, Essex was required to inform the Defendant Detectives that there were conflicts of interest among the Defendant Detectives

147. Under Illinois law, Essex's reservation of rights required it to inform the Defendant Detectives that they were entitled to independent counsel and that Essex would reimburse the Defendant Detectives for the cost of independent counsel, as incurred.

148.     At no time did Essex inform the Defendant Detectives that its reservation of rights gave rise to a conflict of interest.

149.     At no time did Essex inform the Defendant Detectives that there were conflicts of interest among the Defendant Detectives.

150.     At no time did Essex inform the Defendant Detectives that they were entitled to independent counsel and that Essex would reimburse the Defendant Detectives for the cost of independent counsel, as incurred.

151.     Instead, Essex ratified the appointment of the law firm of Lowis & Gellen to defend the Defendant Detectives in the Fox litigation and the improper reservation of rights sent by Lowis & Gellen.

152.     Essex's failure to disclose the conflicts of interest to the Defendant Detectives rendered their reservation of rights ineffective.

153.     Moreover, Essex's ratification of the Defendant Detectives' defense was a breach of Essex's obligation to allow the Defendant Detectives to select independent counsel and to reimburse the Defendant Detectives for their defense costs, as incurred.

154.     Because Essex breached its duty to reimburse and ratified the defense of the Defendant Detectives without a valid reservation of rights, Essex is now estopped from relying on coverage defenses.

155.     Essex's ratification of the Defendant Detectives defense in the Fox Litigation without disclosing the conflicts of interest created by its reservation of rights as well as other conflicts of interest prejudiced the Defendant Detectives.

156.     Essex's failure to advise the Defendant Detectives that they were entitled to independent counsel and that Essex would reimburse the Defendant Detectives for the cost of independent counsel, as incurred, prejudiced the Defendant Detectives.

157.     Kevin Fox, as the assignee of the Defendant Detectives' rights against the insurers, seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, that Essex is now estopped from asserting any coverage defense for the judgment issued against the Defendant Detectives in the Fox Litigation.

158.     Kevin Fox, as the assignee of the Defendant Detectives' rights against the insurers, contends that:

(a)     The reservation of rights gave rise to two separate conflicts of interest.

(b)     Essex's failure to disclose these conflicts of interest and advise the Defendant Detectives that they were entitled to independent counsel and that Essex would reimburse the Defendant Detectives for the cost of independent counsel, as incurred, voided the denial of coverage;

(c)     Essex's ratification of the Defendant Detectives' defense was a breach of Essex's duty to allow the Defendant Detectives to select independent counsel and to reimburse the Defendant Detectives for the costs of defense, as incurred;

(d)     Since Essex ratified the defense of the Defendant Detectives without an effective reservation of rights and breached its duty to allow the Defendant Detectives to select independent counsel and

reimburse the Defendant Detectives for the costs of defense, as
incurred, Essex is now estopped from raising any coverage defense
as to its duty to indemnify the Defendant Detectives for the
judgment entered against them in the Fox Litigation; and

(e)     Essex has a duty to indemnify the Defendant Detectives for the
punitive damages award in the Fox Litigation.


WHEREFORE, Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' rights
against their insurers, respectfully requests that this Court enter a declaratory judgment
finding:

(a)     The denial of coverage gave rise to two separate conflicts of
interest.

(b)     Essex's failure to disclose these conflicts of interest and advise the
Defendant Detectives that they were entitled to independent
counsel and that St. Paul would reimburse the Defendant
Detectives for the cost of independent counsel, as incurred, voided
the denial of coverage;

(c)     Essex's ratification of the Defendant Detectives' defense was a
breach of Essex's duty to allow the Defendant Detectives to select
independent counsel and to reimburse the Defendant Detectives for
the costs of defense, as incurred;

(d)     Since Essex ratified the defense of the Defendant Detectives
without an effective reservation of rights and breached its duty to

31

allow the Defendant Detectives to select independent counsel and reimburse the Defendant Detectives for the costs of defense, as incurred, Essex is now estopped from raising any coverage defense as to its duty to indemnify the Defendant Detectives for the judgment entered against them in the Fox Litigation;

(e)     Essex has a duty to indemnify the Defendant Detectives for the punitive damages award in the Fox Litigation; and

(f)     Kevin Fox, as assignee of the Defendant Detectives is entitled to such other and further relief as the Court deems fit and proper.


