## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN FOX & MELISSA FOX,**<br>Plaintiffs, | ) )<br>) | No. **04 C 7309** |
| | ) | Judge John W. Darrah |
| v. | ) ) | Magistrate Judge |
| **FORMER WILL COUNTY STATE'S ATTORNEY**<br>**JEFFREY TOMCZAK, ET AL.,**<br>Defendants, | )<br>)<br>) | Geraldine Soat Brown |

| | |
|---|---|
| **WILL COUNTY,**<br>Third-Party Plaintiff, | ) )<br>)<br>) |
| v. | ) |
| **ESSEX INSURANCE COMPANY**, a Delaware<br>corporation, **AMERICAN ALTERNATIVE**<br>**INSURANCE CORPORATION**, a Delaware<br>corporation, and **ST. PAUL FIRE AND MARINE**<br>**INSURANCE COMPANY**,    a Minnesota corporation,<br><br>Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| ESSEX INSURANCE COMPANY,<br>Counterclaimant, | ) )<br>)<br>) |
| | ) |
| v. | )<br>) |
| WILL COUNTY, KEVIN & MELISSA FOX<br>AMERICAN ALTERNATIVE INSURANCE<br>CORPORATION AND ST. PAUL FIRE & MARINE<br>INSURANCE CO.<br>Counter-defendants. | )<br>)<br>)<br>)<br>) |

## WILL COUNTY'S ANSWER TO ESSEX INSURANCE COMPANY'S
## AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Third-Party Plaintiff and Counter-defendant, Will County, by its State's Attorney, JAMES

W. GLASGOW, for its Answer to Essex Insurance Company's Affirmative Defenses and

Counterclaim, states as follows:

### WILL COUNTY'S ANSWERS TO ESSEX'S AFFIRMATIVE DEFENSES

First Affirmative Defense:       The Amended Third-Party Complaint fails to set forth a viable

cause of action as against Essex.

**Answer:**  Will County denies Essex's First Affirmative Defense.

Second Affirmative Defense:  Essex has no duty or obligation to pay any fees, costs,

damages or any other sum or amount whatsoever regarding the underlying Fox Lawsuit

under the terms of the Essex policy.

**Answer**: Will County denies Essex's First Affirmative Defense.

Third, Fourth and Fifth Affirmative Defenses:

**Answer:**  Will County moves to strike these affirmative defenses as Will County has

not and does not make a claim against Essex for punitive damages. To the extent that they

require a further answer, Will County denies the Third, Fourth and Fifth Affirmative

Defenses.

Sixth Affirmative Defense:

**Answer:** On January 3, 2010, Will County caused 1,860,165.80 to be deposited into

a client trust account held by the law firm of Kathleen T. Zellner & Associates in full

satisfaction of the outstanding balance of the amount due and owing under the Agreed Orders

entered on July 1, 2010 and September 2, 2010. This payment was made after St. Paul Fire

and Marine Insurance Company, American Alternative Insurance Company and Essex

Insurance Company each refused to pay these amounts. As such, Will County denies that the Foxes are necessary and indispensable parties to this dispute.

## WILL COUNTY'S ANSWER TO ESSEX'S COUNTERCLAIM

1.      This is an action for declaratory relief arising out of existing, actual controversies as to the parties' respective rights and obligations under insurance policies which were issued to the County by Essex Insurance Company ("Essex"), American Alternative Insurance Corporation ("AAIC") and St. Paul, Fire & Marine Insurance Company ("St. Paul") in relation to: (a) an underlying award of punitive damages; and (b) an underlying award of attorneys' fees, plus interest on those fees.

**Answer:**      Will County admits this is an action for declaratory relief arising out of existing, actual controversies as to the parties' respective rights and obligations under insurance policies which were issued to the County by Essex Insurance Company ("Essex"), American Alternative Insurance Corporation ("AAIC") and St. Paul, Fire & Marine Insurance Company ("St. Paul") in relation to (b) an underlying award of attorneys' fees, plus interest on those fees. Will County denies that there is an existing, actual controversy as to an underlying award of punitive damages as between Will County and Essex.

2.      Essex is a corporation with its principal place of business in Virginia. At all relevant times, Essex conducted business as an unauthorized surplus lines insurer in Illinois.

**Answer:**      Will County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Essex Counterclaim and therefore denies same.

3.      Kevin and Melissa Fox are married and are residents and citizens of Illinois.

**Answer:** Will County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Essex Counterclaim and therefore denies same.

4. AAIC is a Delaware corporation with its principal place of business in New Jersey. At all relevant times, AAIC conducted business as an insurance company in Illinois.

**Answer:** Will County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Essex Counterclaim and therefore denies same.

