**MARKEL** **Essex Insurance Company**

## EXCESS LIABILITY POLICY
## DECLARATIONS

**Policy Number :** XO-NJ-1822-03    **Previous Policy Number:** NEW

| Item 1. Named Insured and Mailing Address: | Producers Name and Address: |
|---|---|
| **County of Will, IL**<br>(and as more fully described in the Controlling<br>Underlying Insurance Policy)<br>102 North Chicago Street<br>Joliet, IL 60432 | **Stewart Smith Mid America, Inc.**<br>30 South Wacker Drive, Suite 2806<br>Chicago, IL 60606<br><br>Producer Number:    0066A |

**Policy Period**    From:    December 1, 2003    To:    December 1, 2004
12.01 A.M. Standard Time At The Address Of The Insured Shown Above

Retroactive Date: (This policy's inception date applies unless otherwise noted here)    N/A

**Item 2.** Policy Premium Excluding Terrorism:    $160,000    Flat Premium:  X  or Adjustable Premium: __
(check flat or adjustable)
Rate:    Per:    Basis:
Additional Premium Including Terrorism: Rejected by Insured

Deposit and Total Premium Charge:    $160,000    Policy Minimum Premium:  25%

**Item 3.    Policy Limit:**
a. Limits of Liability    $5,000,000    **Each Occurrence**
$5,000,000    **Annual Aggregate (where applicable)**

b. which is part of    N/A    **Each Occurrence/ Aggregate**

**Item 4.    Schedule of Underlying Insurance:**

Controlling Underlying Insurance Policy:    Underlying Limits of Liability:
(Insurer, Policy Number, Policy Period)

American Alternative    $5,000,000    Each Occurrence
(as per policy on file with company)    $5,000,000    Aggregate (as applicable)
December 1, 2003 to December 1, 2004
Coverage: Umbrella Liability

FEB 2 5 2004

**Item 5.    Forms and Endorsements attached to this policy at time of issuance:**

See Schedule of Forms and Endorsements attached (MEU-1002-0895)

Date Issued: 12/15/03 11:34 AM
din    by _____
Authorized Representative

NOTICE TO POLICYHOLDER: This contract is
issued pursuant to Section 445 of the Illinois

CONFIDENTIAL

SURPLUS LINE TAX

**EXHIBIT C**

 **Essex Insurance Company**

**MARKEL**

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
| XO-NJ-1822-03 | 12/1/03 | County of Will, IL |

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Endorsement Number | Endorsement Title | Form Number |
|---|---|---|
| | Policy Jacket | MEU-2000-0100 |
| | Policy Declarations Page | MEU-2001-0895 |
| | Schedule of Forms and Endorsements | MEU-1002-0895 |
| 1 | Mold Exclusion | MEU-5425-1001 |
| 2 | Exclusion - Year 2000 | MEU-5409-0398 |
| 3 | Care, Custody or Control Exclusion | MEU-5070-0895 |
| 4 | Punitive Damages Exclusion | MEU-5260-0895 |
| 5 | Cross Suits Exclusion | MEU-5419-1200 |
| 6 | Lead Contamination Exclusion | MEU-5093-0895 |
| 7 | Breach of Contract Exclusion | MEU-5415-1199 |
| 8 | Municipal Amendatory Endorsement | MEU-5414-1099 |
| 9 | Designated Operations Exclusion | MEU-5410-0598 |
| 10 | Designated Professional Liability Exclusion | MEU-5210-0895 |
| 11 | No-Drop Down Provision | MEU-7069-0501 |

Insured Copy

CONFIDENTIAL

 **Essex Insurance Company**

**MARKEL**

# ENDORSEMENT   1

** ·Complete the Items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
|  |  |  |

## MOLD EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium charged it is hereby understood and agreed that this policy shall not apply to "ultimate net loss" arising out of and/or contributed in any way by and/or resulting from:

1) "Bodily injury," "property damage" and/or " personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal seepage, migration, release, escape, presence, growth or reproduction of "mold."

2) Costs and expenses to investigate or defend any claim or "suit" or payment of any fine or penalty for 1. above.

