**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN FOX & MELISSA FOX, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WILL COUNTY, *et al*., ) <br> ) <br> Defendants. ) | No. 04 C 7309 <br><br> Judge John W. Darrah <br><br> Magistrate Judge <br> Geraldine Soat Brown |
| WILL COUNTY, ) <br> ) <br> Third Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ESSEX INSURANCE COMPANY, a Delaware ) <br> corporation, AMERICAN ALTERNATIVE ) <br> INSURANCE CORPORATION, a Delaware ) <br> corporation and ST. PAUL FIRE AND MARINE ) <br> INSURANCE COMPANY, a Minnesota corporation, ) <br> ) <br> Third Party Defendants. ) | **MEMORANDUM IN SUPPORT OF AMERICAN ALTERNATIVE INSURANCE CORPORATION'S MOTION TO DISMISS FOX SECOND AMENDED COMPLAINT** |
| KEVIN FOX, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ESSEX INSURANCE COMPANY, a Delaware ) <br> corporation, and AMERICAN ALTERNATIVE ) <br> INSURANCE CORPORATION, a Delaware ) <br> corporation, ) <br> ) <br> Third Party Defendants. ) | |

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. MOTION TO DISMISS STANDARD.........................................................................2

III. FACTS ADMITTED IN PLAINTFF'S COMPLAINT ........................................................3

IV. ARGUMENT..................................................................................................................4

    A. Plaintiff Cannot Obtain Coverage From AAIC for Plaintiff's Punitive Damage Award Under Any Cause of Action .............................................4

    B. Count I - Breach of Contract Wrongful Failure to Settle - Further Fails Because AAIC Did Not Provide a Defense to the Detectives Pre-Verdict...........................................................................................................7

        1. No Illinois Court has Ever Placed a Duty to Settle Upon an Insurer Who Did Not Actually Control All Aspects of the Defense and Settlement of the Underlying Litigation .................................7

        2. Any Bad Faith Wrongful Failure to Settle Can Occur "Only Up to the Time Any Excess Judgment is Entered Against the Insured".................................................................................................9

    C. Count II - Breach of Contract Defending When a Conflict of Interest Exists - Further Fails Because AAIC Was Not the "Defending Insurer" Pre-Verdict and Had no Duty to Advise the Detectives of Any Potential Conflict-of Interest .......................................................10

    D. Counts IV, VI, VIII and X - Duty to Indemnify Based upon Estoppel Further Fail Because Estoppel Has No Application Against AAIC, an Excess Umbrella Insurer .........................................................13

V. CONCLUSION.............................................................................................................15

## TABLE OF AUTHORITIES

*American Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*,
   843 N.E.2d 492 (Ill. App. Ct. 2006) .................................................................................. 11

*American Liberty Ins. Co. v. City of Joliet*,
   711 F. Supp. 455 (N.D. Ill. 1989) ....................................................................................... 5

*Associated Indem. Co. v. Insurance Co. of N. America*,
   386 N.E.2d 529 (Ill. App. Ct. 1979) .................................................................................. 14

*Athanas v. City of Lake Forest*,
   657 N.E.2d 1031 (Ill. App. Ct. 1995) ................................................................................ 12

*Beaver v. Country Mut. Ins. Co.*,
   420 N.E.2d 1058 (Ill. App. Ct. 1981) .................................................................................. 5

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) .............................................................................................. 2

*Bruce v. City of Chicago*,
   2010 WL 3527629 (N.D. Ill. Aug. 31, 2010) ...................................................................... 2

*Central Illinois Public Service Co. v. Agricultural Ins. Co.*,
   880 N.E.2d 1172 (Ill. App. Ct. 2008) .................................................................................. 8

*Chandler v. American Fire and Cas. Co.*,
   879 N.E.2d 396 (Ill. App. Ct. 2007) .................................................................................... 9

*Cincinnati Cos. v. West Am. Ins. Co.*,
   679 N.E.2d 91 (Ill. App. Ct. 1997) .................................................................................... 11

*Cincinnati Ins. Co. v. American Hardware Mfrs. Ass'n*,
   898 N.E.2d 216 (Ill. App. Ct. 2008) .................................................................................... 4

*Crawford Laboratories, Inc. v. St. Paul Ins. Co. of Ill.*,
   715 N.E.2d 653 (Ill. App. Ct. 1999) .................................................................................... 5

*Economy Fire & Cas. Co. v. Brumfield*,
   894 N.E.2d 421 (Ill. App. Ct. 2008) .................................................................................. 11

*Employers Ins. of Wausau v. Ehlco Liquidating Trust*,
   708 N.E.2d 1122 (Ill. 1999) ......................................................................................... 13, 14

*First Specialty Ins. Corp. v. Continental Cas. Co.*,
   2003 WL 1220238 (N.D. Ill. March 14, 2003) ............................................................... 9, 14

*Haddick ex rel. Griffith v. Valor Ins.*,
    763 N.E.2d 299 (Ill. 2001) .................................................................................................. 8

*Home Indem. Co. v. General Accident Ins. Co. of Am.*,
    572 N.E.2d 962 (Ill. App. Ct. 1991) ..................................................................................... 9

