IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN FOX & MELISSA FOX,<br><br>    Plaintiffs,<br><br>v.<br><br>FORMER WILL COUNTY STATE'S ATTORNEY<br>JEFFREY TOMCZAK, *et al.*<br><br>    Defendants.<br>_____<br><br>WILL COUNTY,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>ESSEX INSURANCE COMPANY, a Delaware,<br>corporation, AMERICAN ALTERNATIVE<br>INSURANCE CORPORATION, a Delaware<br>corporation, and ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY, a Minnesota corporation,<br><br>    Third-Party Defendants. | Case No. 04-C-7309<br><br>Hon. John W. Darrah |

**THIRD-PARTY DEFENDANT
ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S
ANSWER AND AFFIRMATIVE DEFENSES TO THIRD-PARTY PLAINTIFF
WILL COUNTY'S AMENDED THIRD-PARTY COMPLAINT**

NOW COMES Third-Party Defendant, ST. PAUL FIRE AND MARINE INSURANCE COMPANY ("St. Paul"), by and through its attorneys, KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC, and for its Answer and Affirmative Defenses to Third-Party Plaintiff WILL COUNTY's (the "County") Amended Third-Party Complaint, states as follows:

## PARTIES

1. The County is a municipal corporation organized and existing under the laws of Illinois. All executive level officers direct, control and coordinate the County's activities from within Will County, Illinois. As a result, the County is a citizen of Illinois.

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 1.

2. Essex is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 4521 Highwoods Parkway, Glen Allen, Virginia. On information and belief; all Essex executive level officers direct, control and coordinate the company's activities from Glen Allen, Virginia. As a result, Essex is a citizen of Delaware and Virginia.

**ANSWER:** St. Paul has insufficient information to admit or deny the allegations of Paragraph 2 and, therefore, denies them.

3. AAIC is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 555 College Road East, Princeton, New Jersey. On information and belief, all AAIC executive level officers direct, control and coordinate the company's activities from Princeton, New Jersey. As a result, AAIC is a citizen of Delaware and New Jersey.

**ANSWER:** St. Paul has insufficient information to admit or deny the allegations of Paragraph 3 and, therefore, denies them.

4. St. Paul is a corporation organized and existing under the laws of Minnesota, with its principal place of business at 385 Washington St., St. Paul, Minnesota. On information and belief, all St. Paul executive level officers direct, control and coordinate the company's activities from St. Paul, Minnesota. As a result, St. Paul is a citizen of Minnesota.

**ANSWER:** Paragraph 4 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 4.

## JURISDICTION AND VENUE

5. There is complete diversity of citizenship between the County and each of the Third-Party Defendants.

**ANSWER:** The allegations of Paragraph 5 constitute a legal conclusion to which no answer is required, and none is made.

6. The amount in controversy is a minimum of $1,860,166.80 and therefore exceeds the jurisdictional threshold of $75,000.

**ANSWER:** The allegations of Paragraph 6 constitute a legal conclusion to which no answer is required, and none is made.

7. This Court has diversity jurisdiction over the present action pursuant to 28 U.S.C. §1332, and jurisdiction to render a declaratory judgment pursuant to 28 U.S.C. §2201.

**ANSWER:** The allegations of Paragraph 7 constitute a legal conclusion to which no answer is required, and none is made.

8. Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. §13 91(a)( 1) or (2). Each of the Third-Party Defendants transacts business and is subject to personal jurisdiction in the Northern District of Illinois, and as such is a resident of this District. Alternatively, all Third-Party Defendants do not reside in the same State, and as such, venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER:** The allegations of Paragraph 8 constitute a legal conclusion to which no answer is required, and none is made.

## BACKGROUND ALLEGATIONS

9. Plaintiffs originally filed this action on November 10, 2004, alleging claims against Will County and the individual detective defendants arising under 42 U.S.C. §1983. Plaintiff's claims related to law enforcement activities conducted by the Defendants in connection with the investigation and arrest of Plaintiff Kevin Fox. Plaintiffs alleged that the Defendants committed various wrongful and tortious acts in the conduct of law enforcement activities, and alleged violations of Mr. Fox's civil rights.

