UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN FOX and MELISSA FOX, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 04 C 7309 |
| WILL COUNTY; EDWARD HAYES; ) | |
| MICHAEL GUILFOYLE; ) | Judge John W. Darrah |
| SCOTT SWEARENGEN; ) | |
| JOHN RUETTIGER; BRAD WACHTL; ) | |
| DAVID DOBROSWKI; and ) | |
| UNKNOWN POLYGRAPH ) | |
| EXAMINER, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| WILL COUNTY, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ESSEX INSURANCE CO.; AMERICAN ) | |
| ALTERNATIVE INSURANCE CORP.; ) | |
| and ST. PAUL FIRE & MARINE ) | |
| INSURANCE CO., ) | |
| ) | |
| Third-Party Defendants. ) | |
| ) | |
| KEVIN FOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ESSEX INSURANCE CO.; AMERICAN ) | |
| ALTERNATIVE INSURANCE CORP.; ) | |
| and ST. PAUL FIRE & MARINE ) | |
| INSURANCE CO., ) | |
| ) | |
| Third-Party Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kevin Fox ("Fox"), has filed a Second Amended Complaint against Third-Party Defendant American Alternative Insurance Corporation's ("AAIC"). Before the Court is AAIC's Motion to Dismiss Fox's Second Amended Complaint.

## BACKGROUND

The factual and procedural history of this case has been recited at length at various stages of litigation since 2004.[1] Following a jury verdict in favor of Melissa and Kevin Fox, this Court's order amending the judgment amounts, and the Court of Appeal's decision further amending the judgment amounts, the damages award in the Foxes' favor has been finalized. What remains before the Court is a dispute between Kevin Fox and AAIC regarding payment of the punitive damages award. The following facts are drawn from the lengthy record in this Court as well as from Fox's Second Amended Complaint against AAIC, which are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

Fox and his wife, Melissa Fox, originally filed this action on November 14, 2004, alleging claims against Will County, detectives employed by Will County (the "Detectives"), and other parties not named in this action, pursuant to 42 U.S.C. § 1983 (the "Fox Litigation"). The Foxes' claims related to law enforcement activities

---

[1] *See Fox, et al. v. Will Cnty., et al.*, No. 04-7309, 2005 WL 991901, *1 (N.D. Ill. Apr. 13, 2005); *Fox, et al. v. Will Cnty., et al.*, No. 04-7309, 2005 WL 1323327, *1 (N.D. Ill. May 26, 2005); *Fox, et al. v. Tomczak, et al.*, No. 04-7309, 2006 WL 1157466, *1 (N.D. Ill. Apr. 26, 2006); and *Fox, et al. v. Will Cnty., et al.*, No. 04-7309, 2009 WL 723385, *1 (N.D. Ill. Mar. 11, 2009).

conducted by the Detectives in connection with the investigation, arrest, and prosecution of Fox, ending in October 2004. (*Id.*) The Foxes alleged that the Detectives committed various and wrongful tortuous acts in the conduct of law enforcement activities and alleged violations of Fox's civil rights.

In 2002, Will County purchased a multiple-line policy of insurance from St. Paul, with an effective date of December 1, 2003. The St. Paul policy includes Law Enforcement Liability ("LEL") coverage, with a policy limit of $1,000,000. For excess umbrella coverage, Will County purchased a Commercial Umbrella Liability Policy from AAIC, effective December 1, 2003 (the "AAIC Policy"), with an excess policy limit of $5,000,000. The AAIC policy provides excess coverage for LEL losses in excess of the amount covered by the underlying St. Paul Policy. As a third layer of coverage, Will County purchased an excess Liability Policy from Essex, effective December 1, 2003 (the "Essex Policy"), with an excess policy limit of $5,000,000. The Essex Policy provides coverage for LEL losses in excess of the amount covered by the AAIC Policy.

The Fox Litigation was stayed until it was reinstated on June 28, 2005, when Fox was released from jail and the charges against him *nolle prosequi*. To his Second Amended Complaint, Fox has attached various reservation of rights letters that were sent by St. Paul, AAIC, and Essex to Will County and/or the Detectives.

On November 8, 2005, St. Paul sent the Foxes a letter, stating:

> As a matter of public policy and under the insurance policy . . . punitive damages are not covered. St. Paul Fire & Marine Insurance Company specifically denies coverage, to the extent allowed by the applicable State law, for punitive damages under the above-mentioned insurance coverage.

