UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN FOX and MELISSA FOX, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 04 C 7309 |
| WILL COUNTY; EDWARD HAYES; ) | |
| MICHAEL GUILFOYLE; ) | Judge John W. Darrah |
| SCOTT SWEARENGEN; ) | |
| JOHN RUETTIGER; BRAD WACHTL; ) | |
| DAVID DOBROSWKI; and ) | |
| UNKNOWN POLYGRAPH ) | |
| EXAMINER, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| WILL COUNTY, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ESSEX INSURANCE CO.; AMERICAN ) | |
| ALTERNATIVE INSURANCE CORP.; ) | |
| and ST. PAUL FIRE & MARINE ) | |
| INSURANCE CO., ) | |
| ) | |
| Third-Party Defendants. ) | |
| ) | |
| KEVIN FOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ESSEX INSURANCE CO.; AMERICAN ) | |
| ALTERNATIVE INSURANCE CORP.; ) | |
| and ST. PAUL FIRE & MARINE ) | |
| INSURANCE CO., ) | |
| ) | |
| Third-Party Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Third-Party, Will County, has filed a Second Amended Third-Party Complaint against Third-Party Defendant Essex Insurance Company ("Essex"). (Dkt. No. 1002.) Before the Court is Essex's Motion to Strike Certain Portions of the Second Amended Third-Party Complaint Filed by Will County. Essex seeks to strike the "Nature of the Claim" section, paragraphs 10-15, 47, and 76-81, and Exhibits D-I and R.

## BACKGROUND

The factual and procedural history of this case has been recited at length at various stages of litigation since 2004, most recently in this Court's Memorandum Opinion and Order dated August 31, 2011.[1] In short, following a jury verdict in favor of Melissa and Kevin Fox, this Court's order amending the judgment amounts, and the Court of Appeal's decision further amending the judgment amounts, the damages award in the Foxes' favor was finalized. On February 23, 2011, after Will County paid the remaining balance of attorney's fees, costs, and interests, the Foxes and Defendants entered into an Agreed Order, stating that there was a full and complete satisfaction for compensatory damages, related attorney's fees, costs, and interest for all Defendants. (Dkt. No. 968.)

During the relevant period of the underlying litigation, Will County had Law Enforcement Liability insurance coverage with Essex (the "Essex Policy"),

---

[1] See *Fox, et al. v. Will Cnty., et al.*, No. 04-7309, 2005 WL 991901, *1 (N.D. Ill. Apr. 13, 2005); *Fox, et al. v. Will Cnty., et al.*, No. 04-7309, 2005 WL 1323327, *1 (N.D. Ill. May 26, 2005); *Fox, et al. v. Tomczak, et al.*, No. 04-7309, 2006 WL 1157466, *1 (N.D. Ill. Apr. 26, 2006); and *Fox, et al. v. Will Cnty., et al.*, No. 04-7309, 2009 WL 723385, *1 (N.D. Ill. Mar. 11, 2009); and most recently, *Fox, et al. v. Will Cnty., et al.*, No. 04-7309, 2011 WL 3876591, *1 (N.D. Ill. Aug. 31, 2011).

2

American Alternative Insurance Corporation ("AAIC"), and St. Paul Fire and Marine Insurance Company ("St. Paul"). Following the February 23, 2011 satisfaction of judgment, St. Paul and AAIC exhausted their policy limits and tendered certain settlement amounts to Will County.

The instant dispute concerns Will County's Second Amended Complaint against Essex for reimbursement of the remaining portion of the judgment amount paid by Will County. In Count I of its Second Amended Complaint, Will County brings a claim for breach of contract, in which it argues that Essex breached its obligations to Will County under the Essex Policy by refusing to provide coverage for the covered losses incurred by Will County. (*See* SAC ¶¶ 38-51.) In Count II, Will County alternatively seeks a declaratory judgment against Essex, AAIC, and St. Paul, declaring that Essex is now liable as a secondary insurer. (*See id.* ¶¶ 52-69.) In Count III, Will County asserts a claim of wrongful bad-faith refusal to pay against Essex. (*See id.* ¶¶ 70-86.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), on a motion made prior to a responsive pleading, the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike allegedly immaterial matter generally are disfavored. *See Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007). Motions to strike are appropriate, however, if they serve to expedite litigation. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir .1989); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be

3

stricken if matter bears no possible relation to controversy). District courts have considerable discretion to strike allegations under Rule 12(f). *See Delta*, 554 F.3d at 1141-42. "The party moving to strike has the burden of showing that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003) (citation and internal quotation omitted).

