UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN FOX and MELISSA FOX, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 04 C 7309 |
| WILL COUNTY; EDWARD HAYES; | ) | |
| MICHAEL GUILFOYLE; | ) | Judge John W. Darrah |
| SCOTT SWEARENGEN; | ) | |
| JOHN RUETTIGER; BRAD WACHTL; | ) | |
| DAVID DOBROSWKI; and | ) | |
| UNKNOWN POLYGRAPH | ) | |
| EXAMINER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| WILL COUNTY, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ESSEX INSURANCE CO.; AMERICAN | ) | |
| ALTERNATIVE INSURANCE CORP.; | ) | |
| and ST. PAUL FIRE & MARINE | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| _____ | ) | |
| | ) | |
| KEVIN FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ESSEX INSURANCE CO.; AMERICAN | ) | |
| ALTERNATIVE INSURANCE CORP.; | ) | |
| and ST. PAUL FIRE & MARINE | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Third-Party, Will County, has filed a Second Amended Third-Party Complaint ("SATC") against Third-Party Defendant Essex Insurance Company ("Essex"). Before the Court are Will County's Motion for Judgment on the Pleadings on its SATC as to Count I or, alternatively, as to Count II of its Second Amended Complaint, and Essex's Cross-Motion for Summary Judgment as to Counts I through III of Will County's Second Amended Complaint.

## BACKGROUND

The factual and procedural history of this case has been recited at length at various stages of litigation since 2004. Fox and his wife, Melissa Fox, originally filed this action on November 14, 2004, alleging claims against Will County, detectives employed by Will County, and other parties not named in this action, pursuant to 42 U.S.C. § 1983. The Foxes' claims related to law enforcement activities conducted by the Detectives in connection with the investigation, arrest, and prosecution of Fox, ending in October 2004. The Foxes alleged that the Detectives committed various and wrongful tortuous acts in the conduct of law enforcement activities and alleged violations of Fox's civil rights.

During the relevant period of the underlying litigation, Will County had Law Enforcement Liability insurance coverage with Essex (the "Essex Policy"), American Alternative Insurance Corporation ("AAIC"), and St. Paul Fire and Marine Insurance Company ("St. Paul"). The instant dispute concerns Will County's Second Amended Complaint against Essex for reimbursement of certain amounts paid by Will County to Plaintiffs.

2

*Facts*

On September 21, 2011, Will County filed the SATC; Essex answered on September 28, 2011. The following facts are taken from the parties' admitted allegations in the SATC and the statements of undisputed material facts submitted in accordance with Local Rule 56.1.[1]

<u>Parties, Jurisdiction, Venue</u>

Will County is a municipal corporation organized and existing under the laws of the State of Illinois. (Essex's 56.1(a)(3) ¶ 1.) Essex is a Delaware corporation with its principal place of business in Virginia. (*Id.* ¶ 2.) AAIC is a Delaware corporation with its principal place of business in New Jersey. (*Id.* ¶ 3.) St. Paul is a Minnesota corporation with its principal place of business in Minnesota. (*Id.* ¶ 4.) The amount in controversy exceeds the jurisdictional threshold of $75,000.00. (*Id.* ¶ 5.) The Court has diversity jurisdiction over the present action pursuant to 28 U.S.C. § 1332 and jurisdiction to render a declaratory judgment pursuant to 28 U.S.C. § 2201. (*Id.* ¶ 6.)

<u>Procedural Background</u>

On December 20, 2007, pursuant to a jury verdict, judgment was entered in favor of the Foxes. (*Id.* ¶ 11.) On June 11, 2008, the Court entered an Agreed Order ("Agreed Order No. 1"), awarding the Foxes $1.5 million in "Attorneys' Fees and Related Non-Taxable Expenses for all Plaintiff Kevin Fox's 42 U.S.C. §1983 claims through the date

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(b)(3)(B) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).

of [the] Order"[.] (*Id.* ¶ 12.) The award was expressly contingent on Fox prevailing on post-trial motions and any appeal taken related to his 42 U.S.C. § 1983 claims, and enforcement of the order was stayed. (*Id.*)

