

In the
# United States Court of Appeals
### For the Seventh Circuit

No. 13-1290

KEVIN FOX,

*Plaintiff-Appellant*,

*v.*

AMERICAN ALTERNATIVE
INSURANCE CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:04-cv-07309 — **John W. Darrah**, *Judge*.

ARGUED OCTOBER 31, 2013 — DECIDED JULY 7, 2014

Before BAUER, MANION, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. The dispute between Kevin Fox, the plaintiff in this diversity case governed by Illinois law, and American Alternative Insurance Corporation (AAIC) is about an insurer's duties to defend those it insures. This suit arises from a previous, civil-rights suit brought by Fox and his wife Melissa against AAIC's insureds for, among other claims,

2 No. 13-1290

wrongful arrest and prosecution. *See Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010). The defendants in that first suit included several detectives from Will County, Illinois, whom Fox had accused of maliciously pursuing unfounded charges against him. Following a jury verdict awarding the Foxes a total of $15.5 million in damages (including $6.2 million in punitive damages) the detectives reached a deal with the Foxes. They assigned to the Foxes any indemnity claims they might have against the insurance companies, including AAIC, who had controlled their defense. In exchange, they received the Foxes' agreement not to execute the punitive damages awards (which were not covered by any insurer's policy) against their personal assets. Armed with the assignments, Kevin Fox then filed the suit that is the subject of this appeal. That suit seeks a declaratory judgment that AAIC—as an insurer for the detectives' employer, Will County—had breached its duty to defend the detectives in the earlier suit. The district court dismissed Fox's complaint for failure to state a claim. We conclude that AAIC did not breach its duty to defend the detectives, so we affirm the judgment.

## Background

Because the district court dismissed Fox's complaint, we accept as true all well pleaded facts and draw all permissible inferences in his favor. *See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009).

Kevin Fox was arrested in 2004 and charged with the sexual assault and murder of his three-year-old daughter. Will County detectives coerced a confession out of Fox and delayed the testing of DNA evidence, leaving Fox imprisoned for

No. 13-1290 3

nearly eight months and separated from his despairing wife and son. When Fox's defense team finally obtained the DNA evidence and had it tested at a private lab, the results excluded Fox as the source of the DNA on his daughter's body, and the prosecution dropped all charges against him. Fox then proceeded to federal court where he and his wife sued under 42 U.S.C. § 1983 and Illinois state law alleging that the Will County detectives (Edward Hayes, Michael Guilfoyle, Scott Swearengen, Brad Watchl, and John Ruettiger) had arrested and prosecuted Fox without probable cause and in violation of his right to due process. The Foxes also included state law claims for malicious prosecution and intentional infliction of emotional distress. As relevant to the present suit, Fox's complaint in his § 1983 action sought both compensatory and punitive damages.

As employees of Will County, the detectives benefitted from the county's insurance policies, which provided liability coverage to its law enforcement personnel. St. Paul Fire & Marine Insurance Company supplied the first layer of coverage and its policy required it to defend the detectives against the Foxes' suit until it had exhausted its policy limit of $1 million by paying covered settlements or judgments. Will County also had two layers of excess or umbrella liability coverage. Each layer was for $5 million. One policy was from AAIC and the other came from Essex Insurance Company; AAIC provided the secondary and Essex the tertiary layer of coverage. Under AAIC's policy it was not required to "assume charge of the settlement or defense" until "the aggregate Limit of Liability of the applicable Schedule Underlying Policy [the St. Paul policy] ha[d] been exhausted by payment of claims." None of the

4　　　　　　　　　　　　　　　　　　　　　　　　　　　No. 13-1290

insurance policies provided coverage against liability for punitive damages.

　　The Foxes' suit proceeded to trial where the detectives were represented by Lowis and Gellen, LLP (a firm retained by St. Paul).Under some circumstances, their joint representation by a single law firm could have created a potential conflict of interest, *see, e.g.*, *Williams v. Am. Country Ins. Co.*, 833 N.E.2d 971, 979 (Ill. App. Ct. 2005) (potential conflict where interests of multiple insureds are "diametrically opposed"), as could have the Foxes' claims for uncovered punitive damages, *see, e.g.*, *Nandorf, Inc. v. CNA Ins. Cos.*, 479 N.E.2d 988, 991–92 (Ill. App. Ct. 1985) (potential conflict where insurer controls defense but disclaims coverage for punitive damages). But neither the attorneys nor any of the insurance companies informed the detectives of these possible conflicts. Nor were the detectives told that such potential conflicts *might* entitle them to representation by independent counsel at the insurers' expense. *See Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th Cir. 2009) (citing *Md. Cas. Co. v. Peppers*, 355 N.E.2d 24, 31 (Ill. 1976)); *Nandorf*, 479 N.E.2d at 991–92.