**COUNT VIII**
**DECLARATORY JUDGMENT: DUTY TO INDEMNIFY**
**ESTOPPED BY LOWIS & GELLEN'S BREACH (AAIC)**

159.     Kevin Fox incorporates by reference and realleges paragraphs 1 through 158, inclusive, as though fully set forth herein.

160.     Kevin Fox, as the assignee of the Defendant Detectives' rights against the insurers, seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. 2001, *et seq*, that AAIC is now estopped from asserting any coverage defense for the judgment issued against the Detectives in the Fox Litigation.

161.     AAIC ratified the retention of Lowis & Gellen to defend Will County and the Defendant Detectives, who thereby became a client of Lowis & Gellen.

162.     Under Illinois law and the Illinois Rules of Professional Responsibility, Lowis & Gellen had thirteen clients: the three insurance companies, Will County, Janette Bishop-Green, Mary Jane Pluth, Rich Williams, Scott Swearengen, Ed Hayes, Mike

Guilfoyle, Brad Wachtl, David Dobrowski and John Ruettiger (later the Estate of John Ruettiger). Lowis & Gellen also represented the following individuals who testified at trial: Deputy Chief Nick Ficarello, Coroner Pat O'Neill, Assistant State's Attorney Deb Mills, Evidence Technician Juliann Budde. Lowis & Gellen also represented approximately ten other individuals for their depositions. Lowis & Gellen was required to disclose to the Defendant Detectives that the reservation of rights created conflicts of interest between its clients that prohibited Lowis & Gellen from defending the Defendant Detectives without first fully informing the Defendant Detectives of the conflicts of interest and obtaining the Defendant Detectives' informed consent to waive the conflicts.

163. Lowis & Gellen never disclosed to the Defendant Detectives that the reservation of rights created conflicts of interest between its clients that prohibited Lowis & Gellen from defending the Defendant Detectives without first fully informing the Defendant Detectives of the conflicts of interest and obtaining the Defendant Detectives' informed consent to waive the conflicts. Lowis & Gellen erroneously informed the Defendant Detectives that if they wished independent counsel, the Defendant Detectives were financially responsible for that counsel.

164. Lowis & Gellen never advised the Defendant Detectives that they were entitled to independent counsel and that their insurers had the obligation to reimburse the Defendant Detectives for the cost of independent counsel, as incurred.

165. Lowis & Gellen's conduct in connection with its defense of the Defendant Detectives is imputed to AAIC.

166. Kevin Fox, as assignee of the Defendant Detectives' rights against its insurers, contends that:

(a)　The reservation of rights gave rise to two conflicts of interest between AAIC and the Defendant Detectives.

(b)　Lowis & Gellen's failure to disclose these conflicts of interest and advise the Detectives that they were entitled to independent counsel and that their insurers had the obligation to reimburse the Defendant Detectives for the cost of independent counsel, as incurred, had the effect of voiding the reservation of rights, making AAIC fully liable to indemnify the Defendant Detectives in the Fox Litigation;

(c)　Since Lowis & Gellen defended the Defendant Detectives without an effective consent and waiver, the only cure is to void the reservation of rights as to any coverage defenses as to AAIC's duty to indemnify the Defendant Detectives for their liability arising from the Fox Litigation; and

(d)　AAIC has an obligation to indemnify the Defendant Detectives for the entire judgment reached in the Fox Litigation.

WHEREFORE, Plaintiff, Kevin Fox, as assignee of the Defendant Detectives' rights against their insurers, respectfully requests that this Court enter a declaratory judgment finding that:

(a)　The reservation of rights gave rise to two conflicts of interest between AAIC and the Defendant Detectives.

34

(b)     Lowis & Gellen's failure to disclose these conflicts of interest and advise the Defendant Detectives that they were entitled to independent counsel and that their insurers had the obligation to reimburse the Defendant Detectives for the cost of independent counsel, as incurred, had the effect of voiding the reservation of rights, making AAIC fully liable to indemnify the Defendant Detectives in the Fox Litigation;

(c)     Since Lowis & Gellen defended the Defendant Detectives without an effective consent and waiver, the only cure is to void the reservation of rights as to any coverage defenses as to AAIC's duty to indemnify the Defendant Detectives for their liability arising from the Fox Litigation;

(d)     AAIC has an obligation to indemnify the Defendant Detectives for the entire judgment reached in the Fox Litigation; and

(e)     Kevin Fox, as assignee of the Defendant Detectives rights against their insurers, is entitled to such other and further relief as the Court deems fit and proper.