5. St. Paul is a Minnesota corporation with its principal place of business in Minnesota. At all relevant times, St. Paul conducted business as an insurance company in Illinois.

**Answer:** Will County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Essex Counterclaim and therefore denies same.

6. The County is a municipal corporation organized and existing under the laws of Illinois with its principal place of business in Illinois, such that the County is a resident and citizen of Illinois.

**Answer:** Will County admits the allegations set forth in Paragraph 6 of Essex's Counterclaim.

7. While Essex maintains that the Court does not have jurisdiction over the Third-Party Complaint, its motion to dismiss was denied. As such, Essex alternatively alleges that if the Court has jurisdiction over the Amended Third-Party Complaint based upon supplemental jurisdiction or otherwise, then the Court also has jurisdiction over this Counterclaim on the same basis.

**Answer:** Will County admits that the Court has jurisdiction over this Counterclaim. The remaining allegations in Paragraph 7 are Essex's characterizations of Essex's legal position and speak for themselves.

8. Venue is proper pursuant to 28 U.S.C. Sec 1391.

**Answer:** Paragraph 8 of Essex's Counterclaim sets forth a legal conclusion to which no answer is required.

9. In or about November of 2004, the Foxes filed their action in the United States District Court for the Northern District of Illinois, Case No. 04C7309, against the County, certain individual detectives and others, alleging the defendants committed various civil rights violations and/or wrongful or tortious acts in the course of the investigation and arrest of Kevin Fox in connection with the abduction and murder of his daughter, Riley Fox (the "Underlying Action").

**Answer:** Will County admits the allegations in Paragraph 9 of Essex's Counterclaim.

10. On or about December 20, 2007, judgment was entered in the Underlying Action in favor of the Foxes. The judgment included $3.4 million in punitive damages awarded to Kevin Fox as against certain individual defendant detectives, Scott Swearengen ("Swearengen"), Edward Hayes ("Hayes") and Michael Guilfoyle ("Guilfoyle").

**Answer:** Will County admits the allegations in Paragraph 10 of Essex's Counterclaim.

11. On or about March 12, 2008, detectives Swearengen, Hayes and Guilfoyle executed assignments as to any rights they may have against Essex, AAIC and St. Paul in favor of the Foxes. Upon information and belief, true and accurate copies of the Assignments are attached as Exhibits A-C.

**Answer:** Will County admits that detective Swearengen, Hayes and Guilfoyle executed assignments as to any rights they may have against Essex, AAIC and St. Paul in favor of the Foxes. Upon information and belief the Assignments attached as Exhibits A-C are true and accurate copies.

12. On or about October 28, 2008, the Defendants in the Underlying Action filed a timely notice of appeal of judgment.

**Answer:** Will County admits the allegations set forth in Paragraph 12 of Essex's Counterclaim.

13. On or about January 20, 2009, the Foxes executed Releases in favor of detectives Swearengen, Hayes and Guilfoyle, releasing them from liability for the punitive damages awarded against them in the Underlying Action. Upon information and belief, true and accurate copies of the Releases are attached as Exhibits D-F.

**Answer:** Will County admits that the Foxes executed Releases in favor of detectives Swearengen, Hayes and Guilfoyle, releasing them from liability for the punitive damages awarded against them. Upon information and belief, the Releases attached to Essex's counterclaim as Exhibits D-F are true and accurate copies thereof.

14. On or about April 7, 2010, the Seventh Circuit affirmed in part and reversed and vacated in part the judgment in the Underlying Action. The Seventh Circuit affirmed the underlying punitive damages award in relation to Kevin Fox against the individual defendant detectives at issue.

**Answer:** Will County admits the allegations set forth in Paragraph 14 of Essex's Counterclaim.

15. On or about June 18, 2010, the Foxes filed a motion to enforce the judgment against the County seeking, among other things, the punitive damages awarded to Kevin Fox,

attorneys' fees incurred by the Foxes through June 8, 2008 in the Underlying Action, as well as additional attorneys' fees, costs and interest.

**Answer:** Will County admits the Foxes filed a motion to enforce judgment on or about June 18, 2010. The remaining allegations set forth in Paragraph 15 of Essex's Counterclaim are Essex's characterization of that motion and do not require an answer. To the extent that any further answer may be required for Paragraph 15 Will County denies those allegations.

16.     On or about July 1, 2010, the court in the Underlying Action entered an agreed partial judgment which included, among other things, the Foxes' attorneys' fees in the amount of $1.5 million, as incurred through June 8, 2008.

**Answer:** Will County admits the allegations set forth in Paragraph 16 of Essex's Counterclaim.

17.     While the Foxes also seek to recover certain additional attorneys' fees in the Underlying Action, as well as interest in relation to the additional attorneys' fees, those amounts are still in dispute in the underlying Action and have yet to be resolved by the court.