3) Any loss, cost, expense, fine or penalty arising out of any:

   (a) Claim, "suit," request, demand, order or statutory or regulatory requirement than any insured or others test for, monitor, clean up, remove, abate, mitigate, remediate, dispose of, contain, treat, detoxify or neutralize, or in any way respond to, or assess the concentration or effects of "mold," or

   (b) Claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, abating, mitigating, remediating, disposing of, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the concentration or effects of "mold."

MEU- 5425-1001

Page 1 of 2

[] CONFIDENTIAL

 **Essex Insurance Company**

## ENDORSEMENT   2

** Complete the items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
|  |  |  |

## EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This policy shall not apply to "Ultimate Net Loss" arising directly or indirectly out of:

1. Any actual or alleged failure, malfunction or inadequacy of:

   a. Any of the following, whether belonging to any insured or to others:

      (1) Computer hardware, including microprocessors;
      (2) Computer application software;
      (3) Computer operating systems and related software;
      (4) Computer networks;
      (5) Microprocessors (computer chips) not part of any computer system; or
      (6) Any other computerized or electronic equipment or components; or

   b. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in part 1. above

   due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 1. above.

Insured Copy

[T] CONFIDENTIAL

MEU-5409-0398

 **Essex Insurance Company**

MARKEL

## ENDORSEMENT    3

·· Complete the Items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming
part of  the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
|  |  |  |

## CARE, CUSTODY OR CONTROL EXCLUSION

This policy shall not apply to "Ultimate Net Loss" arising out of property damage to:

1.    Property rented to, leased to, occupied by, used by, or owned by any Insured;

2.    Property loaned to any Insured; or

3.    Property in the care, custody, or control of any Insured, or for which any Insured is for any purpose exercising physical
control.

Insured Copy

☐ CONFIDENTIAL

MEU- 5070-0895

 **Essex Insurance Company**

MARKEL

## ENDORSEMENT   4

** Complete the items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
|  |  |  |

## PUNITIVE DAMAGES EXCLUSION

This policy shall not apply to Ultimate Net Loss arising out of any punitive damages, exemplary damages, treble damages, or any damages resulting from the multiplication of compensatory damages, including any other fines or penalties.

Insured Copy

CONFIDENTIAL

MEU-5260-0895



# Essex Insurance Company

## ENDORSEMENT 5

·· Complete the items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
| | | |

## CROSS SUITS EXCLUSION

This policy shall not apply to "Ultimate Net Loss" arising out of or caused by any Named Insured covered by this policy initiating causes of action or allegations against any other Named Insured covered by this policy.

Insured Copy

CONFIDENTIAL

MEU-5419-1200

 **Essex Insurance Company**

MARKEL

## ENDORSEMENT 6

** Complete the items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
|  |  |  |

## LEAD CONTAMINATION EXCLUSION

This policy shall not apply to "Ultimate Net Loss" arising out of or in connection with:

a. "Bodily Injury", "Property Damage", "Personal Injury" and or "Advertising Injury", arising out of the ingestion, inhalation, absorption or otherwise arising from any form of lead;

b. arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

c. arising out of any "claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

Insured Copy

[!] CONFIDENTIAL

MEU-5093-0895

 **Essex Insurance Company**

MARKEL

## ENDORSEMENT 7

** Complete the items below if this endorsement is issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
|  |  |  |

### BREACH OF CONTRACT EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that this insurance does not apply to the ultimate net loss arising out of, or contributed in any way by, any Breach of Contract whether express or oral, nor for any Breach of an implied in law or implied in fact contract.

It is further understood and agreed that Section II, Defense and Supplementary Payments, Coverage A and B, pages 9 and 10 of 25, of form number MEU-1000-0895 shall not apply to any cost or expense arising out of, or contributed in any way by, any Breach of Contract whether express or oral, nor for any Breach of an implied in law or implied in fact contract.

This entire exclusion shall also apply to any additional insureds under this policy.