*Horwitz v. Holabird & Root*,
    816 N.E.2d 272 (Ill. 2004) .................................................................................................. 12

*Illinois Masonic Med. Ctr. v. Turegum Ins. Co.*,
    522 N.E.2d 611 (Ill. App. Ct. 1988) ..................................................................................... 11

*International Ins. Co. v. Sargent & Lundy*,
    609 N.E.2d 842 (Ill. App. Ct. 1993) ..................................................................................... 14

*Iowa Physicians' Clinic Medical Found. v. Physicians Ins. Co. of Wisconsin*,
    547 F.3d 810 (7th Cir. 2008) ............................................................................................... 8

*Ismie Mut. Ins. Co. v. Michaelis Jackson & Associates, LLC*,
    921 N.E.2d 1156 (Ill. App. Ct. 2009) ................................................................................... 13

*Jones v. Beker*,
    632 N.E.2d 273 (Ill. App. Ct. 1994) ..................................................................................... 12

*Justice v. Town of Cicero,*
    577 F.3d 768 (7th Cir. 2009) ............................................................................................... 3

*Kajima Constr. Services, Inc. v. St. Paul Fire and Marine Ins. Co.*,
    856 N.E.2d 452 (Ill. App. Ct. 2006), *aff'd*, 879 N.E.2d 305 (Ill. 2007) .................................... 9

*Kies v. City of Aurora*,
    149 F. Supp. 2d 421 (N.D. Ill. 2001) .................................................................................... 3

*Liberty Mut. Ins. Co. v. American Home Assur. Co.*,
    348 F. Supp. 2d 940 (N.D. Ill. 2004) .......................................................................... 7-9, 10

*Lira v. Shelter Ins. Co.*,
    913 P.2d 514 (Colo. 1996) ........................................................................................... 5-6, 7

*Magnum Foods, Inc. v. Continental Cas. Co.*,
    36 F.3d 1491 (10th Cir. 1994) ............................................................................................. 6

*Mobil Oil Corp. v. Maryland Cas. Co.*,
    681 N.E.2d 552 (Ill. App. Ct. 1997) ............................................................................... 10-11

*Mortenson v. National Union Fire Ins. Co. of Pittsburgh, PA.*,
    249 F.3d 667 (7th Cir. 2001) ............................................................................................... 5

*Nandorf, Inc. v. CNA Ins. Cos.*,
 479 N.E.2d 988 (Ill. App. Ct. 1985) ............................................................................... 11

*National Union Ins. Co. v. Dowd & Dowd, P.C.*,
 2 F. Supp. 2d 1013 (N.D. Ill. 1998) ................................................................................ 10

*North River Ins. Co. v. Grinnell Mut. Reinsurance Co.*,
 860 N.E.2d 460, 467 (Ill. App. Ct. 2006) ................................................................. 13-14

*Peerless Enterprise, Inc. v. Kruse*,
 738 N.E.2d 988 (Ill. App. Ct. 2000) ......................................................................... 14-15

*PPG Industries, Inc. v. Transamerica Ins. Co.*,
 975 P.2d 652 (Cal. 1999) ............................................................................................ 5, 6

*Soto v. State Farm Ins. Co.*,
 635 N.E.2d 1222 (N.Y. 1994)......................................................................................... 6

*Speck, Jr. v. Brown*,
 2010 WL 3781044 (N.D. Ill. Sept. 20, 2010) ................................................................. 2

*State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co. of Chicago*,
 899 N.E.2d 408 (Ill. App. Ct. 2008) ............................................................................. 14

*Stoneridge Development Co., Inc. v. Essex Ins. Co.*,
 888 N.E.2d 633 (Ill. App. Ct. 2008) ............................................................................. 10

*Utica Mut. Ins. Co. v. David Agency Ins., Inc.*,
 327 F. Supp. 2d 922 (N.D. Ill. 2004) .............................................................................. 5

*Village of Lombard v. Intergovernmental Risk Mgmnt. Agency*,
 681 N.E.2d 88 (Ill. App. Ct. 1997) ..............................................................................4-5

*Wardrip v. Hart*,
 28 F. Supp. 2d 1213 (D. Kan. 1998), *aff'd*, 198 F.3d 260 (10th Cir. 1999) ............................... 6

*Wausau Ins. Co. v. Valspar Corp.*,
 594 F. Supp. 269 (N.D. Ill. 1984) ................................................................................... 5

*Yugoslav-American Cultural Center, Inc. v. Parkway Bank & Trust Co.*,
 682 N.E.2d 401 (Ill. App. Ct. 1997) ............................................................................. 12

*Zieman Manufacturing Co. v. St. Paul Fire and Marine Ins. Co.*,
 724 F.2d 1343 (9th Cir. 1983) ....................................................................................6-7

I.  **INTRODUCTION**

Plaintiff, Kevin Fox, as assignee of certain Will County Detectives (collectively "Detectives")[1] seeks insurance coverage from American Alternative Insurance Corporation ("AAIC") for $3.4 million in punitive damages (plus interest) that a jury awarded the Plaintiff based upon the Detectives' own egregious conduct.[2] Each of the causes of action and legal theories Plaintiff asserts in his Second Amended Complaint ("Complaint") against AAIC seek to bootstrap coverage for Plaintiff's punitive damage award. But no amount of inventive pleading can obviate the punitive damages exclusion in the AAIC Policy or Illinois public policy prohibiting coverage for punitive damages based on an insured's own egregious conduct. As a result, this Court must dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted.