3

**ANSWER:** Upon information and belief, St. Paul admits that on November 10, 2004, the Foxes filed an action in the United States District Court for the Northern District of Illinois, Case No. 04C7309, against Will County, certain individual detectives and others, alleging the defendants committed various tortious acts in the course of the investigation and arrest of Kevin Fox in connection with the abduction and murder of his daughter, Riley Fox (the "Underlying Action"). Except as expressly admitted, St. Paul has insufficient information to admit or deny the remaining allegations of Paragraph 9 and, therefore, denies them.

10. On December 20, 2007, pursuant to a jury verdict, judgment was entered in this matter in favor of the Plaintiffs Kevin Fox and Melissa Fox for $15,500,000. The total award of damages to Plaintiff Kevin Fox was $9,300,000. The total award of damages to Melissa Fox was $6,200,000.

**ANSWER:** The allegations of Paragraph 10 constitute a legal conclusion to which no answer is required, and none is made. To the extent an answer is required, St. Paul admits that, upon information and belief, a verdict was rendered in favor of Kevin and Melissa Fox and a punitive damages award was made to Kevin and Melissa Fox against certain individual defendant detectives. Except as expressly admitted, St. Paul denies the remaining allegations of Paragraph 10.

11. On motions after the verdict, the Court struck all punitive damages awarded to Melissa Fox, at which point the total award in her favor was reduced to $3,700,000. The Court also struck the jury's award of $100,000 against Defendant Wachtl in favor of Kevin Fox, resulting in the remaining total award to him of $9,200,000.

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 11.

4

12. On September 16, 2008, this Court entered an order approving the settlement of claims against Defendant Estate of John Ruettiger and in favor of both Plaintiffs. As a result, the total outstanding award to the Plaintiffs at that time was $8,500,000 to Plaintiff Kevin Fox and $3,600,000 to Plaintiff Melissa Fox.

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 12.

13. On October 28, 2008, Defendants filed a timely notice of appeal of the judgment.

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 13.

14. On April 7, 2010, the Seventh Circuit affirmed in part and reversed and vacated in part this Court's judgment. Plaintiffs accepted remittiturs pursuant to the Seventh Circuit's opinion.

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 14.

15. Consistent with the Seventh Circuit's opinion, the total damages to Kevin Fox are as follows:

    Compensatory Damages:    $2,016,000.00
    Punitive Damages:    $3,400,000.00

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 15.

16. Consistent with the Seventh Circuit's opinion, the total damages to Melissa Fox are as follows:

    Compensatory Damages:    $2,750,000.00

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 16.

17. The award of punitive damages is only against the individual Defendants, not the County itself. Plaintiffs signed releases of their claims of punitive damages against the individual Defendants, in exchange for an assignment of any claims the individual Defendants may have against the insurance carriers at issue for bad faith. As a result Plaintiffs no longer retain, any claim for punitive damages against the Defendants.

**ANSWER:** St. Paul has insufficient information to admit or deny the allegations of Paragraph 17 and, therefore, denies them.

18. On June 18, 2010, Plaintiffs filed a motion to enforce judgment against Will County. The motion sought both the judgment amounts as well as various amounts related to attorneys' fees, costs, and interest. In total, Plaintiffs sought $11,411,087.67.

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 18.

19. On July 1, 2010, the Court entered an agreed order as to partial judgment, based on the agreement of the parties, which was reached after full consultation and approval of the County's insurance carriers, as follows:

> Compensatory Damages to Kevin Fox:
> $2,016,000.00
> Compensatory Damages to Melissa Fox:
> $2,750,000.00
> Post Judgment Interest on the compensatory damages:
> $392,669.58
> District Court costs:
> $82,908.01
> Post Judgment interest on the District Court costs:
> $3,433.19
> Appellate Court Costs:
> $233.10
> Attorneys' fees through June 8, 2008:
> $1,500,000.00
> Post Judgment Interest on Attorneys Fees through June 8, 2008:
> $99,636.87

**ANSWER:** Upon information and belief, St. Paul admits that on July 1, 2010, the Court entered an agreed order as to partial judgment in the aforementioned amount. Except as expressly admitted, St. Paul denies the remaining allegations of Paragraph 19.

20. On September 2, 2010 the Court entered an agreed order for Attorney's Fees and Related Non-Taxable Expenses for Kevin Fox's Attorney's Fees in the amount of $507,824.60 for the time period between June 8, 2008 through April 7, 2010.

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 20.