(Sec. Am. Compl., Ex. C.)

3

On May 17, 2006, AAIC sent a reservation-of-rights letter to Will County, outlining the AAIC Policy, including the provision excluding punitive damages, and stating, "AAIC has determined that it has no present obligation to the County and other potential 'Insureds' in connection with the Fox lawsuit." (Sec. Am. Compl., Ex. D.)

On October 9, 2006, Essex sent a reservation-of-rights letter to Will County, stating: "The punitive damages exclusion endorsement precludes coverage for punitive and exemplary damages. To the extent there is an award of punitive damages and/or exemplary damages, Essex reserves the right to decline coverage for those damages." (Sec. Am. Compl., Ex. E.)

During the pendency of the trial action, St. Paul retained one law firm, Lowis & Gellen, to represent Will County and each of the Detectives. On October 13, 2006, Lowis & Gellen sent a reservation-of-rights letter to each of the Detectives, stating:

> The purpose of this letter is to once again inform you neither Will County's insurer nor Will County will indemnify you if punitive damages are awarded against you in the [Fox Litigation]. This means that if a jury awards Kevin or Melissa Fox or both with punitive damages, you alone are responsible to pay those damages. . . . We want to advise you that you could retain an attorney of your own choosing and at your own expense if you are concerned about an award of punitive damages.

(Sec. Am. Compl., Ex. F.)

On May 29, 2007, St. Paul filed a motion to intervene (which was granted), stating:

> [St. Paul] insures all defendants in this action. As the insurer, [St. Paul] will be bound to pay any judgment entered in this case against the defendants. In addition, there can be no settlement of this case without the financial participation of [St. Paul]. As the insurer, [St. Paul] is bound to provide competent defense to the defendants and to act in accord with

4

their best interests.

(Dkt. No. 130 at 1.) Before the trial commenced in November 2007, the Foxes made a demand to the insurance companies, but the case did not settle. (Sec. Am. Compl. at 6.) Before the verdict, the Foxes again made an unsuccessful demand to the insurance companies. (*Id.*) On December 20, 2007, the jury reached a verdict and judgment was entered in favor of Kevin and Melissa Fox for $15.5 million. The total award of damages to Fox was $9.3 million on his claims of due process, false arrest, malicious prosecution, and intentional infliction of emotional distress. Of this award, $3.7 million was for punitive damages. The total award of damages to Melissa Fox was $6.2 million on her claims of loss of consortium and intentional infliction of emotional distress. Of this award, $2.5 million was for punitive damages. After the verdict, the Foxes made another demand to the insurance companies, which was rejected. (*Id.* at 6.) On March 12, 2008, Detectives Michael Guilfoyle, Scott Swearengen, and Edward Hayes assigned their rights against Will County and its insurance companies to the Foxes. (*Id.*, Ex. 1.)

On September 25, 2008, on motions after verdict, this Court struck all of the punitive damages awarded to Melissa Fox and $100,000 of Kevin Fox's punitive damages (those assessed against Detective Brad Wachtl). This Court entered judgment, reducing the total damages award to $12.9 million. After a partial satisfaction of the judgment, the damages award was reduced to $12.2 million.

On September 25, 2008, St. Paul paid its policy limit of $1 million to the Foxes. (Sec. Am. Compl. at 6.) AAIC has paid $5,492,538.97 to the Foxes, thereby exhausting its policy. (*Id.* ¶ 43.) AAIC also paid an additional $492,538.97, above the AAIC policy

5

limit, to the Foxes in satisfaction of the judgment. (*Id.*) Essex has not paid any amount to the Foxes.

On January 30, 2009, AAIC and Essex filed a motion to intervene in the Seventh Circuit, pursuant to Fed. R. Civ. P. 24(a), to challenge the punitive damages award. This motion was granted, and on March 10, 2009, AAIC and Essex filed a joint brief on the issue of punitive damages. On April 7, 2010, the Seventh Circuit issued a decision in which it ordered a remittitur, reducing the damages award to $8,166,000 million. On April 14, 2010, the Foxes accepted the Remitturs and the judgment was modified to a sum of $8,166,000. (Dkt. No. 851.)

On February 23, 2011, Fox entered into an Agreed Order, conceding that the entire judgment for compensatory damages has been satisfied and the only remaining judgment was the punitive damages award. (Dkt. No. 968.)