## ANALYSIS

Essex first moves to "strike" Will County's preliminary portion of its Second Amended Complaint, titled, "Nature of the Claim," arguing that it does not comply with Federal Rules of Civil Procedure 8(a)[2] and 10(b). In the "Nature of the Claim" section, Will County provides an overview of its case as is common practice when filing complaints.

Rule 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 8(d), "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 10(b) states: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Essex argues that the "Nature of the Claim" section fails to comply with these rules because "it does not involve 'short and plain' statements, 'simple, concise, and

---

[2] Essex's citation to Rule 8(b) is presumably intended to be a citation to Rule 8(a), which governs pleadings, rather than Rule 8(b), which governs responses to pleadings.

direct' allegations, or a set of numbered paragraphs addressing a 'single set of circumstances' in each paragraph." (Mot. at 2.) Essex also argues that the allegations in the "Nature of the Claim" section are redundant of allegations elsewhere in the Second Amended Complaint.

Essex's argument – which essentially consists of a recitation of the Federal Rule – is not persuasive. "The primary purpose of [Rule 8] is rooted in fair notice: Under Rule 8, a complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994) (quotation omitted). Will County's "Nature of the Claim" section provides Essex with fair notice of its claims and complies with the requirements of Rule 8(a).

Nor has Essex shown that Will County has failed to comply with Rule 10(b). Although the "Nature of the Claim" section is not stated in "numbered paragraphs," Will County's "claims," which are encompassed in the remainder of its Second Amended Complaint, are stated in numbered paragraphs. *See* Fed. R. Civ. P. 10(b).

Nor has Essex shown that Will County's allegations should be stricken pursuant to Rule 12(f). Essex argues that Will County's "Nature of the Claim" section is "prejudicial to Essex, because it represents a virtual 'mini-brief' by the County's counsel, which Essex cannot appropriately respond to without disregarding rules of procedure." (Resp. at 8.) Essex's conclusory, vague arguments are unavailing.

Essex fails to explain precisely specifically why Will County's allegations are unduly prejudicial. *See Davis v. Ruby Foods*, 269 F.3d 818, 821 (7th Cir. 2001) ("We also take this opportunity to advise defense counsel against moving to strike extraneous

matter unless its presence in the complaint is actually prejudicial to the defense. Such motions are what give 'motion practice' a deservedly bad name."). Furthermore, as Essex's Answer to Will County's Second Amended Complaint demonstrates, Essex *is* able to respond to Will County's "Nature of the Claim" section by simply denying the allegations. (*See* Dkt. No. 1007.) Accordingly, Essex's Motion to strike Will County's "Nature of the Claim" section is denied. *See Porter v. U.S. Dept. of Army*, No. 93 C 6900, 1995 WL 461898, at *5 (N.D. Ill. July 17, 1995) (noting that "courts have viewed Rule 12(f) motions with disfavor" and that such "motions are considered 'time wasters' because they require courts to edit complaints.") (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1380, 1382 (1990)).

Second, Essex moves to strike Will County's references to statements made during "confidential settlement discussions" under Federal Rule of Evidence 408, which provides:

> *Evidence* of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> **(1)** furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or statements made in compromise negotiations regarding the claim.

Fed. R. Evid. 408(a) (emphasis added).[3] Neither party has cited any cases addressing whether this rule of evidence may properly be raised in a motion to strike allegations in a

---

[3] Amendments to Rule 408 take effect December 1, 2011. As Essex's Motion was filed before the amendments take effect, the Court will consider Rule 408 as it existed at the time Essex filed its Motion.