On September 25, 2008, St. Paul paid its policy limits of $1 million in settlement of certain of the Foxes' claims. (*Id.* ¶ 13.) On October 28, 2008, Will County and others filed a timely Notice of Appeal to the Seventh Circuit Court of Appeals with respect to the underlying adverse judgment, including the 42 U.S.C. § 1983 claims. (*Id.* ¶ 14.) On April 7, 2010, the Seventh Circuit affirmed in part and reversed and vacated in part this Court's judgment. (*Id.* ¶ 15.) Following the Foxes' acceptance of remitters, the compensatory damages award to the Foxes was comprised of the following amounts: (1) as to Kevin Fox: $16,000.00 for false arrest, $600,000.00 for malicious prosecution, and $1.4 million for intentional infliction of emotional distress; (2) as to Melissa Fox: $2.6 million for loss of consortium and $150,000.00 for intentional infliction of emotional distress. (*Id.* ¶ 16.)

On June 18, 2010, the Foxes filed a Motion for Order Commanding Will County to Pay Judgment against Will County, seeking, among other things, the $1.5 million in attorneys' fees incurred by the Foxes through June 8, 2008, pursuant to Agreed Order No. 1, as well as attorneys' fees incurred after June 8, 2008, costs incurred in the District Court, as well as interest on the attorneys' fees and court costs. (*Id.*) The Foxes argued that they were entitled to collect additional attorneys' fees under the Civil Rights Act as the "prevailing party" in the litigation. (*Id.*)

On June 25, 2010, counsel for Essex sent a letter to Will County, stating that "Essex is not responsible for and will not pay plaintiffs' attorneys' fees or other costs

incurred to date which may be awarded by the Court." (*Id.* ¶ 18.) On July 1, 2010, the Court entered an Agreed Order for Partial Enforcement of Judgment ("Agreed Order No. 2"), which included, among other things, the Foxes' attorneys' fees in the amount of $1.5 million through June 8, 2008, as well as district court costs plus interest on those costs. totaling $86,341.20. (*Id.* ¶ 19.) A meeting was held in July 2010, between counsel for Will County, Essex, AAIC, St. Paul and others, for the purpose of discussing the parties' respective positions relative to Agreed Order No. 2. (*Id.* ¶ 20.) At that meeting, counsel for AAIC expressed AAIC's proposal for its payment of certain aspects of Agreed Order No. 2. (*Id.*)

On or about August 2, 2010, AAIC's counsel forwarded an email, along with a proposed Notice of Partial Satisfaction of Judgment, to Will County's counsel that also reiterated AAIC's position and outlined AAIC's proposed payment. (*Id.* ¶ 21.) If the proposed notice was "OK" with Will County's counsel, AAIC instructed Will County's counsel to forward it to the Foxes' counsel for confirmation that she would execute same upon receipt of AAIC's corresponding payment. (*Id.*)

AAIC thereafter made its payment to the Foxes on behalf of Will County, and the Foxes accepted it as partial satisfaction of certain defined portions of the judgment. (*Id.* ¶ 23.) On August 23, 2010, the Foxes filed an Amended Motion for Order Commanding Will County to Pay Judgment, acknowledging that AAIC paid $5,492,539.55 of the judgment on Will County's behalf and agreeing that the amount included, among other things, the compensatory damages, as well as $234,000.00 of the attorneys' fees incurred by the Foxes through June 8, 2008, and all post-judgment interest on those fees. (*Id.* ¶ 25.)

On September 2, 2010, the Court entered an Agreed Order for Attorneys' Fees ("Agreed Order No. 3"), which awarded the Foxes attorneys' fees and related nontaxable expenses in the amount of $507,824.60 for the time period between June 8, 2008 through April 7, 2010. (*Id.* ¶ 26.) As of September 2, 2010, all amounts awarded to the Foxes had been paid by AAIC with the exception of the following: $1,266,000.00 in attorneys' fees through June 8, 2008; $82,908.01 in District Court costs; $3,433.19 in post-judgment interest on the district court costs; and $507,824.60 in attorneys' fees after June 8, 2008, coming to a sum total of $1,860,165.80. The Foxes did not pursue Will County for any additional interest associated with attorneys' fees, which were awarded to the Foxes but which were not paid by AAIC. (*Id.* ¶ 28.) Instead, on or about January 3, 2011, Will County caused $1,860,165.80 to be deposited into a client trust account held by the Foxes' counsel, Kathleen T. Zellner & Associates, in full satisfaction of the outstanding balance of the amount due and owing under Agreed Orders 1-3. (*Id.*) On February 23, 2011, the Court entered an Agreed Order for Complete Satisfaction of Judgment of Compensatory Damages, Costs, Attorneys' Fees and Interest consistent with Will County's deposit of funds on January 3, 2011. (*Id.* ¶ 29.)