　　The jury returned verdicts favorable to the Foxes. It found for them on their false arrest, due process, malicious prosecution, and emotional distress claims and awarded them $15.5 million in damages, including $6.2 million in punitive damages. The Foxes had offered to settle their claims for less than that sum, both before and after the jury's verdict on liability, but their offers were rejected. After the verdict the district court struck $2.6 million of the punitive damages awarded to the Foxes.

No. 13-1290 5

By September 2008, St. Paul had exhausted its $1 million liability policy limit by satisfying the judgment against Ruettiger (who had died before the trial began). AAIC then took control of the detectives' defense. The remaining detectives appealed, but not before striking the deal with the Foxes to which we alluded earlier. The deal came in two stages. First, the detectives assigned to the Foxes any claims they might have against Will County's three insurers in exchange for the Foxes' covenant not to execute the awards of punitive damages against the detectives' personal assets. Then, working with new counsel, the detectives negotiated a supplemental deal with the Foxes approximately three months later. This time they also agreed to withdraw their appeal challenging the punitive damage awards in exchange for a full and complete release of personal liability for punitive damages.

With the assignments in hand, the Foxes turned their attention to suing the insurers. They filed an action against St. Paul, AAIC, and Essex in the Circuit Court of Cook County under case number 08-CH-14936, seeking as damages for their breach of duty to the detectives the amount of punitive damages awarded against the detectives. The suit alleges substantially the same claims that Fox pursues in this present suit. That action prompted AAIC and Essex to intervene in the pending federal appeal of the wrongful prosecution judgment in order to contest, as the detectives no longer would, the punitive damage awards. They hoped to overturn that award and thereby limit any potential exposure to liability in the state court action. But despite their efforts, this court affirmed the judgment against the defendants on all but Fox's due process claim, and upheld $8,166,000 of the damages awarded,

6　　　　　　　　　　　　　　　　　　　　　　　No. 13-1290

including $3.4 million in punitive damages. *See Fox*, 600 F.3d at 847.

Following the resolution of the § 1983 suit, Fox filed the present suit. Through his amended complaints and after stipulations and orders not contested or relevant on appeal, he targets only the detectives' excess insurer, AAIC. Fox seeks a declaratory judgment that AAIC breached its good faith duties to (1) reasonably settle the claims against the detectives within policy limits, and (2) inform the detectives of their conflicts of interest. Fox further asserts that, as assignee of the detectives' rights against their insurers, his damages for AAIC's breach equal the punitive damages awarded against the three detectives. (Although this lawsuit replicates the state-court action, neither of the parties argues that the state suit has any bearing on this case.) AAIC moved to dismiss Fox's complaint for failure to state a claim, and the district court granted the motion. It reasoned that AAIC, as excess insurer, never had any control over the detectives' defense before judgment and therefore had no duty to settle the claims against the detectives or alert them to any potential conflicts of interest.

## Discussion

Lurking in the background of this appeal is the question of whether Fox's present suit is an impermissible end run around the public policy ban on an insured's recovery of punitive damages from an insurance company. In this case, Fox has foregone his right to pursue $3.4 million in punitive damages directly from the three detectives. Instead, seeking AAIC's deeper pockets, he has stepped into the shoes of those men who had so egregiously violated his civil rights. But AAIC's

No. 13-1290                                                                                7

policy excludes coverage for punitive damages, and "in Illinois, public policy prohibits insurance against liability for punitive damages that arise out of the misconduct of the insured." *Crawford Labs., Inc. v. St. Paul Ins. Co. of Ill.*, 715 N.E.2d 653, 659 (Ill. App. Ct. 1999); *see also Bernier v. Burris*, 497 N.E.2d 763, 776 (Ill. 1986).

Three states that, like Illinois, have public policies prohibiting insurance against punitive damages have held that an insured, and any assignee of the insured like Fox, may not shift to an insurance company through a suit against the insurer for breach of its duty to defend, the wrongdoer's duty to pay punitive damages. *See PPG Indus., Inc. v. Transamerica Ins. Co.*, 975 P.2d 652, 658 (Cal. 1999); *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 518 (Colo. 1996); *Soto v. State Farm Ins. Co.*, 635 N.E.2d 1222, 1225 (N.Y. 1994). To allow tortfeasors to so escape their own personal liability for punitive damages, these courts conclude, would defeat the very purpose of such damages: not to compensate the plaintiff for injury but to punish the tortfeasor. *See PPG Indus.*, 975 P.2d at 656–57; *Lira*, 913 P.2d at 517; *Soto*, 635 N.E.2d at 1224–25.