## COUNT IX
## DECLARATORY JUDGMENT: DUTY TO INDEMNIFY
## ESTOPPED BY LOWIS & GELLEN'S BREACH (ESSEX)

167.     Kevin Fox incorporates by reference and realleges paragraphs 1 through 166, inclusive, as though fully set forth herein.

168.    Kevin Fox, as the assignee of the Defendant Detectives rights against the insurers, seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. §2001, *et seq*, that Essex is now estopped from asserting any coverage defense for the judgment issued against the Detectives in the Fox Litigation.

169.    Essex ratified the retention of Lowis & Gellen to defend Will County and the Defendant Detectives, which thereby became a client of Lowis & Gellen.

170.    Under Illinois law and the Illinois Rules of Professional Responsibility, Lowis & Gellen had thirteen clients: the three insurance companies, Will County, Janette Bishop-Green, Mary Jane Pluth, Rich Williams, Scott Swearengen, Ed Hayes, Mike Guilfoyle, Brad Wachtl, David Dobrowski and John Ruettiger (later the Estate of John Ruettiger). Lowis & Gellen also represented the following individuals who testified at trial: Deputy Chief Nick Ficarello, Coroner Pat O'Neill, Assistant State's Attorney Deb Mills, Evidence Technician Juliann Budde. Lowis & Gellen also represented approximately ten other individuals for their depositions. Lowis & Gellen was required to disclose to the Defendant Detectives that the reservation of rights created conflicts of interest between its clients that prohibited Lowis & Gellen from defending the Defendant Detectives without first fully informing the Defendant Detectives of the conflicts of interest and obtaining the Defendant Detectives' informed consent to waive the conflicts.

171.    Lowis & Gellen never disclosed to the Defendant Detectives that the reservation of rights created conflicts of interest between its clients that prohibited Lowis & Gellen from defending the Defendant Detectives without first fully informing the Detectives of the conflicts of interest and obtaining the Defendant Detectives' informed consent to waive the conflicts.

172.    Lowis & Gellen never advised the Defendant Detectives that they were entitled to independent counsel and that Essex had the obligation to reimburse the Defendant Detectives for the cost of independent counsel, as incurred.

173.    Lowis & Gellen's conduct in connection with its defense of the Defendant Detectives is imputed to Essex.

174.    Kevin Fox, as assignee of the Defendant Detectives rights against its insurers, contends that:

(a)    The reservation of rights gave rise to two conflicts of interest between Essex and the Defendant Detectives.

(b)    Lowis & Gellen's failure to disclose these conflicts of interest and advise the Defendant Detectives that they were entitled to independent counsel and that their insurers had the obligation to reimburse the Defendant Detectives for the cost of independent counsel, as incurred, had the effect of voiding the reservation of rights, making Essex fully liable to indemnify the Defendant Detectives in the Fox Litigation;

(c)    Since Lowis & Gellen defended the Defendant Detectives without an effective consent and waiver, the only cure is to void the reservation of rights as to any coverage defenses as to Essex's duty to indemnify the Defendant Detectives for their liability arising from the Fox Litigation; and

(d)    Essex has an obligation to indemnify the Defendant Detectives for the entire judgment reached in the Fox Litigation.

WHEREFORE, Kevin Fox, as assignee of the Defendant Detectives' rights against their insurers, respectfully requests that this Court enter a declaratory judgment finding that:

(a)   The reservation of rights gave rise to two conflicts of interest between Essex and the Defendant Detectives.

(b)   Lowis & Gellen's failure to disclose these conflicts of interest and advise the Detectives that they were entitled to independent counsel and that their insurers had the obligation to reimburse the Defendant Detectives for the cost of independent counsel, as incurred, had the effect of voiding the reservation of rights, making Essex fully liable to indemnify the Defendant Detectives in the Fox Litigation;

(c)   Since Lowis & Gellen defended the Defendant Detectives without an effective consent and waiver, the only cure is to void the reservation of rights as to any coverage defenses as to Essex's duty to indemnify the Defendant Detectives for their liability arising from the Fox Litigation;

(d)   Essex has an obligation to indemnify the Defendant Detectives for the entire judgment reached in the Fox Litigation; and

(e)   Kevin Fox, as assignee of the Defendant Detectives rights against their insurers, is entitled to such other and further relief as the Court deems fit and proper.