**Answer:** Agreed Orders that when read together fully set forth the amounts owed under the judgment in the underlying cause of action were entered on July 1, 2010 and September 2, 2010 on this basis, Will County denies the allegations set forth in Paragraph 17 of Essex's Counterclaim.

18.     St. Paul issued Policy No. GP06301134 to the County for the policy period from December 1, 2003 to December 1, 2004 ("St. Paul Policy"). The St. Paul Policy includes limits of $1 million per occurrence, subject to a $250,000 self-insured retention, and it includes coverage for law enforcement liability. Upon information and belief, a true and accurate copy of the St. Paul Policy is attached as Exhibit G.

**Answer:** Will County admits that St. Paul issued Policy No. GP06301134 to the County for the policy period from December 1, 2003 to December 1, 2004. The remaining allegations are Essex's characterization of the terms of the policy which speak for themselves.

19.    AAIC issued an umbrella policy, No. 60A2UB000044900, to the County for the policy period from December 1, 2003 to December 1, 2004 (the AAIC Policy"). The AAIC Policy includes limits of $5 million each occurrence in excess of the underlying St. Paul primary limits. Upon information and belief, a true and accurate copy of the AAIC Policy is attached as Exhibit H.

**Answer:** Will County admits that AAIC issued an umbrella policy No. 60A2UB000044900 to the County for the policy period from December 1, 2003 to December 1, 2004. The remaining allegations are Essex's characterization of the terms of the policy which speak for themselves.

20.    Essex issued an excess liability policy, No. XO-NJ-1822-03, to the County for policy period from December 1, 2003 to December 1, 2004 (the "Essex Policy"). The Essex limits are $5 million each occurrence in excess of underlying limits, which include the $5 million American limits and the St. Paul primary limits. A true and accurate copy of the Essex Policy is attached as Exhibit I.

**Answer:** Will County admits that Essex issued an excess liability policy No. XO-NJ-1822-03 to the County for the policy period from December 1, 2003 to December 1, 2004. The remaining allegations are Essex's characterization of the terms of the policy which speak for themselves.

21.    The Foxes previously filed a declaratory judgment action against Essex, AAIC and St. Paul in the Circuit Court of Cook County, Illinois, a Case No. 08 CH 14936, claiming they are entitled to recover the punitive damages assessed in the Underlying Action

from the insurers by way of the Assignments and Releases they received from the detectives, and due to alleged conduct by the insurers in connection with the defense and handling of the Underlying Action. A true and accurate copy of the Foxes' initial Complaint in Case No. 08 CH 14936 (without exhibits) is attached as Exhibit J.

**Answer:** Will County admits that the Foxes previously filed a declaratory judgment action against Essex, AAIC and St. Paul in the Circuit Court of Cook County, Illinois, under Case No. 08 CH 14936. The remaining allegations set forth in Paragraph 21 of Essex's Counterclaim are Essex's characterization of that Complaint the content of which speaks for itself.

22.     Case No. 08 CH 14936 was voluntarily dismissed by the Foxes without prejudice.

**Answer:** Will County admits the allegations set forth in Paragraph 22 of Essex's Counterclaim.

23.     The Foxes filed a motion in the Underlying Action claiming, *inter alia*, they are entitled to recover their punitive damages against Essex, AAIC and St. Paul. A true and accurate copy of the Foxes' motion in the Underlying Action setting forth their current allegations is attached as Exhibit K.

**Answer:** The allegations set forth in Paragraph 23 of Essex's counterclaim are Essex's characterization of the Foxes motion and do not require an answer. Will County is without knowledge or information sufficient to form a belief as to the authenticity of Exhibit K and therefore denies same.

24.     Subsequent to the filing of the Amended Third-Party Complaint, the Foxes withdrew their motion to enforce judgments and upon information and belief, the Foxes no longer seek recovery of the punitive damages award from Will County or from Essex.

However, upon information and belief, the punitive damages award has not been paid to Kevin Fox.

**Answer:** Will County admits that the Foxes withdrew their motion to enforce judgments and the Foxes are not seeking recovery of the punitive damages award from Will County. Will County is without knowledge or information sufficient to form a belief as to whether or not the Foxes seek recovery of the punitive damages award from Essex or as to whether or not the punitive damages have been paid by other parties. Will County admits that Will County has not paid the punitive damages.

25. To the extent that any party seeks to hold Essex liable for the punitive damages award, Essex denies such liability and, therefore, seeks affirmative declaratory relief in this Counterclaim.