Insured Copy

[] CONFIDENTIAL

MEU-5415-1199

 **Essex Insurance Company**

MARKEL

## ENDORSEMENT 3

** Complete the Items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
| | | |

## MUNICIPAL AMENDATORY ENDORSEMENT

This insurance is modified by the following provisions:

1.  This insurance does not apply to any liability arising out of:

    a.  Riot, civil commotion or mob action, or any act or omission in connection with the prevention or suppression of a riot, civil commotion or mob action.

    b.  The failure to adequately supply gas, water, electricity, steam or solar power;

    c.  The ownership, maintenance, operation, or use or entrustment to others of airfields, runwsys, hangers, buildings or other properties in connection with any aviation activities or airports;

    d.  The operation of the principles of eminent domain, condemnation proceedings, or inverse condemnation, by whatever name called, whether such liability accrues directly against the insured or by virtue of any agreement entered by or on behalf of the insured;

    e.  Bodily injury or personal injury to any volunteer firemen, whether or not members of the insured's organization while in the course of their duties as such; or

    f.  Buildings on the site of a proposed housing project at the time of its acquisition by a housing authority.

CONFIDENTIAL

MEU-5414-1099

2   Except insofar as coverage is available to the insured in valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance, for the full limit shown, and then only for such liability for which coverage is afforded under the underlying insurance, this insurance shall not apply to any liability arising out of:

    a.   Property damage to property (1) leased, rented or occupied by the insured, (2) used by the insured, (3) loaned to the insured, or (4) in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

    b.   Property damage arising out of (1) the "explosion hazard", (2) "the collapse hazard" or (3) the "underground property damage hazard" as defined in the underlying Commercial General Liability policy;

    c.   The existence and maintenance of streets, roads, highways, bridges, sidewalks, culverts, parking meters, traffic lights and signs, street benches and decorations, public refuse receptacles, safety zone stanchions, light and telephone poles, trees, water hydrants and alarm boxes, or the ownership, maintenance, operation, use, loading or unloading of "mobile equipment," as defined in the underlying Commercial General Liability policy, maintained by or for the insured for use in connection with the foregoing; or

    d.   Injury sustained by an person while practicing for, or participating in or officiating at, any athletic contest or exhibition.

Insured Copy

MEU-5414-1099

ITT CONFIDENTIAL



# Essex Insurance Company

## ENDORSEMENT  9

•• Complete the items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: | |
|----------------|-----------------|----------------|--|
|                |                 |                |  |
|                |                 |                |  |

## DESIGNATED OPERATIONS EXCLUSION

This policy shall not apply to Ultimate Net Loss arising out of the operations shown below:

Description of Operations:

> All Nursing Homes,
> Healthcare,
> Skilled Nursing and
> Rehab Facilities

> Owned, Managed or Run by the County of Will, IL

Insured Copy

MEU-5410-0598

CONFIDENTIAL

 **Essex Insurance Company**

MARXEL

## ENDORSEMENT 10

** Complete the items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
| | | |

## DESIGNATED PROFESSIONAL LIABILITY EXCLUSION

This policy shall not apply to Ultimate Net Loss arising out of the rendering of or failure to render the professional services described below by any Insured or by any person for whose acts or omissions any Insured is legally responsible.

Description of Professional Services:

All Medical & Nursing Home Professional Liability

Insured Copy

CONFIDENTIAL

MEU-5210-0895

 **Essex Insurance Company**

## ENDORSEMENT 11

** Complete the items below if this endorsement is not issued as part of the policy as of the inception date of the policy issued, or not shown as forming part of the policy on the Declarations page, or Schedule of Endorsements.

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
|  |  |  |

### NO-DROP DOWN PROVISION

It is further understood and agreed that the aggregate limit of liability of any underlying insurance as set forth in Item 4 of the Declarations shall not be reduced by Ultimate Net Loss as respects coverage excluded hereunder. It shall be the insured's sole responsibility to provide other insurance or self-insurance for any impairment of the underlying aggregate limit as a result of the Ultimate Net Loss.

Insured Copy

CONFIDENTIAL

MEU-7069-0501

 ESSEX INSURANCE COMPANY

# EXCESS
# LIABILITY POLICY

## INVESTORS UNDERWRITING MANAGERS, INC.

### A DIVISION OF MARKEL

CONFIDENTIAL

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

In consideration of the payment of the premium, the Company, in reliance upon the statements in the DECLARATIONS and upon the covenants, warranties, representations and mutual agreements set forth herein and in the DECLARATIONS, and subject to all the terms and conditions of this policy, hereby agrees with the Insured as follows:

## Section A - Insuring Agreements

1. The Company hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance as shown in Item 4. of the Declarations, but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3. of the Declarations. Except for the Terms, Definitions, Conditions, and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4. of the Declarations.