Plaintiff's causes of action also fail because AAIC is an excess umbrella liability insurer with no duty to defend unless and until underlying primary liability insurance exhausts, which did not happen until September 2008 – nine months *after* the underlying trial and jury verdict in favor of Plaintiff. As no Illinois court has ever placed a duty to settle upon an insurer (excess or otherwise) who did not actually control all aspects of the defense and settlement of the underlying case, this Court must dismiss Count I - the wrongful failure to settle claim. Count I also fails because AAIC cannot be held liable for any post-verdict conduct.

Count II further fails because AAIC had no duty to inform the Detectives of any potential conflict of interest as it did not control the Detectives' defense pre-verdict. Ratification has no application here, contrary to what Plaintiff contends, because the doctrine applies only between a

---

[1] Specifically, Detectives Edward Hayes, Michael Guilfoyle and Scott Swearengen.

[2] The jury awarded punitive damages based upon the Detectives' "malicious," "reckless disregard" of the plaintiff's rights.

principal and an agent. There is no allegation in Plaintiff's Complaint that St. Paul Insurance Company ("St. Paul") acted as an agent for AAIC, which it did not.

Finally, Counts IV, VI, VIII and X further fail because they are all based upon a theory of estoppel that has no application to an excess insurer like AAIC with no duty to defend. Even if the doctrine could apply, which it cannot, AAIC could not be held liable for any judgment amount or costs in excess of the limit of liability of the AAIC Policy.

For all of these reasons, and because AAIC has admittedly paid Plaintiff the $5 million limit of liability of the AAIC Policy (plus additional costs) in partial satisfaction of the underlying judgment, Plaintiff has no viable cause of action against AAIC and this Court should dismiss Plaintiff's Second Amended Complaint against AAIC.

## II. MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss, the Court "must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Speck, Jr. v. Brown*, 2010 WL 3781044 at *1 (N.D. Ill. Sept. 20, 2010).[3] The court, however, "does not need to accept as true, 'legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' Moreover, the court is not bound by a plaintiff's legal characterization of the facts or required to ignore facts set forth in the complaint that undermine a plaintiff's claim." *Bruce v. City of Chicago*, 2010 WL 3527629 at *2 (N.D. Ill. Aug. 31, 2010); *Brooks v. Ross*, 578 F.3d 574, 81 (7th Cir. 2009) ("[C]ourts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. …[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a

---

[3] AAIC makes no admissions of fact or as to the authenticity of the exhibits attached to Plaintiff's Complaint.

2

cause of action or conclusory legal statements."). If the complaint, "when viewed in a light most favorable to the plaintiff," fails to state a claim upon which relief can be granted, the court must grant the defendant's motion and dismiss the plaintiff's complaint. *Kies v. City of Aurora*, 149 F. Supp. 2d 421, 423 (N.D. Ill. 2001); *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009) (*citations omitted*) (motion to dismiss is proper where "complaint fails to include sufficient facts 'to state a claim for relief that is plausible on its face.'").

### III. FACTS ADMITTED IN PLAINTFF'S COMPLAINT

Plaintiff alleges certain facts in his Complaint that are material and serve as the basis why AAIC's Motion to Dismiss should be granted as a matter of law:

- AAIC provided excess umbrella liability insurance to Will County, (Plaintiff's Complaint ("Pl. Com.") at ¶23);
- The AAIC policy has a limit of liability of $5 million excess $1 million in underlying insurance provided by St. Paul, *Id.*;
- The AAIC policy includes an exclusion that bars coverage for punitive or exemplary damages, *Id.* at Exhibit J to Pl. Com. at WCD04374;
- On November 10, 2004, plaintiff Kevin Fox and his wife Melissa filed their complaint in this Court against Will County and the Detectives, among others, *Id.* at ¶8;
- "Throughout the pendency of the trial court action, one law firm, Lowis & Gellen," represented Will County and the Detectives regarding the Kevin and Melissa Fox Lawsuit, *Id.* at ¶10;
- On November 6, 2007, a jury trial of the Kevin and Melissa Fox lawsuit commenced before this Court, *Id.* at ¶21;
- On December 20, 2007, the jury returned a verdict in favor of Kevin and Melissa Fox in the amount of $15.5 million, which was reduced to $12.9 million, and thereafter reduced further by a partial satisfaction of judgment to $12.2 million, *Id.* at ¶11;
- Thereafter, Will County and the Defendant Detectives filed a notice of appeal of the adverse jury verdict to the Seventh Circuit Court of Appeals, *Id.* at ¶12;
- On September 25, 2008, the $1 million limit of liability of the St. Paul policy exhausted and AAIC assumed the defense of Will County and the Detectives with respect to their appeal of the adverse jury verdict, *Id.* at ¶67;

- On April 7, 2010, the Seventh Circuit Court of Appeals issued its decision affirming in part the jury verdict and awarding the plaintiff compensatory damages of $2.016 million and punitive damages of $3.4 million (Melissa Fox was awarded compensatory damages of $2.75 million), *Id.* at ¶12; and

- Thereafter, AAIC paid its policy limits of $5 million and $492,538.97 in additional costs in partial satisfaction of the judgment in favor of Kevin and Melissa Fox, *Id.* at ¶43.