21. The total amount of the agreed partial judgment for the above items is $7,352,705.35.

**ANSWER:** Upon information and belief, St. Paul admits the allegations of Paragraph 21.

22. The remaining amounts on which Plaintiff seeks to enter judgment are still in dispute and the parties are preparing briefs as to those issues.

**ANSWER:** Upon information and belief, St. Paul denies the allegations of Paragraph 22.

## THE POLICIES

23. The County purchased a follow form multiple line policy of insurance from St. Paul, with an effective date of December 1, 2003, St. Paul Fire and Marine Insurance Company Policy No. GP06301134 ("St. Paul Policy"). The St. Paul policy includes Law Enforcement Liability ("~LEL") coverage, with a policy limit of $1,000,000. A copy of the St. Paul Policy is attached as Exhibit A.

**ANSWER:** St. Paul admits that the County purchased a policy of insurance from St. Paul with an effective date of December 1, 2003, Policy No. GP06301134 (the "St. Paul Policy"). The St. Paul Policy includes Law Enforcement Liability ("LEL") coverage, with a

policy limit of $1,000,000, which is a writing and speaks for itself. A copy of the St. Paul Policy appears to be attached as Exhibit A.

24. The County purchased a follow form Commercial Umbrella Liability Policy from AAIC, effective December 1, 2003, American Alternative Insurance Corporation Policy No. 60A2UB00004490 ("AAIC Policy"), with a policy limit of $5,000,000. A copy of the AAIC Policy is attached as Exhibit B. The AAIC policy provides excess coverage for LEL losses in excess of the amount covered by the underlying St. Paul Policy.

**ANSWER:** St. Paul has insufficient information to admit or deny the allegations of Paragraph 24 and, therefore, denies them.

25. The County purchased a follow form Excess Liability Policy from Essex, effective December 1, 2003, Essex Insurance Company Policy No. XO-NJ-1822-03 ("Essex Policy"), with a policy limit of $5,000,000. A copy of the Essex Policy is attached as Exhibit C. The Essex Policy provides coverage for LEL losses in excess of the amount covered by the AAIC Policy and the St. Paul Policy.

**ANSWER:** St. Paul has insufficient information to admit or deny the allegations of Paragraph 25 and, therefore, denies them.

26. The County paid several hundred thousand dollars in premiums in consideration for the above policies, and has fully complied with all conditions and obligations on its part to be performed under those policies.

**ANSWER:** Paragraph 26 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 26 directed toward it.

27. The St. Paul Policy, the AAIC Policy and the Essex Policy are all valid and binding contracts.

**ANSWER:** Paragraph 27 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 27 directed toward it.

28. Each of the policies listed above provides full coverage for the damages, fees, costs and expenses incurred in the underlying case and the judgment against the County.

**ANSWER:** Paragraph 28 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 28 directed toward it.

29. The St. Paul Policy is a primary underlying coverage. St. Paul has taken the position that it has paid out the full amount of its policy limits in partial satisfaction of the judgment amounts.

**ANSWER:** Paragraph 29 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul admits that it has satisfied its obligations as a result of its payment of its policy limits to settle the Fox's claims against certain defendants. Except as expressly admitted, St. Paul denies the remaining allegations contained in Paragraph 29 directed toward it.

30. The AAIC Policy of the first level of excess liability coverage. AAIC has tendered $5,492,539.55 (in excess of its policy limits) in partial satisfaction of the judgment. AAIC has taken the position that its policy limits are now exhausted (more than exhausted) and that as a result, Essex is liable for the remaining judgment amounts.

**ANSWER:** The allegations of Paragraph 30 are not directed to St. Paul, and thus, St. Paul makes no answer to them.

31. The Essex Policy is a second level excess liability policy, which coverage is triggered when the loss exceeds the coverage under the AAIC Policy and St. Paul Policy. Essex has failed and refused to pay any amounts under its policy, arguing that either one of the other carriers is required to pay the remaining amounts, or the County is required to pay those amounts, despite having purchased insurance for this very purpose and having paid a premium of $150,000 for such coverage.

**ANSWER:** The allegations of Paragraph 31 are not directed to St. Paul, and thus, St. Paul makes no answer to them.

32. Will County purchased insurance policies with combined policy limits of $11,000,000, well in excess of the amount of the judgment. Such insurance is more than adequate to make the Plaintiffs whole immediately without any further delay to them, Will County believes that based on those policies, one or more of the insurance carriers is liable to pay the full judgment to the Plaintiffs and should do so without any further delay.