*Fox's Third-Party Complaints*

In the fall of 2010, Fox commenced third-party actions against St. Paul, AAIC, and Essex. On October 8, 2010, Fox filed a Complaint for Declaratory Judgment and Relief against St. Paul, seeking coverage for the punitive damages award. (Dkt. No. 912.) St. Paul filed an answer to this Complaint on May 10, 2011. (Dkt. No. 987.) On December 8, 2010, Fox, as the assignee of Defendant Detectives Guilfoyle, Swearengen, and Hayes, filed a First Amended Complaint against AAIC and Essex, for payment of the punitive damages award. (Dkt. No. 930.) On December 21, 2010, Fox filed a Second

Amended Complaint against AAIC and Essex, which AAIC has presently moved to dismiss. (Dkt. No. 943.)[2]

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible

---

[2] On May 9, 2011, Fox and Essex entered into a Stipulation and Notice of Dismissal of the Second Amended Complaint, in which the parties stipulated, "Essex is not liable for any of the punitive damages awarded to Kevin Fox against the Detectives under any theory of recovery and that Essex did not act in bad faith in relation to the County in connection with this matter." (Dkt. No. 985.) This Court entered an Order dismissing Essex from the lawsuit with prejudice on May 11, 2011. (Dkt. No. 991.)

claim for relief depends on the complexity of the legal theory alleged.

*Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

Exhibits attached to the Complaint are considered "part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004). The "well-settled rule" is that "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations."
*N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

The parties do not dispute that the substantive law of Illinois governs this lawsuit based on diversity jurisdiction. *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 531-32 (7th Cir. 2009).

## ANALYSIS

AAIC argues that the Second Amended Complaint must be dismissed because the AAIC Policy expressly bars the recovery of punitive damages. (Mot. at 4.) Fox does not contest that the AAIC Policy expressly bars recovery for punitive damages. In relevant part, the AAIC Policy states:

> This policy does not apply to punitive or exemplary damages; except we shall have the duty to defend any suit against the insured seeking both compensatory and punitive or exemplary damages, with respect to such insurance as is afforded by this policy, but we shall not be obligated to pay any punitive or exemplary damages.

(Sec. Am. Compl., Ex. J, WCD04374.) Illinois public policy prohibits the coverage of punitive damages based upon an insured's own acts and omissions. *Mortensenon v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 249 F.3d 667, 672 (7th Cir. 2001) ("[T]he rule in Illinois . . . forbids certain types of insurance as being against public policy

because of the acute moral hazard that insurance creates . . . a rule that Illinois has extended to punitive damages."); *Crawford Labs., Inc. v. St. Paul Ins. Co. of Ill.*, 715 N.E.2d 653, 659 (Ill. App. Ct. 1999) ("[I]n Illinois, public policy prohibits insurance against liability for punitive damages that arise out of the misconduct of the insured.").

Fox concedes that "this is generally the rule" but argues it does not apply to instances of bad faith or where the insurer failed to perform its duty to defend. (Resp. at 5 (citing *Employer Ins. of Wausau v. Echo Liquidating Trust*, 708 N.E.2d 1122, 1136 (1999) (*Wausau*)).) Here, Fox argues that AAIC is estopped from arguing that punitive damages are barred by contract because AAIC acted in bad faith. Specifically, Fox argues that AAIC breached the policy by: wrongfully failing to settle (Count I) and wrongfully defending the litigation when a conflict of interest existed (Count II). Fox also brings equitable claims against AAIC based on estoppel.

*Count I*

In Count I, Fox alleges that AAIC breached the AAIC Policy because it did not accept a settlement offer within the policy limits and requests punitive damages. As discussed above, Fox does not contest that the AAIC Policy expressly bars punitive damages. Fox's claim fails for another reason: AAIC did not have control of the defense of the Fox Litigation and, therefore, did not have a duty to defend the Fox Litigation. In Illinois, an insurer's duty to settle in good faith on behalf of its insured arises from the covenant of good faith and fair dealing implied in an insurance contract. *See Haddick v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001) (*Haddick*); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996). Importantly, "the basis for the duty to settle is predicated on the insurer's **exclusive control** over settlement negotiations and defense of litigation."

9

*Haddick*, 763 N.E.2d at 303 (emphasis added); *see also Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1179 (7th Cir. 1994) (noting that in Illinois, the duty to settle is "an implied correlative" of the insurer's control over the defense).