6

complaint. Some courts have held that it does not. *See, e.g., BPI Energy, Inc. v. IEC (Montgomery), LLC*, No. 07-186-DRH, 2007 WL 3355363, at *1 (S.D. Ill. Nov. 13, 2007) ("The Second Amended Complaint is not evidence; rather, it sets forth allegations. Therefore, on its face, Rule 408 is not applicable at this juncture."); *Bishops Bay Founders Grp., Inc. v. Bishops Bay Apartments, LLC*, 301 F. Supp. 2d 901 (W.D. Wis. 2003) (holding "[a]s to the Rule 408 argument . . . defendant may renew its objection if and when plaintiff attempts to use the letter as evidence."). Other courts, however, have granted motions to strike based on Rule 408 "where a contrary conclusion would undermine the Rule's purpose of encouraging settlement negotiations." *Fidelity Nat'l Title Co. v. Law Title Ins. Co.*, No. 04 C 6382, 2005 WL 1126899 at *6 (N.D. Ill. May 3, 2005) (*Fidelity*); *Trading Techn. Intern., Inc. v. BCG Partners, Inc.*, No.10 C 715, 2011 WL 3946581, at *2 (N.D. Ill. Sept. 2, 2011). Allowing parties to include references to settlement discussions in complaints, however, undermines the primary policy reason behind Rule 408, which is that "the law favors out-of-court settlements, and allowing offers of compromise to be used as admissions of liability might chill voluntary efforts at dispute resolution." *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 689 (7th Cir. 2005).

Rule 408 "does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a) [such as] proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). To establish that Rule 408 applies to a particular communication, a defendant must make a "substantial showing" that it was, in fact, "part

of a settlement attempt." *Raybestos Prod. Co. v. Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995).

The "settlement discussions" at issue involve communications between Will County and Essex, following the Seventh Circuit's decision on June 18, 2010, affirming in part and modifying this Court's entry of judgment. Subsequently, the Foxes filed a motion to enforce judgment and included a request to enforce certain prior awards of attorney's fees, costs, interest, and other damages against Will County ("Judgment Motion"). (Dkt. No. 855.) In response, Will County and Essex engaged in discussions to achieve a settlement agreement with the Foxes regarding these costs.

On June 23, 2010, Kevin Clancy (counsel to Will County) sent an email to counsel for Essex and AAIC, suggesting that the parties meet and confer regarding a potential settlement with the Foxes and that there would be "substantial advantage to agreeing to the $1.5 million" in attorney's fees.[4] (Sec. Am. Compl. ¶ 10.) The next day, Clancy circulated to Essex's and AAIC's counsel a draft response to Will County's Judgment Motion, setting forth "the amounts that we do not contest," which included, among other things, "Attorney's fees through June 8, 2008, in the amount of $1,500,000.00." (*Id.* ¶ 12.)

On June 25, 2010, Essex's counsel, Michelle Valencie, sent an email to Will County's counsel, stating, "Looks fine." (*Id.* ¶ 13.) Later on June 25, 2010, Valencie sent a letter to AAIC's and St. Paul's counsel, denying responsibility for any attorney's fees or post-judgment interest awarded to the Foxes on the basis that AAIC and St. Paul

---

[4] In its Answer, Essex concedes that it received or sent the email communications referred to by Will County in its Second Amended Third-Party Complaint.

were obligated to cover these amounts outside of their policy limits. (*Id.* ¶ 14.) On June 28, 2010, Clancy sent an e-mail to AAIC's and Essex's counsel, explaining that he discussed the "agreed numbers" with the Foxes' counsel and submitted an agreed order on these items. (*Id.* ¶ 15 (these communications will collectively be referred to as the "Challenged Communications").)