Will County seeks recovery of this amount – $1,860,165.80 – pursuant to the Essex Policy in its SATC. Essex disputes that it is obligated under the policy to pay any of this amount. Essex filed a Counterclaim against Will County, seeking a judicial declaration as to its rights and obligations in this matter and now seeks summary judgment thereon.

*The Policies*

St. Paul issued Policy No. GP06301134 to Will County for the policy period from

December 1, 2003 to December 1, 2004 (the "St. Paul Policy"). The St. Paul Policy

includes Law Enforcement Liability ("LEL") coverage with a policy limit of $1,000,000

per occurrence, subject to a $250,000 self-insured retention. (*Id.* ¶ 30.)

The St. Paul Policy includes a Law Enforcement Liability Protection

endorsement, which states in part:

> What This Agreement Covers
> **Law enforcement liability.** We'll pay amounts any
> protected person is legally required to pay as damages for
> covered injury or damage that
> • results from law enforcement activities or operations by
> or for you;
> • happens while this agreement is in effect; and
> • is caused by a wrongful act that is committed while
> conducting law enforcement activities or operations.
>
> *We'll consider damages to include the attorneys' fees of the
> person or organization bringing the claim if such fees are
> awarded, or paid in settlement, for covered injury or
> damage.*
>
> \* \* \*
>
> **Right and duty to defend a protected person.** We'll
> have the right and duty to defend any protected person
> against a claim for injury or damage covered by this
> agreement. We'll have such right and duty even if all of the
> allegations of the claim are groundless, false, or fraudulent.
> But we have no duty to perform any other act or service.
> \* \* \*
> **Additional payments.** We'll have the duty to make only
> the additional payments shown below in connection with
> any claim under this agreement against a protected person
> when we:
> • investigate or settle the claim; or
> • defend the protected person against the claim.

7

> These payments are in addition to the limits of coverage.
>
> Our duty to make additional payments ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.
>
> * * *
>
> **Taxed Costs**. We'll pay all costs, except attorneys' fees of the person or organization making or bringing the claim, taxed against any protected person for covered injury or damage in a suit.

(*Id.* ¶ 31 (emphasis added).)

AAIC issued an umbrella policy, No. 60A2UB000044900, to Will County for the policy period from December 1, 2003 to December 1, 2004 (the "AAIC Policy"). The AAIC Policy includes limits of $5,000,000 each occurrence in excess of the underlying St. Paul primary limits. (*Id.* ¶ 33.) The AAIC Policy includes a Commercial Umbrella Policy form, which states, in part, as follows:

> I. INSURING AGREEMENTS
> We, the Company, in return for the payment of the premium, agree with you, as follows:
>
> A. Coverage A - Excess Following Form Liability Over Underlying Claims Made or Occurrence Coverage
> We will pay, on behalf of the insured, sums in excess of the amount payable under the terms of any Underlying Insurance as stated in the Schedule of Underlying Insurance, that the insured becomes legally obligated to pay as damages because of injury or damage to which this insurance applies.
>
> *This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the Underlying Insurance* except as otherwise provided in this policy; provided, however, that in no event will this insurance apply unless the Underlying Insurance applies or would apply but for the exhaustion of its applicable Limit of

8

Liability.

* * *

III. DEFENSE PROVISIONS

A.  We will assume charge of the settlement or defense of any claim or suit against the insured when:

1.  the aggregate Limit of Liability of the applicable Scheduled Underlying Policy has been exhausted by payment of claims; or
2.  damages are sought for bodily injury, personal injury, property damage, or advertising injury covered by this policy and to which no Underlying Insurance or other insurance applies; Provided there is no duty to defend under any Underlying Policy.

B.  When we assume such charge we will pay in addition to the applicable Limit of Liability:
2.  *the following to the extent that they are NOT included in the Underlying Insurance:*
c.  all costs taxed against the insured in the suit;
e.  all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

(*Id.* ¶ 34 (emphasis added).)  The AAIC Policy does not include its own definitions of the terms "costs" or "damages" and does not expressly exclude "attorneys' fees" from its policy coverage. (Will County's 56.1(b)(3) ¶ 3.)