Illinois has not yet addressed this issue, so ordinarily we would attempt to predict how it would rule. *See Cannon v. Burge*, No. 12–1529, 2014 WL 2185016, at *10 (7th Cir. May 27, 2014) ("Our role in interpreting a question of state law is to predict how the highest court of the state would answer the question."); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (same). Two of the cases, *PPG Industries* and *Soto*, were split decisions reached over robust dissents, so a prediction is difficult. In this case, however, we need not struggle to guess how Illinois would resolve this public policy issue. Even if we

Case: 1:04-cv-07309 Document #: 1116 Filed: 07/29/14 Page 8 of 12 PageID #:13620
Case: 13-1290    Document: 00712281096    Filed: 07/29/2014    Pages: 12

8                                                        No. 13-1290

assume that Fox's suit does not offend Illinois's punitive damage policies, we can conclude that the complaint—taken together with its attachments, *see* FED.R.CIV.P. 10(c); *Bogie*, 705 F.3d at 609, and court records of which we may take judicial notice, *see Scherr v. Marriot Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013)—does not state a claim that AAIC breached any duty owed the detectives.

On appeal, Fox argues that AAIC breached two duties: its good faith duties to (1) reasonably settle the claims against the detectives within policy limits, and (2) inform the detectives of conflicts of interest created by joint representation and Fox's punitive damages claim. Fox generally is correct that an insurer owes these two duties to its insured because of the control an insurer exercises over the defense of claims. *See R.C. Wegman Constr. Co. v. Admiral Ins. Co.*, 629 F.3d 724, 728 (7th Cir. 2011); *Cramer v. Insurance Exchange Agency*, 675 N.E.2d 897, 903 (Ill. 1996). But AAIC was not the *primary* insurer (that was St. Paul). Under both AAIC's policy and Illinois law it, as an *excess* insurer, had no duty to defend the detectives until St. Paul exhausted its policy limits; absent that duty AAIC had no obligation to settle any claims or inform the detectives on any potential conflicts of interest. *See North River Ins. Co. v. Grinnell Mut. Reinsurance Co.*, 860 N.E.2d 460, 467 (Ill. App. Ct. 2006); *Montgomery Ward & Co. v. Home Ins. Co.*, 753 N.E.2d 999, 1006–07 (Ill. App. Ct. 2001); *Int'l Ins. Co. v. Sargent & Lundy*, 609 N.E.2d 842, 855 (Ill. App. Ct. 1993).

Recall that it was on this basis that the district court dismissed Fox's complaint. But the district court's holding was based in part on a misapprehension—harmless, it turns out—about timing. The district court believed Fox's appeal

No. 13-1290　　　　　　　　　　　　　　　　　　　　　　　9

was resolved in 2008, and until then St. Paul, as primary insurer, was still controlling the detectives' defense. But in fact the appeal was not decided until 2010, long after St. Paul had exhausted its policy limits and AAIC's duty to defend the detectives arose. The district court's error would warrant reversal only if it was harmful. That question turns on whether AAIC's actions during the period when it had control of the detectives' defense (after September 2008) violated either duty (to settle or disclose conflicts) to the detectives. For several reasons, AAIC's actions did not violate those duties.

First, based on Fox's factual allegations, AAIC never acquired, and therefore never violated, a good faith duty to settle the claims against the detectives. That duty could not arise unless Fox made a settlement demand within AAIC's policy limits. *See Powell v. Am. Serv. Ins. Co.*, 7 N.E.3d 11, 15 (Ill App. Ct. 2014) (citing *Haddick ex. rel Griffith v. Valor Ins.*, 763 N.E.2d 299, 304–05 ( Ill. 2001)). And although it is true, at least according to the complaint in this case, that Fox made such demands at least twice, he did not do so at any point after the duty to defend passed from St. Paul to AAIC. Moreover, under Illinois law, AAIC was not required to seek out or initiate fresh negotiations. *See Haddick*, 763 N.E.2d at 305–06. Accordingly, AAIC breached no duty to the detectives by failing to settle the claims against them.