## COUNT X
## DECLARATORY JUDGMENT: AAIC'S BREACH OF THE DUTY TO INDEMNIFY

175.    Kevin Fox incorporates by reference and realleges paragraphs 1 through 174, inclusive, as though fully set forth herein.

176.    AAIC defended the Defendant Detectives without an effective reservation of rights and therefore owes the Defendant Detectives the duty to indemnify them for the entire judgment in the Fox Litigation.

177.    AAIC's refusal to acknowledge that it owes the Defendant Detectives the duty to indemnify them is a breach of its duty to indemnify.

178.    The Detectives have suffered damages, and will suffer damages, by reason of AAIC's failure to acknowledge that it owes the Defendant Detectives the duty to indemnify them, including, but not limited to, continuous incurrence of attorney fees in connection with the instant litigation and injury to their credit reputation.

179.    Kevin Fox, as assignee of the Defendant Detectives' rights against their insurers, contends that:

    (a)    AAIC defended them without an effective reservation of rights;

    (b)    AAIC owes the Defendant Detectives a duty to indemnify them for the entire judgment entered in the Fox Litigation;

    (c)    AAIC has breached its duty to indemnify the Defendant Detectives; and

    (d)    AAIC is liable for all damages resulting from their breach of its duty to indemnify.

WHEREFORE, Kevin Fox, as assignee of the Defendant Detectives' rights against their insurers, respectfully requests that this Court enter a declaratory judgment finding that:

(a)     AAIC defended them without an effective reservation of rights;

(b)     AAIC owes the Defendant Detectives a duty to indemnify them for the entire judgment entered in the Fox Litigation;

(c)     AAIC has breached its duty to indemnify the Defendant Detectives;

(d)     AAIC is liable for all damages resulting from their breach of its duty to indemnify; and

(e)     Kevin Fox is entitled to such other and further relief as this Court deems fit and proper.


## COUNT XI
## DECLARATORY JUDGMENT: ESSEX'S BREACH OF THE DUTY TO INDEMNIFY

180.    Kevin Fox incorporates by reference and realleges paragraphs 1 through 179, inclusive, as though fully set forth herein.

181.    Essex defended the Defendant Detectives without an effective reservation of rights and therefore owes the Defendant Detectives the duty to indemnify them for the entire judgment in the Fox Litigation.

182.    Essex's refusal to acknowledge that it owes the Defendant Detectives the duty to indemnify them is a breach of its duty to indemnify.

183.    The Detectives have suffered damages, and will suffer damages, by reason of Essex's failure to acknowledge that it owes the Defendant Detectives the duty to indemnify them, including, but not limited to, continuous incurrence of attorney fees in connection with the instant litigation and injury to their credit reputation.

184.    Kevin Fox, as assignee of the Defendant Detectives' rights against their insurers, contends that:

(a)    Essex defended them without an effective reservation of rights;

(b)    Essex owes the Defendant Detectives a duty to indemnify them for the entire judgment entered in the Fox Litigation;

(c)    Essex has breached its duty to indemnify the Defendant Detectives; and

(d)    Essex is liable for all damages resulting from their breach of its duty to indemnify.


WHEREFORE, Kevin Fox, as assignee of the Defendant Detectives' rights against their insurers, respectfully requests that this Court enter a declaratory judgment finding that:

(a)    Essex defended them without an effective reservation of rights;

(b)    Essex owes the Defendant Detectives a duty to indemnify them for the entire judgment entered in the Fox Litigation;

(c)    Essex has breached its duty to indemnify the Defendant Detectives;

(d)    Essex is liable for all damages resulting from their breach of its

duty to indemnify; and

(e)    Kevin Fox is entitled to such other and further relief as this Court

deems fit and proper.

Respectfully Submitted,

_____

Kathleen T. Zellner

Kathleen T. Zellner & Associates
Drake Oak Brook Plaza
2215 York, Suite 504
Oak Brook, Illinois 60523
(630) 955-1212