**Answer:** The allegations set forth in Paragraph 25 of Essex's Counterclaim set forth Essex's legal position to which no answer is required. To the extent an answer may be required, Will County denies the same.

26. Essex expressly denies the allegations made by the Foxes in their prior declaratory action and in their motion in the Underlying Action, and Essex denies liability for any punitive damages which were awarded against Kevin Fox, whether under the terms of the Essex Policy or otherwise.

**Answer:** The allegations set forth in Paragraph 26 of Essex's Counterclaim set forth Essex's legal position to which no answer is required. To the extent an answer may be required, Will County denies the same.

27. In relation to the attorneys' fees awarded in the Underlying Action or which may be awarded in the future, and any interest in relation to the attorneys' fees, the County claims Essex is responsible for an amount in excess of $1,266,000.00 under the Essex Policy.

**Answer:** On January 3, 2010, Will County caused 1,860,165.80 to be deposited into a client trust account held by the law firm of Kathleen T. Zellner & Associates in full satisfaction of the outstanding balance of the amount due and owing under the Agreed Orders entered on July 1, 2010 and September 2, 2010. This payment was made after St. Paul Fire and Marine Insurance Company, American Alternative Insurance Company and Essex Insurance Company each refused to pay these amounts. As such, Will County admits that it claims Essex is responsible for an amount in excess of $1,266,000.00.

28. Essex denies any liability for any of the attorneys' fees awarded to the Foxes in the Underlying Action, or any interest in relation to the attorneys' fees, under the terms of the Essex Policy or otherwise.

**Answer:** The allegations set forth in Paragraph 28 of Essex's Counterclaim set forth Essex's legal position to which no answer is required. To the extent an answer may be required, Will County denies the same.

29. Actual and justiciable controversies exist between the parties in relation to the underlying award of punitive damages, and the Foxes' attorneys' fees and interest on the attorneys' fees, which may be determined by judgment or order of this Court pursuant to 735 ILCS 5/2-701.

**Answer:** Will County admits that actual and justiciable controversies exist between the parties in relation to the underlying award of the Foxes' attorneys' fees and interest on the attorneys' fees which may be determined by judgment or order of this Court pursuant to 735 ILCS 5/2-701. Will County denies any actual and justiciable controversy with regard to punitive damages to the extent the claim is directed to Will County.

30. Because the Court's ruling in this case could potentially require interpretation of the AAIC and St. Paul Policies, or could potentially impact AAIC and St. Paul, both are necessary and interested parties.

**Answer:** The allegations set forth in Paragraph 30 set forth a legal conclusion an answer to which is not required.

<u>**COUNT I: DECLARATORY JUDGMENT – PUNITIVE DAMAGES**</u>

31.    Essex repeats and incorporates here by reference Paragraphs 1-30 of its Counterclaim as if fully set forth here.

**Answer:** Will County repeats and restates its answers to Paragraphs 1-30 of Essex's Counterclaim as if fully set forth herein.

32.    The Essex Policy states, in part:

**Section C - Conditions**

*   *   *

4.     **Defense**

The company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceeding instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claim, suit or proceeding relative to any occurrence which, in the opinion o f the Company, may create liability on the part of the Company under the terms of this policy. If the Company avails itself of such right an opportunity the Company shall do so at its own expense.

(See, Ex. 1 at MEU-2000-0100, page 3).

**Answer:** The allegations set forth in Paragraph 32 of Essex's Counterclaim set forth specific sections of the Essex Policy the terms of which speak for themselves.

33.    The Essex Policy includes Endorsement 4 which states:

**PUNITIVE DAMAGES EXCLUSION**

This policy shall not apply to Ultimate Net Loss arising out of any punitive damages, exemplary damages, treble damages, or any damages resulting form the multiplication of compensatory damages, including any other fines or penalties.

(See, Ex.1 at Endorsement 4, MEU-5260-0895).

**Answer:** The allegations set forth in Paragraph 33 of Essex's Counterclaim set forth specific sections of the Essex Policy the terms of which speak for themselves.

34.     The punitive damages awarded to Kevin Fox against the defendant detectives are not covered by the terms of the Essex Policy.

**Answer:** The allegations set forth in Paragraph 34 of Essex's Counterclaim set forth a legal conclusion to which no answer is required. To the extent that an answer may be required Will County denies any further allegations.

35.     Punitive damages are not insurable under Illinois law and/or public policy.

**Answer:** The allegations set forth in Paragraph 35 of Essex's Counterclaim form a legal conclusion to which no answer is required.

36.     Pursuant to the terms of the Essex Policy, Essex was never obligated to and it did not defend the County or any of the individual defendant detectives in the Underlying Action prior to the judgment.