2. The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's Limit of Liability beyond that set forth in Item 3. of the Declarations.

3. If an amount is shown in Item 3.b. of the Declarations, it is agreed that the Company's Limit of Liability as shown in Item 3.a. of the Declarations is limited to the Company's quota-share participation for that portion of Ultimate Net Loss as it applies as part the larger Limit of Liability shown in Item 3.b. of the Declarations. Under no circumstance will the Company's Limit of Liability exceed the policy limits shown under Item 3.a. of the Declarations.

## Section B - Definitions

1. **Each Annual Period.**
   The term "Each Annual Period" shall mean each consecutive period of one year commencing from the inception date of this policy.

2. **Ultimate Net Loss.**
   The term "Ultimate Net Loss" shall mean the amount payable in settlement of the liability of the Insured after making deductions for all recoveries and for other valid and collectible insurance, excepting however the policy(ies) of the Underlying Insurer(s). Ultimate Net Loss shall exclude all interest accruing after entry of judgment, costs and expenses, except with the consent of the Company.

3. **Underlying Insurance.**
   The term "Underlying Insurance" shall mean the policy or policies listed in Item 4. of the Declarations.

CONFIDENTIAL

## Section C - Conditions

1. **Changes.**
The Company shall be promptly notified of any coverage or limit change(s) made to the Underlying Insurance after the inception date of this policy.

2. **Premium.**
The Insured shall pay premium to the Company as specified in the Declarations.

   Upon expiration of this policy or its termination during the policy period, the earned premium shall be computed as follows. If the earned premium thus computed is more than the advanced premium paid, the Insured shall immediately pay the excess to the Company; if less, the Company shall return the difference to the Insured, but the Company shall receive and retain the Policy Minimum Premium.

3. **Duties in the Event of Accident, Occurrence, Claim or Suit.**
You must see to it that we or our authorized representative and your underlying insurers:

   a. are notified as soon as practicable of any accident or occurrence which may result in a claim if the claim may involve this policy or any underlying insurance;

   b. receive notice of the claim or suit as soon as practicable. Notice shall include:

      1) How, when and where the accident or occurrence took place;
      2) The Insured's name and address;
      3) The names and addresses of any injured persons and witnesses; and
      4) The nature and location of any injury or damage arising out of the accident or occurrence.

   c. are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to you or any other Insured because of injury or damage to which this insurance may apply; and

   d. receive the Insured's full cooperation in the investigation, adjustment, settlement or defense of any claim or suit.

   In addition, it is a requirement of this policy that:

   a. the Insured not make any admission of liability;

   b. no Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid without our written consent;

   c. that you immediately send us copies of any demands, notices, summonses or legal paper received in connection with a claim or suit involving you or any other Insured.

4. **Defense.**
The Company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceeding instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claim, suit or proceeding relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy. If the Company avails itself of such right and opportunity the Company shall do so at its own expense.

   Court costs and interest, if incurred with the consent of the Company, shall be borne by the Company and other interested parties in the proportion that each party's share of the Ultimate Net Loss bears to the total amount of Ultimate Net Loss sustained by all interested parties.

5. **Cancellation**

This policy may be canceled by the Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy, written notice stating when not less than ten (10) days for non-payment of the premium or thirty (30) days for other than non-payment of the premium thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice, either by the Named Insured or by the Company, shall be equivalent to mailing.

The Insured first named in the Declarations is authorized to act on behalf of all Named Insureds and other Insureds with respect to the giving and receiving of notice of cancellation and to the receiving of any return premium that may become payable under this policy.

If the Named Insured cancels, earned premium shall be computed in accordance with the short rate table and procedure in use for this policy. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation. In the event of cancellation by the Named Insured, earned premium shall in no case be less than the Policy Minimum Premium stated in the Declarations.