## IV. ARGUMENT

### A. Plaintiff Cannot Obtain Coverage From AAIC for Plaintiff's Punitive Damage Award Under Any Cause of Action

While Plaintiff admits that punitive damages are not covered under the AAIC policy, he persists in seeking coverage for the award by concocting a number of legal theories to support the causes of action he asserts against AAIC in his Complaint. But none of the causes of action Plaintiff asserted against AAIC can stand as a matter of law.

First, as the purported assignee of the Detectives, Plaintiff has no rights against AAIC greater than those of the insured Detectives. *Cincinnati Ins. Co. v. American Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 230 (Ill. App. Ct. 2008) (*citation omitted*) ("An assignee 'can obtain no greater right or interest than that possessed by the assignor.'"). This means that if the Detectives have no right to coverage from AAIC, neither does the Plaintiff, their assignee.

Second, the AAIC policy contains an exclusion that bars coverage for the punitive damage award Plaintiff seeks coverage for here. The AAIC Policy states:

> This policy does not apply to punitive or exemplary damages; except we shall have the duty to defend any suit against the insured seeking both compensatory and punitive or exemplary damages, with respect to such insurance as is afforded by this policy, but we shall not be obligated to pay any punitive or exemplary damages.

(Pl. Com. at Ex. J, WCD04374.) Illinois courts enforce punitive damage exclusions in insurance contracts. *Village of Lombard v. Intergovernmental Risk Mgmnt. Agency*, 681 N.E.2d 88, 92 (Ill. App. Ct. 1997) (insurer's "defense obligations are explicitly stated in the …'Punitive Damages

4

Exclusion' amendments to the coverage agreement. The plain language of these amendments provides that IRMA [insurer] has no obligation to either defend or indemnify claims that seek punitive damages.").

Third, the public policy of the State of Illinois prohibits coverage for punitive damages based upon an insured's own acts and omissions. *Crawford Laboratories, Inc. v. St. Paul Ins. Co. of Ill.*, 715 N.E.2d 653, 659 (Ill. App. Ct. 1999) ("in Illinois, public policy prohibits insurance against liability for punitive damages that arise out of the misconduct of the insured"); *Beaver v. Country Mut. Ins. Co.*, 420 N.E.2d 1058, 1060 (Ill. App. Ct. 1981).[4] Illinois courts reason that "'[w]here a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct.'" *Id.* (*citations omitted*). If courts were to endorse coverage for punitive damages, the damages would not punish the wrongdoer, but rather the insurance company and ultimately the public, in the form of higher premiums. *Id.*

Although Illinois courts have not specifically addressed whether a punitive damage award is recoverable where an insurer is held liable for a judgment in excess of policy limits because of its bad faith failure to settle, the highest courts of three other jurisdictions that have addressed this issue answer the question in the negative. *See PPG Industries, Inc. v. Transamerica Ins. Co.*, 975 P.2d 652, 654 (Cal. 1999); *Lira v. Shelter Ins. Co.*, 913 P.2d 514,

---

[4] *See also Mortenson v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 249 F.3d 667, 672 (7th Cir. 2001) (*citations omitted*) ("the rule in Illinois as elsewhere that forbids certain types of insurance as being against public policy because of the acute moral hazard that the insurance creates …a rule that Illinois courts have extended to punitive damages"); *Utica Mut. Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d 922, 928-29 (N.D. Ill. 2004) ("Illinois public policy prohibits insuring against liability for punitive damages arising out of an insured's misconduct"); *American Liberty Ins. Co. v. City of Joliet*, 711 F. Supp. 455, 463 (N.D. Ill. 1989) (no potential for coverage for punitive damages claim); *Wausau Ins. Co. v. Valspar Corp.*, 594 F. Supp. 269, 273 (N.D. Ill. 1984) ("The assessment of punitive damages serves to punish a wrongdoer for his conduct and to deter similar conduct in the future. Illinois public policy prohibits insurance against such liability. As a matter of law, Wausau [insurer] would not be liable to Valspar [insured] for any punitive damages award assessed against it").

517 (Colo. 1996); *Soto v. State Farm Ins. Co.*, 635 N.E.2d 1222, 1223 (N.Y. 1994).[5] These courts based their rulings on the same principles underlying Illinois law prohibiting coverage for punitive damages.

As the New York Court of Appeals reasoned in *Soto*: "We have previously endorsed the 'fundamental principle that no one shall be permitted to take advantage of his own wrong.'" *Soto*, 635 N.E.2d at 1224 (*citations omitted*). That principle should not be vitiated because of a "separate and analytically distinct wrong on the part of the insurer. …Regardless of how egregious the insurer's conduct has been, the fact remains that any award of punitive damages that might ensue is still directly attributable to the insured's immoral and blameworthy behavior." *Id*. at 1225.