**ANSWER:** Paragraph 32 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 32 directed toward it.

33. Will County has been communicating with the insurance carriers for over five months seeking to obtain payment and coverage of the judgment amounts in this case. Will County has made every reasonable effort available to it to secure the rights it purchased in the policies and secure prompt payment for the Plaintiffs. Notwithstanding those efforts, Essex has failed and refused to pay so much as one dollar of the $5,000,000 policy limit and failed to provide the County with any benefit from the policy it purchased for which it paid $150,000 of taxpayer money.

**ANSWER:** St. Paul denies the allegations contained in Paragraph 33 directed toward it.

34. The other two insurance carriers, having already paid more than their respective policy limits, are not surprisingly declining to pay anything further or to step in and pay the amount Essex is refusing to pay. The County is mindful and appreciates that those carriers have paid their policy limits, but to the extent that there is any dispute, as Essex claims, which carrier remains obligated to pay, Will County seeks to add all carriers as defendants. Regardless of which policy ultimately provides coverage for the remaining amounts, one fact that is abundantly clear. The County itself, having purchased three separate follow form insurance policies with limits far in excess of the judgment, should not be left without protection and exposed to liability. The Plaintiffs must be paid immediately and the County firmly agrees. But that payment can, and by contractual right must, come from the insurance carriers from whom the County purchased the policies.

**ANSWER:** Paragraph 34 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 34 directed toward it.

## COUNT I
### (Breach of Contract against Essex)

35. The County restates and re-alleges the allegations in Paragraphs 1-33 [sic] as if fully set forth herein.

**ANSWER:** St. Paul incorporates by reference its responses to Paragraphs 1-34 as and for Paragraph 35 hereof as if fully set forth herein.

36. Essex has breached the Essex Policy in that it has failed and refused to provide coverage for covered losses incurred by the County.

**ANSWER:** Paragraph 36 contains a legal conclusion to which no answer is required and none is made. Further responding, the allegations of Paragraph 36 are not directed to St. Paul, and thus, St. Paul makes no answer to them. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 36 directed toward it.

37. As a result of this breach, the County has been or will be damaged in an amount in excess of $1,860,166.80.

**ANSWER:** Paragraph 37 contains a legal conclusion to which no answer is required and none is made. Further responding, the allegations of Paragraph 37 are not directed to St. Paul, and thus, St. Paul makes no answer to them. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 37 directed toward it.

## COUNT II
### (Wrongful Refusal to Pay Claim)

38. The County restates and re-alleges the allegations in Paragraphs 1-36 [sic] as if fully set forth herein.

**ANSWER:** St. Paul incorporates by reference its responses to Paragraphs 1-37 as and for Paragraph 38 hereof as if fully set forth herein.

11

39. At all times mentioned herein, there existed in the State of Illinois a statute commonly referred to as 215 ILCS 5/155 that provided as follows:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
> (b) $60,000;
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155.

**ANSWER:** Paragraph 39 contains a legal conclusion to which no answer is required and none is made. Further responding, the allegations of Paragraph 39 are not directed to St. Paul, and thus, St. Paul makes no answer to them. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 39 directed toward it.

40. Essex violated the above statute in that Essex failed and refused to comply with its requirements to pay amounts incurred by the County and covered by the Essex Policy, and notice demand and being afforded multiple opportunities to do so.

**ANSWER:** Paragraph 40 contains a legal conclusion to which no answer is required and none is made. Further responding, the allegations of Paragraph 40 are not directed to St. Paul, and thus, St. Paul makes no answer to them. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 40 directed toward it.

41. Essex has no reasonable basis upon which to deny coverage and has not articulated any reasonable basis for its failure to pay.

**ANSWER:** Paragraph 41 contains a legal conclusion to which no answer is required and none is made. Further responding, the allegations of Paragraph 41 are not directed to St. Paul, and thus, St. Paul makes no answer to them. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 41 directed toward it.

42. Essex's failures and refusal set forth in Paragraph 39 was vexatious and without reasonable cause. At all relevant times Essex has known that the judgment amounts, costs, and attorneys' fees awarded in this case have well exceeded the underlying policy limits of the St. Paul Policy and AAIC Policy. Essex seeks to avoid having to provide the benefit of the policy that the County purchased and has opted to exercise its financial leverage to seek imposing the remaining judgment amounts either on AAIC, or forcing the County to bear the expense of those judgment amounts itself. Essex therefore has sought to cause direct damage and harm to the County for the purpose of securing for itself a pecuniary gain and windfall to which it is not entitled.