Before the verdict, Fox argues that AAIC obtained exclusive control of the defense of the Fox Litigation when St. Paul, the primary insurer, "tendered" its policy limits to AAIC in October 2007. Fox does not dispute that before October 2007, St. Paul had exclusive control over the Fox Litigation defense and, therefore, had a duty to defend. Therefore, the question is whether St. Paul's tendering of its policy in October 2007 dissolved its duty to defend and thereby triggered AAIC's duty to defend and impliedly, AAIC's duty to settle.

Illinois courts have held that a primary insurer cannot tender policy limits to excess insurers in order to relieve its duty to defend litigation. As the Illinois Supreme Court noted in *Conway v. Country Cas. Ins. Co.* 442 N.E.2d 245 (Ill. 1982) (*Conway*), the "duty to defend and the duty to indemnify are separate and distinct" and the "former duty is broader than the latter." *Id.* at 247. In *Conway*, the court held, "[S]ince the insurer's duty to defend its insured is not dependent upon a duty to indemnify, but arises from the undertaking to defend stated in the policy, an insurer's payment to its policy limits, without more, does not excuse it from its duty to defend." *Id.*

In *Bituminous Cas. Corp. v. Iowa Nat'l Mut. Ins. Co.*, 477 N.E.2d 694 (Ill. App. Ct. 1985), a primary insurer assumed the defense of an action against the insured when the action was filed. As litigation continued, the excess insurer took the lead in the defense. Subsequently, the primary insurer tendered its policy limit to the excess insurer towards settlement of the claim. When the excess insurer refused the tender, the primary

10

insurer, brought a declaratory action against the excess insurer requesting that the court enter an order declaring that the excess insurer is obligated to assume the responsibility of defending the lawsuit. *Id.* at 697. Based on the language of the insurer's policies, the court held that the primary insurer could not extinguish its duty to defend by tendering its policy:

> The duty undertaken by Bituminous [primary insurer] is simple and straightforward. The obligations to 'defend any proceedings . . . pay all expenses incurred by the company . . .' and 'reimburse the insured for all reasonable expenses' are in no way made less absolute by the existence of other insurance. The attempt to call on Iowa National [excess insurer] to defend under the terms of its policy is ineffective, even assuming the benefits of Bituminous to be 'exhausted' by the tender of policy limits to Iowa National. Iowa National's duty to defend runs only to Pelco. As far as Bituminous is concerned, its duty to defend is no different than if there were no excess insurance policy at all.

*Id.* at 698.

Here, the language of the AAIC Policy dictates the same conclusion. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The AAIC Policy states that AAIC "will assume charge of the settlement or defense" of any claim or suit against the insured when:

> 1. the aggregate limit of Liability of **the applicable Scheduled Underlying Policy has been exhausted by payment of claims**; or
>
> 2. damages are sought for bodily injury, personal injury, property damage, or advertising injury covered by this policy and to which no underlying Insurance or other insurance applies.

(Sec. Am. Compl., Ex. J at 12 (emphasis added).) Pursuant to the AAIC Policy's Schedule of Underlying Insurance, the St. Paul Policy is listed as a scheduled underlying policy. When St. Paul "tendered" its policy to AAIC, it was not in "payment of claims." To the contrary, in October 2007, there was no settlement agreement or judgment. As

11

Fox's Second Amended Complaint alleges, St. Paul did not actually exhaust its policy limit until September 25, 2008, when St. Paul paid Fox the $1 million policy limit in satisfaction of the judgment. (*Id.* at 6.)

Consistent with the AAIC Policy, Illinois courts hold that an excess insurer's duty to defend attaches only after underlying insurance exhausts payment of covered settlements or judgments. *See Royal Ins. Co. v. Process Design Assocs., Inc.*, 582 N.E.2d 1234, 1242 (Ill. App. Ct. 1991) (holding that liability for an excess insurer "attaches only after a predetermined amount of primary coverage has been exhausted."); *see also Kajima Constr. Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 879 N.E.2d 305, 313 (Ill. 2007) (same). St. Paul did not extinguish its duty to defend by tendering its policy. Thus, it also follows that AAIC did not have a duty to defend when St. Paul tendered its policy to AAIC.