In *Fidelity*, a court in this district considered a motion to strike a letter attached to the complaint as an exhibit, asserting that the letter was a settlement offer and fell within Rule 408. 2005 WL 1126899, at *5-7. The court asked three questions: (1) whether the letter was written in an effort to settle the parties' dispute; (2) whether the plaintiff wanted to use the letter to establish the defendant's liability; and (3) whether the letter concerned liability that the defendant had otherwise admitted. *Id.*

Will County first argues that the Challenged Communications do not relate to settlement discussions because there was no actual, live disputed claim between Will County and Essex at the time Essex's statements were made. *See Prudential Ins. Co. of America v. Curt Bullock Builders, Inc.*, 626 F. Supp. 159, 164 (N.D. Ill. 1985) (noting that for Rule 408 to apply, "claim must actually be in dispute at the time of negotiations, and the conduct or statement must relate to that claim.") Will County argues that although it was in settlement negotiations with the Foxes, there was no live controversy with Essex regarding the payment of attorney's fees as these discussions occurred before Will County first filed its complaint for declaratory relief on August 18, 2010.

Courts have found that "an actual dispute existed sufficient to invoke Rule 408 even though the parties had not yet asserted their claims." *Davis v. Rowe*, No. 91 C 2254,

9

1993 WL 34867, at *2 (N.D. Ill. Feb. 10, 1993). The Foxes' Judgment Motion raised issues as to what amounts Will County and the insurance companies were liable. By virtue of Will County's and Essex's insured-insurer relationship, discussions involving for which amounts an insured and insurer are liable appear to give rise to an "inherently adversarial" relationship, even though a live disputed claim was not yet present. *See id.* ("The relationship between a claimant and its insurer is inherently adversarial and can generally be assumed to be clothed in continual negotiation and conciliation efforts."). Therefore, the references to discussions between Will County and Essex (and the other insurance companies) may qualify as "comprise negotiations" sufficient to trigger Rule 408.

Will County next argues that the Challenged Communications fall within the exception to Rule 408 because they are offered for an ulterior purpose – namely, to show Essex acted in bad faith in failing to refuse to pay the contested portions of the Judgment Amount and that Essex consented to entry of the settlement paid to the Foxes.[5]

Will County includes references to the Challenged Communications at paragraphs 10-15, 47, and 76-81 of the Second Amended Third-Party Complaint. Paragraphs 76-81 are located in Will County's claim, titled, "Wrongful Refusal to Pay – Bad Faith," in which Will County alleges that Essex violated 215 ILCS 5/155 by vexatiously and unreasonably delaying settlement of a claim. The Supreme Court of Illinois has explained that this statute, while not the exclusive remedy for tortious conduct by an insurer, essentially substitutes for a separate tort of "bad faith." *See Cramer v. Ins. Exch.*

---

[5] In so arguing, Will County also attempts to argue the merits of its case regarding Essex's alleged bad faith. A response to a motion to strike is not an appropriate method for these arguments, and Will County's arguments in this respect are not considered here.

10

*Agency*, 675 N.E.2d 897, 904 (Ill. 1996). Will County's claim under Section 155 is based on allegations of Essex's bad faith that date back to 2006 and include the Challenged Communications at issue. As such, Essex's argument that Will County does *not* allege that Essex committed bad faith in the course of settlement negotiations or in failing to settle the underlying *Fox v. Will County, et al.* action is clearly unavailing.

At this early stage of litigation, the references at paragraphs 76-81 may fall within the exception to Rule 408 because they are the basis – as Will County itself states – of Will County's Section 155 claim, which is premised on Essex's alleged bad-faith conduct. In other words, Will County is *not* offering the Challenged Communications to prove that Essex is liable for the contested judgment amounts. Furthermore, the references to the Challenged Communications elsewhere in the Second Amended Third-Party Complaint – at paragraphs 10-15, 47 – may also fall within the exception to Rule 408 as they provide the background to Will County's Section 155 claim in Count III.

However, this ruling does not prevent Essex from raising a Rule 408 objection to the Challenged Communications at the appropriate stage of this litigation. Here, it appears that the Challenged Communications have been properly pled.

## CONCLUSION

Essex's Motion to Strike Certain Portions of the Second Amended Third-Party Complaint Filed by Will County [1005, 1006] is denied.

Date: 12-7-11

JOHN W. DARRAH
United States District Court Judge

11