Essex issued an excess liability policy, No. X0-NJ-1822-03, to Will County for the policy period from December 1, 2003 to December 1, 2004 (the "Essex Policy"). (Essex's 56.1(a)(3) ¶ 35.)  The Essex limits are $5 million each occurrence in excess of underlying limits, which include the $5 million AAIC limits and the St. Paul primary limits. (*Id.*)

The Essex Policy states, in part:

**Section A - Insuring Agreements**
1. The Company hereby agrees to pay on behalf of the
Insured that portion of Ultimate Net Loss in excess of the
limits of Underlying Insurance as showing in Item 4 of the
Declarations, but only up to an amount not exceeding the
Company's Limit of Liability as shown in Item 3 of the
Declarations. *Except for the Terms, Definitions, Conditions
and Exclusions of this policy, the coverage provided by this
policy shall follow the Insuring Agreements, Definitions,
Conditions and Exclusions of the Controlling Underlying
Insurance Policy shown in Item 4 of the Declarations.*

\* \* \*

**Section B – Definitions**

\* \* \*

**2. Ultimate Net Loss.**
The term "Ultimate Net Loss" shall mean the amount
payable in settlement of the liability of the Insured after
making deductions for all recoveries and for other valid and
collectible insurance, excepting however the policy(ies) of
the Underlying Insurer(s). Ultimate Net Loss shall exclude
all interest accruing after entry of judgment, costs and
expenses, except with the consent of the Company.
Section C – Conditions

\* \* \*

**4. Defense**

The Company shall not be called upon to assume charge of
the investigation, settlement or defense of any claim made,
or suit brought, or proceeding instituted against the Insured,
but shall have the right and be given the opportunity to be
associated in the defense and trial of any such claim, suit or
proceeding relative to any occurrence which, in the opinion
of the Company, may create liability on the part of the
Company under the terms of this policy. If the Company
avails itself of such right and opportunity the Company
shall do so at its own expense.

(*Id.* ¶ 36 (emphasis added).)  The Essex Policy includes exclusions and endorsements for the following types of losses:  (1) losses caused by mold; (2) losses caused by the "Year 2000" computer malfunctions; (3) losses caused by lead contamination; (4) losses caused by pollution; (5) losses caused by asbestos; (6) losses caused by acts of war; (7) losses caused by hazardous properties of nuclear materials; and (8) losses arising under ERISA.
(Will County's 56.1(a)(3) ¶ 5.)

### Dispute between Will County and Essex

In Count I, Will County seeks to hold Essex liable for the disputed amounts paid by Will County under a breach-of-contract claim.  (*Id.* ¶ 38.)  In the alternative, in Count II, Will County seeks a declaratory judgment, declaring that the AAIC Policy provides coverage for the disputed amounts; re-allocating AAIC's prior payment as suggested by Will County; and then declaring that Essex is liable for what Will County characterizes as "the unpaid balance of $1,860,166.38 in compensatory damages." (*Id.*) In Count III, Will County seeks to recover extra-contractual damages against Essex under 215 ILCS 5/155. (*Id.*)

## LEGAL STANDARD

### Federal Rule of Civil Procedure 12(c)

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c).  Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).  In ruling on a motion for judgment on the pleadings, the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in

11

favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 364 (7th Cir.2000). "Thus

to succeed, the moving party must demonstrate that there are no material issues of fact to

be resolved." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d

449, 452 (7th Cir.1998).

*Federal Rule of Civil Procedure 56*

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the

court of the basis for its motion and identifying the evidence it believes demonstrates the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-

24 (1986).  If the moving party meets this burden, the nonmoving party cannot rest on

conclusory pleadings but "must present sufficient evidence to show the existence of each

element of its case on which it will bear the burden at trial." *Serfecz v.

Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)).  A mere scintilla of evidence is not

sufficient to oppose a motion for summary judgment, nor is a metaphysical doubt as to

the material facts.  *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)

(internal citation omitted).  Rather, the evidence must be such "that a reasonable jury

could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d

619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) (*Anderson*)).