Second, once AAIC assumed control of the case on appeal, no potential conflict of interest arose regarding either punitive damages or joint representation. We begin with punitive damages. In his complaint and his appellate brief, Fox has asserted no reason that AAIC's self-interest in fighting compensatory damages would have been "furthered by providing

a less than vigorous defense" of the punitive damages award on appeal. *Nandorf*, 479 N.E.2d at 992. A conflict does not arise simply because a plaintiff seeks both punitive and compensatory damages. *Id.* at 993–94. Rather, only when the plaintiff seeks punitive damages vastly in excess of compensatory damages does the potential conflict of interest arise. *Id.* Given that the Foxes had sought and been awarded even *more* in compensatory damages than punitive damages, no conflict arose here. *See Nat'l Cas. Co.*, 567 F.3d at 876 (no conflict without evidence that punitive damages would be disproportionate to compensatory damages); *Littlefield v. McGuffey*, 979 F.2d 101, 108 (7th Cir. 1992) (same); *Nandorf*, 479 N.E.2d at 992 (same).

Even if a potential conflict regarding punitive damages existed when St. Paul controlled the defense of Fox's § 1983 action, none did by the time AAIC assumed control of the detectives' defense. As AAIC points out, by that time the detectives had negotiated with Fox a covenant not to execute against their personal assets. Therefore, neither AAIC nor the detectives faced any harm from the prospect of a punitive damages award. Fox resists the conclusion, arguing that the covenant did not erase the judgment, so the detectives remained exposed to the risk that the Foxes might execute the judgment. The covenants merely provided the detectives with a contract remedy if the Foxes collected, in breach of the covenant, the punitive damages from the detectives' personal assets. *See Guillen ex. rel Guillen v. Potomac Ins. Co.*, 785 N.E.2d 1, 13 (Ill. 2003). But the "specter of punitive damages … [was] merely speculative," *Nat'l Cas. Co.*, 567 F.3d at 876. If the Foxes executed on the judgment, any recovery would revert back to

No. 13-1290　　　　　　　　　　　　　　　　　　　　　　　11

the detectives by virtue of their contract remedy. Under these circumstances, AAIC would have had no reason to believe that the presence of punitive damages created a conflict of interest.

　　Furthermore, if any party had a stake in fighting the punitive damages award it was AAIC. As a result of the detectives obtaining, in the second stage of their deal with Fox, full releases from Fox, AAIC faced the prospect of liability in Fox's state court suit against AAIC if the punitive damages were upheld on appeal in this court. That is precisely why AAIC intervened in the federal appeal—to fight the award of punitive damages and fend off the risk of liability in state court. Fox counters that we cannot consider these releases because they were not part of the complaint. Fox is incorrect. The releases became part of the public record on appeal of Fox's § 1983 suit for two reasons. First, they were exhibits to AAIC's motion to intervene, and second, the detectives, in responding to that motion, acknowledged the existence and validity of the attached releases. Thus, they can be considered in evaluating AAIC's motion to dismiss. *See Scherr*, 703 F.3d at 1073.

　　Finally, AAIC had no conflict in using the same law firm for joint representation of the detectives. Fox argues that because all the detectives were represented by the same law firm, AAIC should have known of a potential conflict. But Fox has not explained why joint representation automatically creates a conflict. Such a conflict may arise where an insurer is charged with providing a defense to multiple insureds whose interests are "diametrically opposed." *Williams*, 833 N.E.2d at 979, *see Murphy v. Urso*, 430 N.E.2d 1079, 1083 (Ill. 1981). But here, the detectives pursued a joint defense at trial when St. Paul

controlled the litigation—a matter for which AAIC cannot be blamed. Furthermore, we can see no (and Fox gives us no) antagonistic arguments that separate counsel could have been made on their behalf on appeal. But this is all beside the point. Fox cannot establish that the detectives suffered harm as the result of any conflict. They have been fully released from personal liability for punitive damages, and the compensatory damages awarded to Fox have been paid in full by St. Paul and AAIC. *See Fidelity & Cas. Co. of N.Y. v. Mobay Chem. Corp.*, 625 N.E.2d 151, 155 (Ill. App. Ct. 1992) ("When an insurer wrongfully refuses to defend [its insured], it is liable to the insured for breach of contract. The measure of damages for such a contractual breach is generally the amount of the judgment against the insured. …"), *Gruse v. Belline*, 486 N.E.2d 398, 404 (Ill App. Ct. 1985) (same). The detectives, therefore, have not been harmed.

To sum up, we question whether Illinois would even allow a suit like Fox's, which shifts the burden of punitive damages from the tortfeasor to the insurer. But even if such a claim could proceed under Illinois law, Fox has no claim for relief against an insurer who breached no duty and, in light of Fox's covenants and releases to protect the tortfeasors from punitive damages enforcement, did not harm them.

Accordingly, the judgment of the district court is

AFFIRMED.