**Answer:** Upon information and belief, although Essex provided no attorney of record, there was an agreement between Essex and AAIC whereby AAIC would monitor the proceedings. (See attached as "Exhibit A" a true and accurate copy of a Reservation of Rights Letter dated October 9, 2006.) Upon information and belief an attorney for both AAIC and Essex was present through most or all of the proceedings and participated in settlement discussions as such. The allegation that the County was never obligated to defend the County pursuant to the terms of the Essex Policy sets forth a legal conclusion to which no answer is required. For the reasons set forth above, Will County denies the remaining allegations set forth in Paragraph 36.

37.     Pursuant to the terms of the Essex Policy, Essex was never obligated to and it did not retain defense counsel to represent the County or the individual defendants in the Underlying Action and it did not control the defense of the Underlying Action.

**Answer:** Upon information and belief, although Essex provided no attorney of record, there was an agreement between Essex and AAIC whereby AAIC would monitor the proceedings. (See attached as "Exhibit A" a true and accurate copy of a Reservation of Rights Letter dated October 9, 2006.) Upon information and belief an attorney for both AAIC and Essex was present through most or all of the proceedings and participated in settlement discussions as such. The allegation that the County was never obligated to defend the County pursuant to the terms of the Essex Policy sets forth a legal conclusion to which no answer is required. For the reasons set forth above, Will County denies the remaining allegations set forth in Paragraph 37.

38.     Essex never breached any obligations owed to its insureds under the Essex Policy in connection with the defense of the Underlying Action and it is not estopped to raise coverage defenses in connection with any claim for punitive damages made against it.

**Answer:** Will County denies the allegations set forth in Paragraph 38 of Essex's Counterclaim.

39.     Essex never received a settlement demand from the Foxes or the County to settle the Underlying Action within its policy limits prior to the judgment.

**Answer:** Will County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Essex Counterclaim and therefore denies same.

40.     Upon information and belief, neither AAIC nor St. Paul tendered or otherwise agreed to contribute their underlying policy limits toward a settlement of the underlying Action prior to the judgment.

**Answer:** Will County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Essex Counterclaim and therefore denies same.

41. Essex never refused to settle the Underlying Action in bad faith or otherwise.

**Answer:** Upon information and belief, although Essex provided no attorney of record, there was an agreement between Essex and AAIC whereby AAIC would monitor the proceedings. (See attached as "Exhibit A" a true and accurate copy of a Reservation of Rights Letter dated October 9, 2006.) and a Upon information and belief an attorney for both AAIC and Essex was present through most or all of the proceedings and participated in settlement discussions as such. Based upon the foregoing, Will County denies the allegations set forth in paragraph 41 of Essex's Counterclaim.

42. Essex never conceded a responsibility for the punitive damages in the Underlying Action, nor has Essex ever waived its rights to deny an obligation for punitive damages in this matter.

**Answer:** Will County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Essex Counterclaim and therefore denies same.

43. The Releases and Assignments attached as Exhibits A-F preclude the Foxes' claim for punitive damages against Essex.

**Answer:** To the extent that the allegations set forth in Paragraph 43 of Essex's Counterclaim are directed to Will County the allegations form a legal conclusion to which no answer is required.

## COUNT II DECLARATORY JUDGMENT- ATTORNEYS' FEES/INTEREST

44. Essex repeats and incorporates here by reference Paragraphs 1-30 of its Counterclaim as if fully set forth here.

**Answer:** Will County repeats and restates its answers to Paragraphs 1-30 of Essex's Counterclaim as if fully set forth herein.

45.     The basis for the courts' award of attorneys' fees to the Foxes in the Underlying Action is 42 U.S.C. §1988.

**Answer:** States a legal conclusion to which no answer is required.

46.     42 U.S.C. §1988 states, in part:

**Sec. 1988          Proceedings in vindication of civil rights**

*          *          *

**(b)      Attorney's fees**

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title...the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....**[.]**

**Answer:** Will County admits that there exists a Section 1988 in the United States Code, the terms of which speak for themselves.

47.     The Essex Policy states, in part:

**Section A – Insuring Agreements**

1.     The Company hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance as showing in Item 4. of the Declarations but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3. of the Declarations.  Except for the Terms, Definitions, conditions and Exclusions of this policy, the coverage provided by this policy shall follow the insuring Agreements, Definitions,

conditions and Exclusions of the Controlling Underlying Insurance

Policy shown in Item 4. of the Declarations.

\*     \*     \*

Section B – Definitions

\*     \*     \*

2.     **Ultimate Net Loss**

The term "Ultimate Net Loss' shall mean the amount payable in
settlement of the liability of the Insured after making deductions for
all recoveries and for other valid and collectible insurance, excepting
however the policy(ies) of the Underlying Insurer(s). Ultimate Net
loss shall exclude all interest accruing after entry of judgment, costs
and expenses, except with the consent of the Company.