6. **Maintenance of Underlying Insurance.**

The limits of the Underlying Insurance shall be maintained in full effect during the currency of this policy except for reduction of such limits by exhaustion of aggregate limits (if any) contained therein by paying or by having been held liable to pay for damages for accident(s) or occurrence(s), whichever is applicable, during Each Annual Period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Company shall be liable only to the extent that it would have been held liable had the Insured complied therewith. In the event of the Insolvency of the Underlying Insurer, the Company shall only be liable to the same extent as it would have been liable had the limits of the Underlying Insurance been maintained and were fully collectable.

## Section D - Exclusions

This policy shall not apply:

1. To "Ultimate Net Loss":

   a. arising out of or contributed to in any way by the actual, alleged or threatened discharge, dispersal, release, migration, escape, or seepage of pollutants; or

   b. any loss, cost or expense arising out of any:

      1) request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

      2) claim or suit whether by or on behalf of any governmental authority or any other entity for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

   As used in this exclusion, pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials, to be recycled, reconditioned, reclaimed or disposed of.

CONFIDENTIAL

2. To "Ultimate Net Loss" arising out of or in connection with:

  a. asbestos or asbestos-related material(s), regardless of whether used, manufactured, sold, handled, maintained, repaired, removed, disposed of, transported, distributed, installed by, or in any way connected with the Insured; or

  b. the existence of asbestos, in any goods, products, materials, storage devices, containers, wrappings, packaging, warehouses, buildings, or other structures of any kind, or any part thereof; or

  c. any goods or products which are damaged, contaminated, or otherwise affected by asbestos or any asbestos-related material(s); or

  d. asbestos abatement activities, including clean-up, repair, or any other corrective measures which are occasioned by the existence of asbestos in any land, soil, water or watercourses, the atmosphere and/or building(s), whether voluntarily undertaken or required by any governmental body or other entity to eliminate asbestos; or

  e. Any supervision, instructions, recommendations, warnings, or advice given or which should have been given, and any obligation to share damages with or repay someone else who must pay damages in connection with a., b., c., or d. above.

3. To "Ultimate Net Loss" arising out of any claim or claims made by or against the Insured with respect to any uninsured/underinsured motorist or automobile no fault or first party personal injury law.

4. To "Ultimate Net Loss" arising out of the Employee Retirement Income Security Act of 1974 (ERISA) as now or hereafter amended or any similar state or other governmental law.

5. To "Ultimate Net Loss" arising out of or that results from any consequence, direct or indirect, due to war, whether or not declared, or an act or condition incident to war. War includes invasion, act of a foreign enemy, hostilities, civil war, insurrection, rebellion, military or usurped power, strike, riot, civil commotion, revolution, or acts of terrorism.

6. To "Ultimate Net Loss":

  a. with respect to which an Insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  b. arising out of "hazardous properties" of "nuclear material" and with respect to which:

    1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or
    2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  c. Arising out of "hazardous properties" of "nuclear material" if:

    1) the "nuclear material"

      a) is at any "nuclear facility" owned by, or operated by or on behalf of an Insured, or
      b) has been discharged or dispersed therefrom;

    2) the "nuclear material" is contained in "spent fuel" or "waste" at any time processed, handled, used, possessed, stored, transported or disposed of by or on behalf of an Insured; or

CONFIDENTIAL

3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if any such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3) applies only to Property Damage to such nuclear facility any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means "source material," "special nuclear material" or "byproduct material";

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material:

    a)   containing byproduct material, and

    b)   resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph a) or b) below;

"nuclear facility" means:

    a)   any nuclear reactor;

    b)   any equipment or device designed or used for:

        1)   separating the isotopes or uranium or plutonium,
        2)   processing or utilizing spent fuel, or
        3)   handling, processing or packaging "waste";

    c)   any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property Damage" includes all forms of radioactive contamination of property.

CONFIDENTIAL

## Service Of Suit

Except with respect to Policies issued for Named Insureds domiciled in Illinois, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Named Insured will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor shall be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon Lord, Bissell & Brook, 115 S. LaSalle, Chicago, Illinois, 60603 and that in any suit instituted against them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Named Insured that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_Gregory R. Needham_
**Secretary**

_Stephen J. Viscoso Jr_
**President**

FEB 2 5 2004