The California Supreme Court ruled the same: "there are at least three [public] policy considerations that strongly militate against allowing the insured, the morally culpable wrongdoer in the third party lawsuit, to shift to its insurance company the obligation to pay punitive damages resulting from the insured's egregious misconduct in that lawsuit." *PPG Indus., Inc.*, 957 P.2d at 656. Specifically, to allow such recovery would:

(1) violate the public policy against permitting liability for intentional wrongdoing to be offset or reduced by the negligence of another;

(2) defeat the purposes of punitive damages which are to punish the wrongdoer and deter future misconduct; and

(3) violate the public policy against indemnification for punitive damages.

*Id.* at 656-57. *See also Zieman Manufacturing Co. v. St. Paul Fire and Marine Ins. Co.*, 724

---

[5] *Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1505 (10th Cir. 1994) ("potential exposure to uninsurable punitive damages does not present the same type of concerns as the conflict of interest that arises from potential exposure to an excess judgment."); *Wardrip v. Hart,* 28 F. Supp. 2d 1213, 1215-16 (D. Kan. 1998), *aff'd*, 198 F.3d 260 (10th Cir. 1999) (*citations omitted*) ("In Kansas, exemplary damages are awarded to punish and deter. Public policy requires that payment of punitive damages 'rest ultimately as well as nominally on the party who committed the wrong; otherwise, they would often serve no useful purpose.' The goal of imposing punitive damages is to 'make the culprit feel the pecuniary punch, not his guiltless guarantor.'").

6

F.2d 1343, 1346 (9th Cir. 1983) ("The proposition that an insurer must settle …an action in which punitive damages are sought is nothing short of absurd. The practical effect of such a rule would be to pass on to the insurer the burden of punitive damages in clear violation of California statutes and public policy."); *Lira,* 913 P.2d at 518 (rejecting the insured's argument that failure to permit coverage for punitive damage awards would allow insurers "to act in bad faith with impunity," the court reasoned, "[i]nsurance companies failing to settle in bad faith will still be subject to liability for damages arising from [its own] breach").

The reasoning of the *PPG, Lira* and *Soto* courts applies equally here because the courts' holdings were based upon the respective State's public policy prohibiting coverage for punitive damages based on an insured's own egregious conduct. Consistent with that policy, an insured should not be allowed to "back door" coverage by asserting a wrongful failure to settle claim against an insurer. This Court should not permit Plaintiff to circumvent Illinois' long established law against coverage for punitive damages and instead must dismiss Plaintiff's Complaint against AAIC.

> **B.      Count I - Breach of Contract Wrongful Failure to Settle - Further Fails Because AAIC Did Not Provide a Defense to the Detectives Pre-Verdict**

In addition to the fact that Count I - the wrongful failure to settle claim - seeks coverage for Plaintiff's punitive damage award, the claim further fails because: (1) AAIC did not provide a defense for the Detectives pre-verdict; and (2) any post-verdict rejection of a settlement demand is not actionable under Illinois law.

> **1.      No Illinois Court has Ever Placed a Duty to Settle Upon an Insurer Who Did Not Actually Control All Aspects of the Defense and Settlement of the Underlying Litigation**

In *Liberty Mut. Ins. Co. v. American Home Assur. Co.*, 348 F. Supp. 2d 940, 963 (N.D. Ill. 2004)*,* the court determined whether an excess liability insurer that allegedly had "exclusive

7

control" over settlement negotiations pre-verdict could be sued for bad faith wrongful failure to settle.[6] Finding that no Illinois court had ever placed such a duty on an insurer (excess or otherwise) that did not actually control the defense of the underlying case, the court refused to "stretch the duty to settle to apply in a situation where the insurer had anything less than complete control." *Id.* To hold otherwise, the court reasoned, would be contrary to the very purpose of imposing the duty on a primary liability insurer in the first instance - because the insured had "relinquished defense of the suit" to the primary insurer; "leaving the insured to depend upon the insurer to conduct the defense properly." *Id. See also Haddick ex rel. Griffith v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001) (*citations omitted*) ("[T]he basis for the duty to settle is the insurer's exclusive control over settlement negotiations and defense of litigation.").

The *Liberty Mutual* court noted that a claim for "wrongful refusal to settle" generally arises where the primary liability insurer has contracted to conduct the defense of the case. *Liberty Mutual*, 348 F. Supp. 2d at 963. Because the primary insurer has "conducted all of the discovery and has itself prepared for trial, the [primary] insurer is in the best position to determine whether the case will involve excess liability. The insured depends upon that [primary] insurer, and that insurer only, to conduct reasonable settlement negotiations." *Id.* Therefore, "from a policy standpoint, if the law allows a duty to be placed upon an excess insurer once it becomes involved in settlement negotiations, an excess insurer may refuse to voluntarily assist the primary insurer in settlement." *Id.* This would be wholly inconsistent with the goal to