**ANSWER:** Paragraph 42 contains a legal conclusion to which no answer is required and none is made. Further responding, the allegations of Paragraph 42 are not directed to St. Paul, and thus, St. Paul makes no answer to them. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 42 directed toward it.

### COUNT III
### (In the Alternative Declaratory Judgment against All Third-Party Defendants)

43. The County restates and re-alleges the allegations in Paragraphs 1-42 as if fully set forth herein.

**ANSWER:** St. Paul incorporates by reference its responses to Paragraphs 1-42 as and for Paragraph 43 hereof as if fully set forth herein.

44. There is presently a live and active dispute whether Essex is liable to pay the amounts of the judgment in the underlying case, or whether, as Essex maintains, either AAIC, St. Paul or the County are liable to pay such amounts.

**ANSWER:** Paragraph 44 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 44 directed toward it.

45. AAIC and St. Paul deny that they are liable to pay any remaining amounts.

**ANSWER:** St. Paul admits the allegations contained in Paragraph 45 directed toward it.

46. The County denies that it is liable to pay any remaining amounts because all amounts are covered by insurance policies, the combined policy limits of which are more than adequate to pay all judgment amounts to the Plaintiffs.

**ANSWER:** Paragraph 46 contains a legal conclusion to which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 46 directed toward it.

## PRAYER FOR RELIEF

WHEREFORE, Defendant, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, prays for judgment:

(a) declaring that St. Paul has no further obligations under the St. Paul Policy to the County;

(b) dismissing the County's claims against St. Paul with prejudice; and

(c) providing such other and further relief as the Court may deem appropriate.

## AFFIRMATIVE DEFENSES

NOW COMES Third-Party Defendant, ST. PAUL FIRE AND MARINE INSURANCE COMPANY ("St. Paul"), and for its Affirmative Defenses to Third-Party Plaintiff WILL COUNTY's (the "County") Amended Third-Party Complaint (hereinafter, "Amended Complaint"), states as follows:

### FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim against St. Paul upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a justiciable controversy between the County and St. Paul.

### THIRD AFFIRMATIVE DEFENSE

Some or all of the instant claims against St. Paul may be barred by the doctrines of laches, unclean hands, waiver, estoppel, res judicata, collateral estoppel, judicial estoppel, and/or issue preclusion.

### FOURTH AFFIRMATIVE DEFENSE

St. Paul has satisfied all of its duties and obligations to its insureds under the St. Paul Policy with respect to the Underlying Lawsuit because St. Paul exhausted its limits of liability by settlement payments and paid all of the claim expenses for which it was responsible.

### FIFTH AFFIRMATIVE DEFENSE

The Release and Assignment given by the Foxes preclude any claims for punitive damages by the County.

### SIXTH AFFIRMATIVE DEFENSE

All of the amounts sought by the County were awarded against the County to the Foxes after the St. Paul Policy was exhausted.

### SEVENTH AFFIRMATIVE DEFENSE

Some or all of the instant claims presented by the Amended Complaint have previously been released and are therefore barred.

### EIGHTH AFFIRMATIVE DEFENSE

To the extent that any obligation claimed to be the responsibility of St. Paul was undertaken without St. Paul's consent, those claims are barred.

### NINTH AFFIRMATIVE DEFENSE

St. Paul reserves the right to raise additional affirmative defenses as are warranted by the facts and the law.

### PRAYER FOR RELIEF

WHEREFORE, Defendant, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, prays for judgment:

(a)  declaring that St. Paul has no further obligations under the St. Paul Policy to the County;

(b)  dismissing the County's claims against St. Paul with prejudice; and

(c)  providing such other and further relief as the Court may deem appropriate.

Dated: May 10, 2011

                                  Respectfully submitted,

                                  ST. PAUL FIRE AND MARINE INSURANCE COMPANY

                                  By: /s: Rory T. Dunne
                                      One of Its Attorneys

Rory T. Dunne
Linda J. Carwile
Karbal, Cohen, Economou, Silk & Dunne, LLC
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Tel: (312) 431-3700
Fax: (312) 431-3670
Firm No. 38100