With respect to AAIC's duties post-verdict, Fox argues that AAIC had a duty to settle this case on appeal. Fox contends that in a post-verdict settlement conference, AAIC made no attempt to settle the case and instead AAIC intervened and filed a brief solely challenging the punitive damages award. Fox, again, does not cite a single case in support of his argument. As discussed above, because St. Paul did not exhaust its policy until September 2008 – after the Seventh Circuit decided the appeal – AAIC had no duty to settle the case pursuant to the AAIC Policy. Therefore, AAIC's Motion to Dismiss Count I is granted.

*Count II*

In Count II, Fox alleges that AAIC breached the AAIC Policy because it failed to disclose a conflict of interest to the Defendant Detectives. (*See* Sec. Am. Compl. ¶¶ 66.)

12

Specifically, Fox argues that a conflict of interest arose when one law firm, Lowis & Gellen, jointly represented Will County and all the Detectives because it was in the interest of Will County and the insurance companies, to the detriment of the Detectives, to obtain a low compensatory damages award and a high punitive damages award. (*Id.* ¶ 52.) And, that a conflict of interest was present in representing the Defendants who potentially had antagonistic defense among them. AAIC argues that because it did not control the defense of the Fox Litigation, it did not have any duty to disclose an alleged conflict of interest.

Under Illinois law, a potential conflict of interest exists when there is a duty to defend. In *Economy Fire & Cas. Co. v. Brumfield*, 894 N.E.2d 421 (Ill. App. Ct. 2008), the court held that where an insurer was not defending or controlling the insured's interests, it "did not have any actual conflicts of interest." *Id.* at 427. Fox has not presented any cases in which a court held otherwise. As set forth above, because AAIC did not control the defense of the Fox Litigation, AAIC did not have a duty to disclose conflicts of interest, to the extent any existed.

Fox's reliance on *R.C. Wegman Constr. Co. v. Admiral Ins. Co.*, 629 F.3d 724 (7th Cir. 2011), *pet. for reh'g den.* (*Wegman*), ignores the well-established hierarchy between primary and excess insurers discussed above. *See Aetna Cas. & Sur. Co. v. Chicago Ins. Co.*, 994 F.2d 1254, 1258 (7th Cir. 1993) (applying Illinois law) ("all other [primary] insurance policies must be exhausted before umbrella policies will provide coverage"). *Wegman* is apposite, Fox argues, because the Seventh Circuit held that a potential conflict of interest arose when it became known that there was a likelihood that a settlement or verdict could exceed the insurer's policy. (Supp. Resp. at 3.) Fox argues

13

that the "relevant policy limit here is the AAIC Policy limit, as the primary insurer, St. Paul, tendered its policy limits to AAIC on 10/1/07." (*Id.*) As set forth above, AAIC did not become the primary insurer when St. Paul tendered its policy limit to AAIC. Therefore, Fox's reliance on *Wegman* is misplaced.

Fox's allegation that AAIC "ratified the conflicts by failing to inform the individual Defendant Detectives of these conflicts" does not save his claim. (Sec. Am. Compl. ¶¶ 53-43.) As a matter of law, ratification applies between a principal and an agent. *See Anetsberger v. Metro. Life Ins. Co.*, 14 F.3d 1226, 1234 (7th Cir. 1994). Fox sets forth no facts that give rise to an agency relationship between St. Paul and AAIC. AAIC's Motion to Dismiss Count II is granted.

*Counts IV, VI, VIII, and X*

Fox's remaining counts against AAIC (Counts IV, VI, VIII, and X) are based on estoppel. Fox alleges that AAIC is estopped from arguing that the punitive damages exclusion applies based on AAIC's purported bad-faith conduct. As the Illinois Supreme Court held, the "estoppel doctrine applies only where an insurer has breached its duty to defend." *Wausau*, 708 N.E.2d at 1135; *see also Clemmons v. Travelers*, 430 N.E.2d 1104, 1107-1109 (Ill. 1981) (determining first that the insurer had a duty to defend, and then finding that the insurer had renounced that duty). Thus it follows that "application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered." *Wausau*, 708 N.E.2d at 1135. As discussed above, AAIC did not have a duty to defend the Fox Litigation. Therefore, Fox's remaining counts, which all derive from the estoppel doctrine, are dismissed.

14

## CONCLUSION

AAIC's Motion to Dismiss [953] is granted. Fox's Complaint is dismissed in its entirety.

Date: August 31, 2015

JOHN W. DARRAH
United States District Court Judge