## ANALYSIS

As noted above, Will County has filed a Motion for Judgment on the Pleadings and Essex has filed a response and Cross-Motion for Summary Judgment.[2] This matter may be decided in the context of either Motion. The central issue before the Court is the interpretation of an insurance contract and is, therefore, a matter of law. The parties do not dispute any material facts. Further, the undisputed facts are within Will County's SATC and contained in insurance contracts incorporated by Will County in the SATC. Thus, either a ruling on the Cross-Motion or Motion for Judgment on the Pleadings is possible. *See Arethas v. S/TEC Group, Inc.*, No. 04-cv-6743, 2005 WL 991782, at *6 (N.D. Ill. Apr. 14, 2005) ("although in ruling on a motion for judgment on the pleadings a court can consider affidavits attached to a complaint or an answer to the complaint, a court cannot consider affidavits that are not a part of the pleadings").

The central issue is whether the Essex Policy provides coverage for $1,773,824.60 in attorneys' fees awarded to Kevin Fox pursuant to 42 U.S.C. § 1988 ("Section 1988"). The remainder of the disputed amounts consists of district court costs and post-judgment interest. Will County does not argue that the Essex Policy covers these amounts.

Will County argues that the Essex Policy follows form[3] to the underlying AAIC Policy and St. Paul Policy, which define attorneys' fees as a component of damages. (Mtn. at 7.) The primary underlying St. Paul Policy states: "We'll consider damages to

---

[2] AAIC filed a Response to Essex's Cross-Motion for Summary Judgment, in which it requests that the Court enter an Order declaring that Kevin Fox's Section 1988 attorney fee award constitutes damages within the meaning of the AAIC Policy and that AAIC has no further coverage obligation under its policy as it has previously exhausted the limit of the AAIC Policy in satisfaction of the judgment in favor of the Foxes.

[3] A "follow-form" policy is discussed in detail below.

include the attorneys' fees of the person or organization bringing the claim if such fees are awarded, or paid in a settlement for a covered injury." The AAIC Policy does not contain any provisions regarding damages or costs. Thus, Will County argues that the AAIC Policy incorporates the St. Paul Policy's damages provision. Consequently, Will County argues that the Essex Policy incorporates the same definition of attorneys' fees used in the St. Paul Policy and "does not disclaim coverage for the [Foxes'] attorneys' fees or define attorneys' fees as anything other than 'damages.'" (Mot. at 7.)

Essex does not dispute that the Essex Policy is a follow-form policy but argues that the Essex Policy follows only certain terms of the AAIC Policy "with the express exception of Essex's own policy terms, definitions, conditions and exclusions." Specifically, Essex argues that the Essex Policy contains an exception that precludes coverage of the disputed amounts. The Essex Policy states that Essex "hereby agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance." The Essex Policy further states, "*Except* for the Terms, Definitions, Conditions, and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions, and Exclusions of the Controlling Underlying Insurance Policy." "Ultimate Net Loss" is defined, in relevant part, to "exclude all interest accruing after entry of judgment, costs and expenses, except with consent of the Company."

Essex argues that attorneys' fees qualify as "costs" for purposes of insurance coverage. Will County disagrees, noting that the St. Paul Policy and AAIC Policy specifically define attorneys' fees as "damages," rather than "costs," as set out above. Therefore, notwithstanding that the Essex Policy excludes "costs," Will County argues

14

that because the underlying St. Paul Policy defines attorneys' fees as "damages" and not "costs," the Essex Policy must follow this definition and does not exclude coverage for attorneys' fees. (Reply at 6.)

Essex does not dispute that the Essex Policy is a follow-form policy. The parties agree that Illinois law applies to the contracts at issue. As the Illinois Appellate Court explained, "[f]ollowing form' is a term used in the insurance industry to describe the type of policy wherein an excess carrier policy insures the risk covered by the underlying policy. When a policy uses 'following form' language, the excess carrier is bound by the underlying language." *Royal Indem. Co. v. Chicago Hosp. Risk Pooling Program*, 865 N.E.2d 317, 322 (Ill. App. Ct. 2007). Thus, a follow-form policy follows the language of the underlying policy in every respect except where *specifically* mentioned. *See Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 544 F.3d 752, 754-755 (7th Cir. 2008) (citing *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 589 (7th Cir. 2001); *see also Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 203 (3rd Cir. 2004) (noting that under a follow-form policy "coverage issues presented turn solely on the interpretation of the underlying polic[y]"). From an insured's stand-point, excess follow-form policies "serve the important purpose of allowing an insured . . . that deals with many insurers for the same risk to obtain uniform coverage, and to know, without a minute policy-by-policy analysis, the nature and extent of that coverage." *Union Carbide Corp. v. Affiliated FM Ins. Co.*, 947 N.E.2d 111, 113 (N.Y. 2011).