(See, Ex.I at MEU-2000-0100, page 2).

**Answer:** The allegations set forth in Paragraph 47 of Essex's Counterclaim set

forth specific sections of the Essex Policy the terms of which speak for themselves.

48.     Neither the attorneys' fees awarded to the Foxes in the Underlying Case, nor

any interest on such fees, fall within the term "ultimate net loss" as used in the Essex Policy.

**Answer:** The allegations set forth in Paragraph 48 form legal conclusions to which

no answer is required. To the extent an answer is required, Will County denies the

allegations in Paragraph 48 of Essex's Counterclaim.

49.     The Essex Policy does not cover the attorneys' fees awarded to the Foxes in

the Underlying Action.

**Answer:** The allegations set forth in Paragraph 49 form legal conclusions to which

no answer is required. To the extent an answer is required, Will County denies the

allegations in Paragraph 49 of Essex's Counterclaim.

50.     The Essex Policy does not cover any interest awarded in connection with the

Foxes' attorneys' fees in the Underlying Action.

**Answer:** The allegations set forth in Paragraph 50 form legal conclusions to which no answer is required. To the extent an answer is required, Will County denies the allegations in Paragraph 50 of Essex's Counterclaim.

Respectfully submitted,

WILL COUNTY

By: _____
James W. Glasgow
Will County State's Attorney

Will County State's Attorney
JAMES W. GLASGOW
57 N. Ottawa Street
Joliet, Illinois 60432
(815) 727-8453



# INVESTORS UNDERWRITING MANAGERS, INC.

Investors Plaza  310 Highway 35 South, Red Bank, New Jersey 07701-5921
(732) 224-0500   (800) 243-6869   Fax (732) 741-2266   www.markelcorp.com

---

| *RESERVATION OF*<br>*RIGHTS* |
| :---: |

**VIA CERTIFIED MAIL R.R.R.**
7005 1820 0004 1331 8577

October 9, 2006

County of Will, IL
302 North Chicago
Joliet, IL 60432

> OCT 1 3 2006
>
> WILL COUNTY
> EMPLOYEE BENEFITS

RE:   Our Insured:          **County of Will, IL**
      Our Claim Number:    **0076387**
      Policy Number:       **XO NJ 1822 03**
      Policy Period:       **December 1, 2003 to December 1, 2004**
      Plaintiff            **Kevin Fox and Melissa Fox**

Dear Sir or Madam:

Investors Underwriting Managers, Inc. ("IUM") is the affiliated underwriting manager for Essex Insurance Company ("Essex"). Essex issued the captioned Excess Liability policy to the County of Will, IL. We have previously acknowledged receipt of the claim brought by Kevin Fox and Melissa Fox. The instant lawsuit titled: <u>Kevin Fox, Melissa Fox etal v. Former Will County State's Attorney Jeffrey Tomczak, Detective Edward Hayes etal</u> bearing Case Number 04 C 7309, is pending in the U. S. D. C. for the Northern District of Illinois, Eastern Division. Essex will investigate this claim pursuant to a full reservation of rights. By handling this matter under a reservation of rights, we reserve the right to investigate and deny coverage for any damages not covered under this policy. The following is an explanation of our position.

# EXHIBIT A

(Please refer to our Claim Number on all correspondence.)

## FACTUAL BACKGROUND

We understand that a Fourth Amended Complaint has been filed in connection with this matter. According to the Fourth Amended complaint, Jeffrey Tomczak is the former Will County State's Attorney who directed the investigation into Riley Fox's murder, and the subsequent prosecution of Kevin Fox, during the period of June 6, 2004 through December 2, 2004. Detectives Hayes, Guilfoyle, Swearengen, Ruettiger, Wachtl and Dobrowski are employed by the Will County Sheriff's Department and were involved in the investigation of Riley's murder. Williams, who administered a polygraph test to Kevin Fox, is alleged to be an agent of the Sheriff's Department. Pluth, who interviewed Fox's son, Tyler, is also alleged to be the Sheriff's agent. Bishop-Green is alleged to be an employee of the Sheriff's Department who worked at the Will County Jail. Each of these defendants has been sued in his or her individual capacity. It is alleged that each individually named defendant was acting within scope of his or her employment, under color of law, at all relevant times.