---

[6] *See also Iowa Physicians' Clinic Medical Found. v. Physicians Ins. Co. of Wisconsin*, 547 F.3d 810, 813 (7th Cir. 2008) (*citations omitted*) ("duty to settle is predicated on the 'insurer's exclusive control over settlement negotiations and defense of litigation.'"); *Central Illinois Public Service Co. v. Agricultural Ins. Co.*, 880 N.E.2d 1172, 1178-79 (Ill. App. Ct. 2008) (citing *Liberty Mutual,* "the direct duty imposed on a primary insurer in *Schal Bovis, Inc*. (*citation omitted*) was derived from the primary insurer's control of the litigation, and that duty should not be extended to an excess insurer who did not have any control in the litigation. …The categorization of an insurer as primary or excess is based on when coverage is triggered, which in turn affects the control of the litigation, and not vice versa.").

8

"promote settlement;" instead, the "goal should be to …ensure that excess insurers take part in settlement negotiations even when under no contractual duty to do so." *Id.*

Plaintiff admits that AAIC did not provide a defense for the Detectives until 9 months post-verdict, after the $1 million limit of liability of the St. Paul policy exhausted. (Pl. Com. ¶67.) This is consistent with Illinois law. *First Specialty Ins. Corp. v. Continental Cas. Co.*, 2003 WL 1220238 at *5 (N.D. Ill. March 14, 2003) ("The protections and duty under an excess insurance policy do not begin until those of the primary insurance end.").[7] While Plaintiff alleges AAIC had control over settlement negotiations pre-verdict, he does not allege that AAIC was providing the Detectives with a defense at that time. As a result, any bad faith wrongful failure to settle claim Plaintiff wishes to assert must be directed against the primary liability insurer, St. Paul, that provided the defense for the Detectives pre-verdict.[8]

### 2. Any Bad Faith Wrongful Failure to Settle Can Occur "Only Up to the Time Any Excess Judgment is Entered Against the Insured"

Just as AAIC has no liability exposure based upon its participation in settlement negotiations pre-verdict, it likewise has no liability exposure for settlement communications after the excess verdict was awarded against the Detectives. Illinois law holds that a bad faith wrongful failure to settle can occur "only *up to the time any excess judgment is entered* against the insured." *Chandler v. American Fire and Cas. Co.*, 879 N.E.2d 396, 400 (Ill. App. Ct. 2007). This is because a bad faith failure to settle claim "arose from cases involving a policyholder, a

---

[7] *See also Kajima Constr. Services, Inc. v. St. Paul Fire and Marine Ins. Co.*, 856 N.E.2d 452, 459 (Ill. App. Ct. 2006), *aff'd*, 879 N.E.2d 305 (Ill. 2007) ("an umbrella policy is unique in that it always remains excess over and above other contracts with few exceptions and thus could not be activated until all primary coverage is exhausted."); *Home Indem. Co. v. General Accident Ins. Co. of Am.*, 572 N.E.2d 962, 963 (Ill. App. Ct. 1991) (*citations omitted*) ("protections under the excess policy do not begin until those of the primary policy end. Thus, a primary insurer has the primary duty to defend and pay defense costs.").

[8] Plaintiff alleged in his original complaint directed against St. Paul that St. Paul selected counsel for the Detectives, not AAIC, and that St. Paul controlled the Detectives' defense. (Plaintiff's original complaint ¶¶19, 21, 41, 70, 72, 74.)

liability insurer, and a third party. In the usual circumstances, the insurer has assumed the policyholder's defense under the policy." *Id*. at 400. Once again, it is the insurer that controls the defense of the insured that is determinative. This is because, as the *Liberty Mutual* concluded, the insured has "relinquished defense of the suit" to the primary insurer; "leaving the insured to depend upon the insurer to conduct the defense properly." *Liberty Mutual*, 348 F. Supp. 2d at 963. Because AAIC admittedly did not assume the Detectives' defense until post-verdict and the Detectives' liability exposure for the excess verdict had been established, Plaintiff cannot base its claim on post-verdict acts and omissions.

      C.      **Count II - Breach of Contract Defending When a Conflict of Interest Exists - Further Fails Because AAIC Was Not the "Defending Insurer" Pre-Verdict and Had no Duty to Advise the Detectives of Any Potential Conflict-of Interest**

Count II, like all of the counts in Plaintiff's Complaint, should be dismissed because it seeks coverage for Plaintiff's punitive damage award. Count II further fails because the count is based upon a faulty premise: AAIC did not defend or control the Detectives' defense pre-verdict and, as a result, AAIC had no duty to advise the Detectives of any potential conflict-of interest.