In this case, the primary underlying St. Paul Policy specifically defines attorneys' fees as "damages." Essex concedes that the AAIC Policy also "incorporated the St. Paul definition of 'damages' into the AAIC Policy." (Resp. at 21.) The AAIC policy states it

15

is "subject to the same terms, conditions agreements, exclusions and definitions as the underlying insurance except as otherwise provided in this policy." There is no definition of "damages" or "costs" in the AAIC Policy. Although the Essex Policy excludes "costs," it does not *specifically* exclude attorneys' fees or otherwise define attorneys' fees as "costs." Therefore, as a follow-form policy, the Essex Policy incorporates the damages provision of the St. Paul Policy and covers Fox's attorneys' fees.[4]

Had Essex specifically defined "costs" to include attorneys' fees or otherwise specifically excluded attorneys' fees, this would be a different case. Such a case is depicted in *Cont'l Cas., Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 298 (7th Cir. 1990), a case cited by Essex. There, the insurance policy of the excess carrier indemnified the insured for "loss," "as fully and to all intents and purposes" as the underlying insurance policy. *Id.* at 298. "Loss" is defined as "the sums paid in settlements of losses for which the insured is liable . . . and shall exclude all expenses and costs." *Id.* "Costs" in turn was defined as "interest on judgments, investigations, adjustment and *legal expenses* (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the insured)." *Id* (emphasis added). As the Seventh Circuit explained, "[t]he indemnification is limited to loss, loss excludes costs, costs include *legal expenses*, so legal expenses are excluded from coverage." *Id* (emphasis added).

---

[4] Essex relies on case law, recognizing that attorneys' fees awarded under Section 1988 are typically referred to as "costs" to buttress its argument. These cases, however, are not persuasive in a situation such as here where the underlying insurer defines attorneys' fees as something *other* than costs.

Similarly, in *Maryland Casualty Co. v. W.R. Grace & Co.*, No. 88-cv-2613, 1996 WL 306372, at *8 (S.D.N.Y. June 7, 1996), the excess insurer defined "Ultimate Net Loss" as "the amount payable in settlement of the liability of the Insured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy(ies) of the Primary Insurer(s) *and shall exclude all expenses and Costs.*" *Id.* (emphasis in original). "Costs," in turn, was defined "to mean interest accruing after entry of judgment, investigation, adjustment and *legal expenses (excluding, however,* all office expenses of the Insured, all expenses for salaried employees of the Insured and *general retainer fees for counsel normally paid by the Insured)*." *Id.* (emphasis in original).

Here, although the Essex Policy generally excludes coverage for "costs," it does not define costs to specifically include attorneys' fees. That Essex specifically included numerous other exclusions, such as losses caused by mold and "Year 2000" computer malfunctions, demonstrates further, that without such specific language to the contrary, the word "costs" in the Essex Policy does not include attorneys' fees.

To avoid this construction of the policies, Essex argues that Will County "conveniently ignores other terms within the St. Paul and AAIC Policies which flatly contradict Will County's proposed construction." (Resp. at 19-22.) First, Essex argues, based on the "taxed costs" provision, the St. Paul Policy only allows attorneys' fees awarded or paid in settlement but does not include attorneys' fees awarded as "costs." (*Id.* at 20.) Essex's forced interpretation of the St. Paul Policy is not persuasive. The St. Paul Policy defines "damages" to include attorneys' fees but has an "Additional Payments" provision that states that St. Paul will pay "taxed costs," which includes "all

costs, except attorneys' fees of the person or organization making or bringing a claim." The "taxed costs" provision merely reinforces the earlier "damages" definition by reiterating that attorneys' fees are not costs.