The Fourth Amended Complaint alleges that, on June 6, 2004, Kevin Fox discovered that his daughter, Riley was missing from the Fox home. Later that day, her body was found in a creek several miles from the Fox home. The Will County Sheriff's Department investigated Riley's murder. The following day, Mr. Fox and other family members allegedly provided DNA sample(s) to the Sheriff's Department. It is alleged that rather than having an immediate DNA analysis performed at the Illinois State Crime Laboratory, Tomczak directed that the samples be shipped to the FBI.

It is alleged that on June 22, 2004, the Foxes consented to their six year old son, Tyler, being interviewed by the Sheriff's Department, after they were informed that the purpose of the interview was to evaluate Tyler's potential need for psychological counseling. Pluth allegedly misled the Foxes as to the purpose of the interview, which was to coerce Tyler into implicating his father in Riley's murder. It is also alleged that certain of the defendant detectives were present for this interview, and that Detective Guilfoyle brought Tyler back to the Fox home and interrogated him there as well. The Foxes allege that Tyler was severely traumatized as a result of such treatment.

According the Fourth Amended Complaint, the Sheriff's investigation was essentially dormant from June 22, 2004 to October 25, 2004. It is alleged that Tomczak, who was facing a tough re-election contest, was motivated to close this case by compelling Fox to confess to Riley's murder. Accordingly, with Tomczak's knowledge, approval and supervision, the defendant detectives allegedly met to discuss the planned coercion of Mr. Fox's confession.

The Foxes met with the officers on October 26, 2004 and were interrogated separately from 6:50 pm on the 26th until 9:20 am on the 27th. It is alleged that Mr. Fox was "tricked" into signing a Miranda waiver, and that the defendant detectives refused to allow him to call his father and ask that he get an attorney. According to the Fourth Amended Complaint, the defendant detectives intimidated, coerced, confused and misled Mr. Fox to obtain his confession to Riley's murder.

Mr. Fox allegedly was told that he was facing a first-degree murder conviction, with at least thirty years in jail, but if he confessed to Riley's murder being an "accident," he would receive only minimal jail time. The defendant detectives reportedly told Mr. Fox what to say in his confession. It is also alleged that defendant Williams administered an unreliable polygraph examination to Mr. Fox.

Apparently, only twenty minutes of Mr. Fox's interrogation were taped, which contravenes Illinois law. Moreover, no member of the Will County State's Attorney's office was present for the interview. With respect to the detectives' interrogation of Mrs. Fox, it is alleged that the defendant detectives were verbally abusive to her, and that she repeatedly accused her husband of abusing and killing their daughter.

The Fourth Amended Complaint alleges that, at Tomczak's direction, misrepresentations were made to the grand jury that implicated Mr. Fox, and that the detectives who testified before the grand jury suppressed all exculpatory evidence. It is also alleged that Tomczak made no effort to independently corroborate the statements in Mr. Fox's confession, and that he failed to obtain the DNA test results before charging Mr. Fox with first degree murder, requesting a $25 million bond, and seeking the death penalty. According to the Fourth Amended Complaint, Tomczak made a number of misrepresentations to the media concerning Mr. Fox's arrest, and in particular, he falsely stated that Riley had a "history" of having been sexually abused.

Additionally, the Fourth Amended Complaint alleges that on November 3, 2004, the day after Tomczak lost his election, one of the defendant detectives contacted the FBI and requested that all testing of Mr. Fox's DNA sample(s) be suspended. Tomczak allegedly left the Will County State's Attorney's Office on December 2, 2004. It is alleged that, after leaving office, Tomczak has continued to make false statements to the press regarding this case.

According to the Fourth Amended Complaint, one or more of the defendant detectives deliberately delayed in providing key evidence to the newly elected Will County State's Attorney, James Glasgow. In particular, it is alleged that Defendant Hayes deliberately sent Mr. Fox's DNA sample to the wrong laboratory. In any event, it is alleged that on June 16, 2005, the testing lab determined that the DNA found on Riley's body did not match that of Mr. Fox or any other family member who had provided samples. On June 17, 2005, the Will County State Attorney dropped the charges against Mr. Fox, and he was released from jail that day. Nonetheless, it is alleged that one or more of the defendant detectives have continued to publicly claim that Mr. Fox is guilty of Riley's murder, and that the DNA evidence was contaminated.

According to the Fourth Amended Complaint, Mr. Fox was incarcerated for 234 days. It is alleged that during this time, several jail guards, including Bishop-Green, verbally abused him.