AAIC is the Detectives' excess umbrella liability insurer. Unlike a primary liability insurer, an "excess carrier typically has no right to select counsel or direct counsel's actions, and in many cases will have no active involvement in the ongoing litigation until such time as it appears that the excess policy coverage might be implicated." *National Union Ins. Co. v. Dowd & Dowd, P.C.*, 2 F. Supp. 2d 1013, 1018 (N.D. Ill. 1998). Because there is no direct relationship between the excess insurer and defense counsel retained to defend the insured, there is no attorney-client relationship.[9] *Id.* The excess insurer is not part of the tripartite relationship

---

[9] *See also Stoneridge Development Co., Inc. v. Essex Ins. Co.*, 888 N.E.2d 633, 644 (Ill. App. Ct. 2008) ("attorney retained by the insurer to represent the insured has ethical obligations to both parties"); *Mobil Oil Corp. v. Maryland*
*Continued...*

10

between the attorney, the insured and the insurer who retains the attorney. *Id.*

Plaintiff admits that "[t]hroughout the pendency of the trial court action, one law firm, Lowis &Gellen," represented Will County and the Detectives. (Pl. Com. ¶10.) Plaintiff does not allege that any insurer other than St. Paul paid Lowis & Gellen's fees pre-verdict. Because AAIC was not defending the Detectives, it was not in the position to control communications regarding conflict of interest. Illinois law holds that a conflict of interest arises between a *defending* insurer and its insured when the "insurer-retained counsel would have the opportunity to shift facts in a way that takes the case outside the scope of policy coverage," *see American Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 498 (Ill. App. Ct. 2006), or where the "interest of the insurer would be furthered by providing a less than vigorous defense." *See Nandorf, Inc. v. CNA Ins. Cos.*, 479 N.E.2d 988, 992 (Ill. App. Ct. 1985).

Before a conflict can arise, however, there must be a duty to defend and the insurer must actually be providing a defense for the insured. *See Economy Fire & Cas. Co. v. Brumfield*, 894 N.E.2d 421, 427 (Ill. App. Ct. 2008) (where insurer "was not defending or controlling [insured's] interests, [insurer] did not have any actual conflicts of interest."); *Illinois Masonic Med. Ctr. v. Turegum Ins. Co.*, 522 N.E.2d 611, 617 (Ill. App. Ct. 1988) (conflict of interest arose between *defending* insurer and insured).

Evidently Plaintiff recognizes this flaw in his Complaint because he alleges further that AAIC somehow "ratified" St. Paul's purported failure to disclose a conflict of interest. (Pl. Com. ¶¶54-56.) But ratification applies only between a principal and an agent. "Where an agent

---

*Cas. Co.*, 681 N.E.2d 552, 561 (Ill. App. Ct. 1997) ("The attorney hired by the insurer is a fiduciary of both the insurer and the insured"); *Cincinnati Cos. v. West Am. Ins. Co.*, 679 N.E.2d 91, 96 (Ill. App. Ct. 1997) ("An attorney retained by the insurer represents both the insurer and the insured."); *Nandorf, Inc. v. CNA Ins. Cos.*, 479 N.E.2d 988, 991 (Ill. App. Ct. 1985) ("attorney hired by the insurance company to defend in an action against the insured owes fiduciary duties to two clients: the insurer and the insured.").

has acted outside the scope of his or her authority, a principal may ratify the unauthorized act." *Athanas v. City of Lake Forest*, 657 N.E.2d 1031, 1037 (Ill. App. Ct. 1995). "The principle behind the doctrine of ratification is that the person ratifying secures a benefit through the actions of another who is acting on his behalf with apparent or implied authority." *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 280 (Ill. 2004). "If there is no benefit, ratification will not be implied." *Id.* In addition, ratification will not be implied where the principal did not have full knowledge of the agent's actions. *See Yugoslav-American Cultural Center, Inc. v. Parkway Bank & Trust Co.*, 682 N.E.2d 401, 408-09 (Ill. App. Ct. 1997); *Jones v. Beker*, 632 N.E.2d 273, 277 (Ill. App. Ct. 1994). Plaintiff does not allege any agency relationship between St. Paul and AAIC that in fact did not exist.

Moreover, it is not sufficient to allege that AAIC knew that Lowis & Gellen was defending multiple defendants. Plaintiff alleges that AAIC "ratified the Lowis & Gellen letter (Exhibit F) which misinformed the Defendant Detectives of their obligation to pay for independent counsel," but he does not allege that AAIC had any knowledge of the letter. (Pl. Com. ¶133.) Plaintiff fails to allege AAIC knew St. Paul had improperly communicated any conflict of interest to the Detectives.

Plaintiff further fails to allege that AAIC benefitted from St. Paul's alleged failure to disclose or from the conflict of interest. In sum, Plaintiff fails to allege any of the fundamental elements of ratification, and as a result any causes of action based in whole or in part upon that theory must be dismissed.[10]

---

[10] Plaintiff liberally sprinkles Counts VI and VII of his Complaint with allegations of "ratification" (Pl. Com. ¶¶114, 128, 131, 161), yet once again he does not allege any facts to support ratification. There is no allegation of a principal-agent relationship, nor any allegation that AAIC somehow benefitted from the alleged misdeeds of St. Paul or Lowis & Gellen.