Second, Essex argues that although the AAIC Policy incorporates the damages provision from the St. Paul Policy, the provision is superseded by a standalone "Defense Provision," which states AAIC will assume "all costs taxed against the insured in the suit." Essex argues that the attorneys' fees award is covered by the Defense Provision in the AAIC policy. Therefore, it follows, that because the Essex Policy excludes "costs," the Essex Policy does not cover attorneys' fees. Essex fails to heed the prefatory language. The AAIC Policy states, "When we assume such [defense] charge we will pay in addition to the applicable Limit of Liability: . . . *the following to the extent they are NOT included in the Underlying Insurance*: . . . all costs taxed against the insured in the suit." Here, attorneys' fees are expressly included as "damages" in the underlying insurance, thereby overriding the "costs" provision of the AAIC Policy.

Essex argues that even if the Court finds that the Essex Policy provides coverage for attorneys' fees, Will County's Motion cannot be granted because Will County has not demonstrated "proper exhaustion of the AAIC limits sufficient to trigger any potential obligation under the Essex Policy." (Reply at 2.) This argument is raised by Essex for the first time in its reply. An argument raised for the first time in the reply is waived. *See Gonzales v. Mize,* 565 F.3d 373, 382 (7th Cir. 2009) (arguments raised for the first time in a reply brief are waived). In any event, this argument is of no consequence. It is undisputed that AAIC paid $5,492,539.55 of the judgment on Will County's behalf. (*See* Essex's 56.1(b)(3) ¶ 25.) It is also undisputed that the AAIC Policy includes a limit of

$5,000,000 each occurrence in excess of the underlying St. Paul Policy. (*Id.* ¶ 33.) Here, AAIC has paid in excess of its policy limit.

Essex also argues that "a significant portion of the compensatory damages paid by AAIC fell outside of the AAIC policy period" and, therefore, the Essex Policy is not implicated. (Br. at 22-25, Reply at 10.) However, the Court entered several *agreed* Orders, in which the parties agreed to the amounts of compensatory damages at issue. (*See* Agreed Order Nos. 1-3.) Therefore, Essex's argument has no merit.

For the reasons set forth above, the portion of the disputed amounts that consist of attorneys' fees ($1,773,824.60) is covered by the Essex Policy. In Count I of its Second Amended Complaint, Will County seeks indemnification for the entire disputed amounts. However, the portions consisting of the district court costs and post-judgment interest are not covered by the Essex Policy, nor does Will County argue as such.

Lastly, Essex moves for summary judgment on Count III of Will County's SATC, in which Will County brings a claim under 215 ILCS § 5/155 ("Section 155"). Section 155 of the Illinois Insurance Code provides for an award of attorneys' fees and costs if an insurer's actions are "vexatious and unreasonable." 215 ILCS 5/155. A delay in settling a claim does not violate the statute if the delay results from a *bona fide* dispute regarding coverage. *Valdovinos v. Gallant Ins. Co.*, 733 N.E.2d 886 (Ill. App. Ct. 2000). Whether an insurer's actions are vexatious or unreasonable is a fact-specific inquiry. *See SwedishAmerican Hosp. Ass'n of Rockford v. Ill. State Med. Inter-Ins. Exch.*, 395 Ill. App. 3d 80, 103 (Ill. App. Ct. 2009) ("Whether an insurer has acted in bad faith by failing to settle a claim is a question of fact for the fact finder.").

Essex argues that it is not liable for damages under Section 155 because there is a *bona fide* coverage dispute as to the attorneys' fees. Here, there is a genuine issue of material fact as to whether Essex acted in bad faith. Will County has presented facts, which are disputed by Essex, upon which a reasonable juror could find that Essex acted in bad faith. Specifically, Essex misled Will County into believing that its follow-form insurance would cover Will County's liabilities for Law Enforcement Liability and Essex failed to assert from the beginning that it would not provide coverage for attorneys' fees. (Will County's 56.1(b)(3) ¶¶ 6-12.) Accordingly, Essex's Motion for Summary Judgment is denied as to Count III.

## CONCLUSION

Will County's Motion for Judgment on the Pleadings is granted in part and denied in part as to Count I. Based on this ruling, the Court need not address Count II, which Will County pleads in the alternative. Essex's Cross-Motion for Summary Judgment is denied.

Date: 8-15-12

JOHN W. DARRAH
United States District Court Judge