The Fourth Amended Complaint contains the following eleven counts:

1. Count I – (Kevin Fox) Violation of Due Process Pursuant to Section 1983 (directed against all the individually named defendants except Bishop-Green, Pluth and Williams);

2. Count II – (Kevin Fox) False Arrest Pursuant to Section 1983 (directed against all the individually named defendants except Bishop-Green, Pluth and Williams);

3. Count III – (Kevin Fox) Malicious Prosecution (directed against all the individually named defendants except Bishop-Green, Pluth and Williams);

4. Count VI – (Kevin Fox) Intentional Infliction of Emotion Distress (directed against all the individually named defendants except Bishop-Green, Pluth and Williams);

5. Count V – (Kevin Fox) False Imprisonment (directed against all the individually named defendants except Bishop-Green, Pluth and Williams);

6. Count VI – (Kevin Fox) Defamation (directed against Tomczak only)

7. Count VII (Melissa Fox) – Loss of Consortium (directed against all the individually named defendants except Bishop-Green, Pluth and Williams);

8. Count VIII (Melissa Fox) - Intentional Infliction of Emotional Distress (directed against Tomczak and defendant Hayes);

9. Count IX (Kevin and Melissa Fox) - Conspiracy (directed against all the individually named defendants except Bishop-Green);

10. Count X (Kevin and Melissa Fox) - Indemnification (directed against the County); and

11. Count XI (Kevin Fox) – Respondeat Superior (directed against the County and the Sheriff's Department).

## THE ESSEX INSURANCE COMPANY POLICY

Essex Insurance Company issued policy XONJ182203 with effective dates of 12/1/03- 12/1/04. The policy provides a limit of liability of $5 million per occurrence/annual aggregate. The Essex policy is excess over a controlling underlying policy issued by AAIC. The AAIC policy has a limit of liability of $5 million per occurrence/aggregate.

The Essex Insurance Company policy provides in pertinent parts:

### Section A – Insuring Agreements

**The Company hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the Underlying Insurance as shown in Item 4 of the Declarations, but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3 of the Declarations. Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4 of the Declarations.**

By correspondence dated May 17, 2006, AAIC, the controlling underlying insurance carrier, agreed to monitor this matter pursuant to a reservation of rights under their policy. As the Essex policy incorporates the terms and conditions of the underlying AAIC policy, Essex incorporates by reference the May 17, 2006 letter by AAIC, a copy of which is attached hereto.

Essentially, AAIC reserves its rights to deny coverage based upon (1) the terms, conditions, definitions and exclusions contained in the AAIC's controlling underlying policy issued by St. Paul; (2) whether the individually named defendants qualify as "Insureds" under the AAIC policy; (3) whether the "Insureds" incur liability for damages not because of "bodily injury" as that term is defined in the AAIC policy; (4) "bodily injury" not caused by an "occurrence"; (5) "personal injury" that may have occurred outside of the AAIC policy effective dates; (6) AAIC policy's "Police Or Law Enforcement Activities Exclusion" Endorsement; (7) AAIC policy "Public Officials Errors & Omissions Exclusion" Endorsement; (8) AAIC policy Illinois Amendatory Endorsement, which precludes coverage for punitive damages

The Fourth Amended complaint seeks an award of punitive and/exemplary damages against the defendants. Please note that the Essex policy includes a Punitive Damages Exclusion endorsement, which states:

### PUNITIVE DAMAGES EXCLUSION

In consideration of the premium charged, its is hereby understood and agreed that this policy shall not apply to "Ultimate Net Loss" for any loss, cost and/or expense arising out of, resulting from, caused by, or in anyway contributed to any punitive damages, exemplary damages, treble damages, or any damages resulting from the multiplication of compensatory damages, including any other fines or penalties.

The punitive damages exclusion endorsement precludes coverage for punitive or exemplary damages. To the extent that there is an award of punitive and/or exemplary damages, Essex reserves the right to decline coverage for those damages.

As stated in the Essex policy's Insuring Agreements, except for the terms, definitions, conditions and exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, definitions, conditions and exclusions of the Controlling Underlying Insurance Policy.

The foregoing discussion of grounds for Essex Insurance Company's reservation of rights is not intended to be exhaustive or complete. Essex specifically reserves the right to supplement this correspondence should we become aware of the applicability of additional policy provisions if and when the underlying facts and applicable law so warrant.

We trust that you understand our position as set forth above. If any of the factual information relied upon by us in this letter is materially incorrect, or if you possess any additional information, which you believe provides a basis for coverage, please immediately contact the undersigned.

If any of the factual information relied upon by us in this letter is materially incorrect, or if you possess any additional information which you believe provides a basis for coverage, please immediately contact the undersigned at (732) 391-8884.

Sincerely,

Jacqueline Armour
Claims Account Specialist

JA/ps

cc:    Stewart Smith
10 South LaSalle Street, Suite 3200
Chicago, IL 60603
Att: Bernadine Stewart

Butch Marros
Vice President
Willis
10 S. LaSalle Street, Suite 3000
Chicago, IL 60603