### D. Counts IV, VI, VIII and X - Duty to Indemnify Based upon Estoppel Further Fail Because Estoppel Has No Application Against AAIC, an Excess Umbrella Insurer

Plaintiff alleges that AAIC is estopped from asserting any coverage defense - - *i.e.* the punitive damages exclusion - - because: (1) AAIC acted in bad-faith when it failed to notify the Detectives of the "punitive damages conflict" (Count IV); (2) AAIC ratified the defense of the Detectives without an effective reservation of rights (Count VI); and (3) Lowis & Gellen's failure to disclose any conflict of interest is imputed to AAIC (Count VIII); (4) AAIC failed to issue an effective reservation of rights (Count X). First, as previously discussed, Illinois public policy prohibits coverage for punitive damages in this case, which is unaffected by any act or omission of AAIC. Further, estoppel applies only where an insurer has a duty to defend and the insurer breached that duty as to the insured. AAIC had no duty to defend the Detectives pre-verdict and under Illinois law cannot be estopped from asserting coverage defenses.

Illinois law holds generally that estoppel cannot create coverage where none otherwise exists. *Ismie Mut. Ins. Co. v. Michaelis Jackson & Associates, LLC*, 921 N.E.2d 1156, 1166 (Ill. App. Ct. 2009) ("Estoppel cannot be utilized in order to create coverage if none existed otherwise."). An exception exists where a primary liability insurer wrongfully failed to defend the insured and did not timely seek a declaration from the court on the duty to defend. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999) ("estoppel doctrine applies only where an insurer has breached its duty to defend"). Under those circumstances, a primary liability insurer can be held estopped from asserting any coverage defenses. *Id.*

Finding waiver and estoppel inapplicable as against an excess insurer, the court in *North River Ins. Co. v. Grinnell Mut. Reinsurance Co.*, 860 N.E.2d 460, 467 (Ill. App. Ct. 2006) (*citations omitted*), reasoned: "'It is the duty to defend that gives rise to the duty to reserve

13

rights when defense of a claim is undertaken, and without such a duty an insurer has no obligation to issue a reservation of rights letter.'" Because an excess liability insurer "has no duty to investigate coverage issues or to defend its insured" the excess insurer "will not be estopped from later asserting coverage defenses by a failure to issue a reservation of rights letter." *Id. See also Employers Ins. of Wausau,* 708 N.E.2d at 1135 (estoppel not applicable where no duty to defend); *State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co. of Chicago*, 899 N.E.2d 408, 416 (Ill. App. Ct. 2008) (same); *First Specialty Ins. Corp.*, 2003 WL 1220238 at * 4-6 (same).

AAIC had no attorney-client relationship with the Detectives or Lowis & Gellen pre-verdict, no duty to defend the Detectives, and no obligation to issue a reservation of rights. *See International Ins. Co. v. Sargent & Lundy*, 609 N.E.2d 842, 855 (Ill. App. Ct. 1993) ("It is the duty to defend which gives rise to the duty to reserve rights when defense of a claim is undertaken, and without such a duty an insurer has no obligation to issue a reservation of rights letter."); *North River*, 860 N.E.2d at 467 (citing *Sargent & Lundy*, "An excess insurer that has no duty to investigate coverage issues or to defend its insured will not be estopped from later asserting coverage defenses by a failure to issue a reservation of rights letter."). Thus, the estoppel doctrine has no potential application to AAIC.

Even if an estoppel theory could apply, which it cannot, AAIC would have no obligation to pay Plaintiff any amount in excess of the limits of liability of the AAIC Policy. Illinois law holds that a primary liability insurer estopped from asserting coverage defenses is liable to the insured only up to the limits of liability of the primary liability policy. *See Associated Indem. Co. v. Insurance Co. of N. America*, 386 N.E.2d 529, 541 (Ill. App. Ct. 1979) (insurer liable under estoppel theory "up to the limits of its insurance policy."); *Peerless Enterprise, Inc. v.*

14

*Kruse*, 738 N.E.2d 988, 1001 (Ill. App. Ct. 2000) (*citations omitted*) ("the measure of damages" for wrongful failure to defend is "'the amount of the judgment against its insured up to the policy limits unless the insurer was guilty of negligence, fraud or bad faith'"). AAIC previously paid Plaintiff its policy limits of $5 million (and $492,538.97 in additional costs); therefore, Plaintiff has no cause of action against AAIC for any remaining judgment amounts.

**V.  CONCLUSION**

Each of the causes of action Plaintiff asserts in his Second Amended Complaint must be dismissed because they are based upon a punitive damage award, coverage for which is barred by the public policy of the State of Illinois and an explicit policy exclusion. Plaintiff's causes of action against AAIC further fail because AAIC, an excess umbrella insurer, did not assume the Detectives' defense until nine months after the excess jury verdict. AAIC admittedly has exhausted the limit of liability of the AAIC policy and therefore owes no further sums to its insureds or the Plaintiff, their assignee. For the reasons set forth herein and in its motion to dismiss, AAIC asks this Court to dismiss Plaintiff's Second Amended Complaint in its entirety.

        Respectfully submitted,

Date:  January 12, 2011        AMERICAN ALTERNATIVE INSURANCE CORPORATION


        By:  /s/Robert J. Bates, Jr.
            One of its Attorneys

Robert J. Bates, Jr.
Mary F. Licari
Bates Carey Nicolaides LLP
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
(312) 762-3100
Firm Id:  47554

371266_1.DOC